1  Vincent E. Nowak, Texas State Bar No. 15121550
   MULLIN HOARD & BROWN, LLP
2  P.O. Box 31656
   Amarillo, TX   79120-1656
3  Telephone: (806) 372-5050
   Facsimile: (806) 372-5086
4
   Alisa M. Morgenthaler, State Bar No. 146940
5  GLASER, WEIL, FINK, JACOBS
     HOWARD & SHAPIRO, LLP
6  10250 Constellation Boulevard, 19th Floor
   Los Angeles, California 90067
7  Telephone: (310) 282-6287
   Facsimile:  (310) 556-2920
8
   Attorneys for Plaintiff

9

UNITED STATES DISTRICT COURT

10

CENTRAL DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| 12 DRUVI JAYATILAKA, | Case No. CV 09-2932 PA (CWx) |
| 13 Plaintiff, | **PLAINTIFF'S MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF DEFENDANT'S EXPERTS NANCY L. NUSSBAUM, CATHERINE FARMER, AND GEORGE LITCHFORD, AND BRIEF IN SUPPORT** |
| 14 v. | |
| 15 NATIONAL BOARD OF MEDICAL EXAMINERS, | |
| 16 | |
| 17 Defendant. | Trial Date: April 6, 2010 |
| 18 | [Assigned to the Honroable Percy Anderson] |
| 19 | Date:  2/22/10 |
| 20 | Time:  1:30 p.m. |
|    | Dept:  Ctrm 15 |

21

22 **PLAINTIFF'S MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF**
**DEFENDANT'S EXPERTS NANCY L. NUSSBAUM, CATHERINE FARMER,**
23 **AND GEORGE LITCHFORD, AND BRIEF IN SUPPORT**

24
     NOW COMES Plaintiff Druvi Jayatilaka and submits this Motion to Exclude
25
26 Opinions and Testimony of Nancy L. Nussbaum, Catherine Farmer, and George

27 Litchford. (Collectively, the Defendant's experts). The Court should prohibit the

28

Defendant's experts from testifying at trial because their methodology is unreliable and is not consistent with the standards of conduct for professional psychologists. In support of this motion, Jayatilaka shows the Court as follows:

## I. EVIDENCE

1. Plaintiff's Motion to Exclude and Strike is based on the evidence in Plaintiff's Appendix, fully incorporated herein, as applied to the live pleadings on file in this case. The Appendix contains: (i) Excerpts from the deposition of Nancy L. Nussbaum; (ii) Excerpts from the deposition of Catherine Farmer; (iii) Excerpts from the Deposition of George Litchford.

## II. BACKGROUND

2. This is an action brought under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101, et seq. Plaintiff, Druvi Jayatilaka ("Jayatilaka" or "Plaintiff"), graduated from the Universidad de Autonoma de Guadalajara Medical School (the "Medical School") in Guadalajara, Mexico, in 1997. In order to become a licensed physician in the United States, Jayatilaka is required to pass a three-step examination administered by the Defendant, NBME.

3. Jayatilaka has a diagnosed learning disability. Despite several requests, NBME has not accommodated his disability in accordance with the ADA.

4. Jayatilaka's learning disabilities date back to 1995 when he was brutally attacked in Guadalajara, Mexico and suffered a fractured skull. Since that time, he has been diagnosed with post-traumatic migraines, along with a period of apparent

short-term memory loss. He has noted challenges with verbal processing, speed of information processing, and extended mental tracking and control.

5. After graduating from the Medical School in 1997, Jayatilaka made at least five attempts before passing the Step 1 without accommodation in 1999. Since 1999, Jayatilaka has made multiple attempts to pass the Step 2 without accommodation. For several years he has participated in a review program for Step 2 and Step 3 in Champaign, Illinois. Knowing the material well, Jayatilaka was asked to tutor other medical students for Step 2.

6. Since his failures, a colleague suggested that Jayatilaka undergo neuropsychological and neurobehavioral testing. As a result of that evaluation, he was diagnosed with cognitive challenges that result in his being unable to process what he reads as quickly as most other persons. This inability to process the written language substantially limits Jayatilaka's reading and learning abilities and results in his being unable to perform adequately on timed examinations as compared to most people.

7. In a letter dated September 16, 2008, the NBME denied Jayatilaka's request for an accommodation for the USMLE Step 2 claiming Jayatilaka had not "demonstrate[d] substantial impairment in one or more life activities." Prior to the NBME's September 16, 2008, denial of Jayatilaka's request for accommodation, the NBME did not seek independently to examine Jayatilaka, nor did not meet or interview or otherwise independently evaluate Jayatilaka.

## III. Applicable Standards

8. As the Supreme Court has recognized, "[e]xpert evidence can be both powerful and quite misleading because of the difficulty of evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 exercises more control over experts than over lay witnesses." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993). The Supreme Court is clear that judges must undertake this gate-keeping obligation with diligence, even though it "will sometimes ask judges to make subtle and sophisticated determinations about scientific methodology and its relation to the conclusions an expert witness seeks to offer." *General Electric Co. v. Joiner*, 522 U.S. 136, 147 (1997) (Breyer, J., concurring). The Court's gatekeeping function applies to all expert testimony, whether based on scientific, technical or other specialized knowledge. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 142 (1999).

9. "[W]hether the specific expert testimony focuses upon specialized observations, the specialized translation of those observations into theory, a specialized theory itself, or the application of such a theory in a particular case, the expert's testimony often will rest "upon an experience confessedly foreign in kind to [the jury's] own." *Kumho Tire*, 526 U.S. at 149. The trial judge's effort to assure that the specialized testimony is reliable and relevant can help the jury evaluate that foreign experience, whether the testimony reflects scientific, technical, or other specialized knowledge.

10. In order to be admissible, expert testimony must be "not only relevant, but reliable." *Daubert*, 509 U.S. at 597; see also *Kumho Tire*, 526 U.S. at 141; *Joiner*, 522 U.S. at 142; FED. R. EVID. 702. More specifically, in *Daubert*, the Court held an expert's opinion must be grounded in scientific method, must constitute more than a mere subjective belief, and must be relevant to and fit the facts of the case in question. 509 U.S. at 590-591. Courts since *Daubert* have subjected expert testimony to strict scrutiny, making a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue. *See e.g., Moore v. Ashland Chem., Inc.*, 151 F.3d 269 (5th Cir. 1998), cert. denied, 526 U.S. 1064 (1999).

11. When an expert relies on data that does not have sufficient probative force and reliability such that a reasonable expert could rely upon it, the expert's opinions must be excluded. *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 748 (3rd Cir. 1994) (quoting *In re Agent Orange Prod. Liab. Litig.*, 611 F.Supp. 1223, 1245 (E.D.N.Y. 1985)). The Court must examine the data and testing upon which the opinion is allegedly based to determine its reliability. *Guile v. U.S.*, 422 F.3d 221, 227 (5th Cir. 2005); see also *Smelser v. Norfolk S. Ry Co.*, 105 F.3d 299, 303 (6th Cir. 1997).

12. Even if the expert is qualified to render an opinion regarding a particular subject, the opinion must nevertheless be based on a reliable foundation, including accurate and relevant facts, in order to be admissible. While *Daubert's* focus is

primarily on principles and methodology, "conclusions and methodology are not entirely distinct from one another." *Joiner*, 522 U.S. at 146; *Kumho Tire*, 526 U.S. at 157 (district courts must "scrutinize" whether the principles and methods used by the expert have properly been applied to the facts of the case). The district court must examine the expert's conclusions in order to determine whether they could reliably follow from the facts known to the expert and the methodology used." *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 153 (3rd Cir. 1999). If the court concludes that there is simply too great an "analytical gap" between the facts and the expert's conclusion from those facts, the opinion should be excluded. *Joiner*, 522 U.S. at 146; *see also Moore*, 151 F.3d at 276 ("a district court, while acting as a gatekeeper for expert evidence, must evaluate whether there is an adequate 'fit' between the data and the opinion proffered"). In short: an expert's bare opinion will not suffice.

### IV. None of the Defendant's Experts Have Ever Evaluated Jayatilaka

13. NBME has designated three experts, and all three are of the opinion that Jayatilaka is not entitled to any accommodation for his disability. Remarkably, none of the experts have personally interviewed Jayatilaka, or conducted any tests on him. Instead, they rely solely on his test results.

14. All of NBME's experts agree that personal evaluations would be the appropriate method to diagnose Jayatilaka. Each of the witnesses stated that they would not conduct a diagnosis without a personal interview. In other words, all of Defendant's experts agree that personal evaluations are necessary for a psychiatric

diagnosis, but somehow do not believe that a personal evaluation is necessary to refute the diagnosis of another physician.

### A. Dr. Nancy L. Nussbaum

15. Federal Rules of Evidence Rule 702 establishes three factors to evaluate whether expert testimony is admissible: "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702. Remarkably, Dr. Nancy L. Nussbaum's (Nussbaum) testimony fails all three of these factors.

16. Nussbaum's testimony is not "based upon sufficient facts or data" by her own admission. In her deposition, Nussbaum agreed that there are four steps to evaluate a person for a disability: to first take a history of the person, administer any tests necessary, make clinical observations, and review records. (Nussbaum Deposition, pg. 9, line 19 though pg. 10, line 9.) Further, Nussbaum stated that she would "never presume to make a diagnosis of a person without personally meeting that person." (Nussbaum Deposition, pg. 10, lines 10-13).

17. Nussbaum did not take a history, administer any tests, or make any clinical observations of Jayatilaka. (Nussbaum Deposition, pg. 34, lines 9-16). By her own admission, Nussbaum has entirely failed to gather facts necessary to make a clinical diagnosis.

18. Nor is Nussbaum's testimony "the product of reliable principles and methods." Nussbaum testified that she would never "never presume to make a diagnosis of a person without personally meeting that person." (Nussbaum Deposition, pg. 10, lines 10-13). However, that is exactly what Nussbaum's testimony seeks to accomplish. Nussbaum determined, after only "a couple of hours" of review that Jayatilaka is not entitled to ADA accommodations. (Nussbaum Deposition, pg. 16, line 9; pg, 17 lines 8-13). Nussbaum herself agrees that her own methodology is not one which is generally accepted by the "relevant scientific" community. *See Kumho Tire*, 526 U.S. at 149-50 (citing *Daubert*, 509 U.S. at 592-94). Nussbaum's diagnosis is not a product of the psychiatric method of diagnosis *by her own admission*, but instead merely a two-hour review of diagnostic tests; it is not the "product of reliable principles and methods."

19. Nussbaum failed to meet the third requirement of Rule 702 as well. Rule 702 requires an expert witness to apply the principles and methods reliably to the facts of the case. This is simply impossible, given that Nussbaum did not even use the principles and methods necessary to make a psychological diagnosis.

20. If the expert fails to ground his or her opinion in the principles and methodology of the relevant discipline, the opinion is "inadmissible no matter how imposing [the] credentials of the proffered expert." In determining whether an expert's methods are reliable, the courts are not required "to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. *Joiner*, 522 U.S. at 146. Nussbaum's testimony clearly falls under the Supreme Court's ruling in *Joiner*. Although she recognizes the professional standard necessary to make a competent diagnosis, Nussbaum has not undertaken these steps. As a result, Nussbaum's testimony must be stricken.

### B. Catherine Farmer, Psy.D.

21. Catherine Farmer ("Farmer") is a trained psychologist and the manager of disability service and ADA compliance officer for NBME. (Farmer Deposition, pg. 4, lines 12-14). She was the "ultimate decision maker" who denied Jayatilaka's request for accommodation. (Farmer Deposition, pg. 42, lines 13-15). Like Nussbaum, Farmer never personally interviewed Jayatilaka, nor has she conducted any history or taken any steps to perform a diagnosis.

22. Farmer testified that taking "a history is important to make a diagnosis" and that the proper method to conduct a diagnosis for a psychological disorder required the psychologist "to take the history and administer whatever tests are indicated." (Farmer Deposition, pg. 9, lines 15-16; pg. 11, lines 9-12). Farmer stated that she personally would not make a cognitive disorder diagnosis without taking

those steps. (Farmer Deposition, pg. 11, lines 4-8). Farmer agreed that, in order to make a diagnosis, a psychologist would have to meet with the patient. (Farmer Deposition, pg. 51, lines 6-16).

23.  All of the same objections to Nussbaum apply equally to Farmer. Farmer testified that the correct method to diagnose a patient with a cognitive disorder was through a patient interview and testing, which she did not conduct. Farmer simply did not obtain the facts necessary to form an expert opinion. Further, she did not conduct her psychological testing in the manner that she testified would be reliable. Because of her failure to apply the methods and principles of psychologists, her testimony is inherently unreliable and completely fails under both *Daubert* and Federal Rules of Evidence Rule 702.

### C. Dr. George Litchford

24.  Dr. George Litchford ("Litchford") is the medical consultant for NBME. He is trained in clinical psychology, and practices psychology in addition to his consultation work for the NBME.

25.  Litchford generally agrees with Farmer and Nussbaum as to the standards necessary to diagnose a patient for a cognitive disorder. Litchford, at his deposition, testified that the "general standard" for a cognitive disorder diagnosis would be to "meet the patient, take the history, administer the testing, make clinical observations, review the documents and as part of the testing, rule out other conditions." (Litchford Deposition, pg. 9, lines 1-9).

26. Litchford never met with Jayatilaka. (Litchford Deposition, pg. 9, lines 10-12). Instead, Litchford reviewed Jayatilaka's file for approximately an hour and forty-five minutes. (Litchford Deposition, pg. 13, lines 1-8).

27. All of the objections to Nussbaum and Farmer are also applicable to Litchford. Litchford testified that the correct method to diagnose a patient with a cognitive disorder was through a patient interview, taking a history, and appropriate testing and analysis. Litchford simply reviewed the records of another psychiatrist and second-guessed the diagnosis. This is not the standard for diagnosis cognitive disorders that all three experts testified to.

28. Litchford did not conduct his psychological testing — if it can be called that — in the manner that he testified would be reliable. He failed to apply the methods and principles of psychologists. His testimony is inherently unreliable and completely fails under both *Daubert* and Federal Rules of Evidence Rule 702.

## V. Because all of the Defendant's Experts Failed to Use Proper Methods to Arrive at Their Diagnosis, Their Testimony Must Be Stricken

29. Under *Daubert*, an expert's opinion must be grounded in scientific method and must fit the facts of the case in question. *Daubert*, 509 U.S. 590. The opinions of an expert must be excluded when the methods and data used lack sufficient probative force and reliability such that a reasonable expert could rely upon them. *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 748 (3rd Cir. 1994)

(quoting *In re Agent Orange Prod. Liab. Litig.*, 611 F.Supp. 1223, 1245 (E.D.N.Y. 1985)). Such is the case with the Defendant's three experts.

30. The proponent of the expert testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements are met under Rule 702. *In re Silicone Gel Breasts Implants Products Liability Litigation*, 318 F.Supp.2d 879, 889 (C.D.Cal.2004). When an expert relies on insufficient data, "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Menendez v. Terhune*, 422 F.3d 1012, 1033 (9th Cir.2005) (trial court properly excluded expert testimony based on lack of foundation).

31. Numerous Ninth Circuit cases have excluded expert testimony where there is an analytical gap between the testimony proposed and the research and data available. *See e.g. Domingo v. T.K.*, 289 F.3d 600, 606-607 (9th Cir.2002) (finding that district court's exclusion of expert's causation testimony was not an abuse of discretion, in part because expert did not provide "analytical support" for his extrapolation of animal study results to humans and also because there was no evidence that the expert had applied a valid scientific method in developing his theory and there were unexplained gaps between the expert's premises and his conclusion); *Lanphere Enterprises, Inc. v. Jiffy Lube International Inc.*, 138 Fed.Appx. 20 (9th Cir. 2005)(Not published) (Expert testimony excluded where research conducted only provided "marginal support for the expert's opinions").

32. In this case, the analytical gap between the data relied upon by the experts is huge. All three experts state that personal interviews are necessary for a psychological diagnosis. (Nussbaum Deposition, pg. 9, line 19 though pg. 10, line 9); (Farmer Deposition, pg. 9, lines 15-16; pg. 11, lines 9-12); (Litchford Deposition, pg. 9, lines 1-9). Yet none of the Defendant's experts took that step.

33. Ultimately, the testimony of all three NBME experts amounts to simple *ipse dixit*. The experts did not rely on the scientific principles to which they testified, as *Daubert* requires. They did not use the recognized methodology of psychologists and mental health experts.

## VI. Conclusion

34. Because the Defendant's experts, by their own admission, did not take the steps reasonable necessary to conduct a diagnosis of a cognitive disorder, their testimony must be stricken. Their testimony is not reliable, as necessary under Rule 702 and the Supreme Court's decision in *Daubert*. Their testimony is merely conjecture based on a cursory review of the plaintiff's records, and is designed to mislead its audience.

/ / /

/ / /

/ / /

For the above reasons, Plaintiff Druvi Jayatilaka prays that this court strikes Defendant's expert testimony from the record and excludes their testimony from all consideration.

Respectfully submitted,

MULLIN, HOARD & BROWN, LLP

By: _____
Vincent E. Nowak
Texas SBN 15121550
MULLIN HOARD & BROWN, LLP
P. O. Box 31656
Amarillo, Texas 79120-1656
806.372.5050 (Phone)
806.372.5086 (Fax)
jmb@mhba.com (e-mail)
vnowak@mhba.com (e-mail)
Attorneys for Plaintiff,
DRUVI JAYATILAKA

# PROOF OF SERVICE

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California; I am over the age of 18 and not a party to the within action; my business address is 10250 Constellation Boulevard, 19th Floor, Los Angeles, California 90067.

On February 1, 2010, at the direction of a member of the Bar of this Court, I served the within:

**PLAINTIFF'S MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF DEFENDANT'S EXPERTS NANCY L. NUSSBAUM, CATHERINE FARMER, AND GEORGE LITCHFORD, AND BRIEF IN SUPPORT**

on the interested parties to this action by delivering a copy thereof in a sealed envelope addressed to each of said interested parties at the following address(es):

Gregory C. Tenhoff, Esq.
(gtenhoff@cooley.com)
Wendy J. Brenner, Esq.
(wbrenner@cooley.com)
Cooley, Godward, Kronish, LLP
5 Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155

[X] (BY MAIL) I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service. This correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business at our Firm's office address in Los Angeles, California. Service made pursuant to this paragraph, upon motion of a party served, shall be presumed invalid if the postal cancellation date of postage meter date on the envelope is more than one day after the date of deposit for mailing contained in this affidavit.

[ ] (BY OVERNIGHT DELIVERY SERVICE) I served the foregoing document by Federal Express, an express service carrier which provides overnight delivery, as follows. I placed true copies of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed to each interested party as set forth above, with fees for overnight delivery paid or provided for.

[ ] (BY PERSONAL SERVICE) I caused such envelope to be delivered by hand to the offices of the above named addressee(s).

[X] (BY –E-MAIL) I caused such documents to be delivered via electronic transmission to the offices of the addressee(s) at the e-mail addresses listed above.

Executed this 1st day of February, 2010, at Los Angeles, California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
ERIKA BARBOUR

700531-1