1 COOLEY GODWARD KRONISH LLP
GREGORY C. TENHOFF (154553)
2 (tenhoffgc@cooley.com)
WENDY J. BRENNER (198608)
3 (brennerwj@cooley.com)
Five Palo Alto Square
4 3000 El Camino Real
Palo Alto, CA 94306-2155
5 Telephone: (650) 843-5000
Facsimile: (650) 857-0663
6
Attorneys for Defendant
7 NATIONAL BOARD OF MEDICAL EXAMINERS

8
UNITED STATES DISTRICT COURT
9
CENTRAL DISTRICT
10
WESTERN DIVISION
11

12

| | |
|---|---|
| 13 DRUVI JAYATILAKA, | Case No. CV 09-02932 PA (CWx) |
| 14 Plaintiff, | **DEFENDANT NBME'S** |
| | **MEMORANDUM OF CONTENTIONS** |
| 15 v. | **OF FACT AND LAW** |
| 16 NATIONAL BOARD OF MEDICAL | Date Action Filed: April 27, 2009 |
| EXAMINERS, | Trial Date: April 6, 2010 |
| 17 | |
| Defendant. | Honorable Percy Anderson |
| 18 | |

19

20      Pursuant to Local Rule 16–4 and this Court's July 27, 2009 Civil Minutes

21 Order and August 3, 2009 Amended Scheduling Order, Defendant National Board

22 of Medical Examiners ("NBME") hereby submits this Memorandum of

23 Contentions of Fact and Law.

24 **1.    FACTUAL CONTENTIONS.**

25      This is a case arising under Title III of the Americans with Disabilities Act

26 (42 U.S.C. §12101 et. seq.). Defendant National Board of Medical Examiners

27 ("NBME") is a non-profit organization that co-sponsors the United States Medical

28 Licensing Exam (the "USMLE"), a three-step examination.    Plaintiff Druvi

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

1163883 v1/SF                1.

NBME'S MEMO OF CONTENTIONS OF
LAW & FACT
CASE NO. CV 09-02932 PA (CWx)

1  Jayatilaka ("Jayatilaka") is a graduate of Universidad de Autonoma de Guadalajara

2  in Guadalajara, Mexico, who seeks a license to practice medicine in the United

3  States.  Among other things, such licensure requires successful completion of all

4  three USMLE "Steps."

5  After failing to gain admittance to any U.S. medical schools, Jayatilaka

6  attended and obtained his medical degree from the Universidad de Autonoma de

7  Guadalajara in Guadalajara, Mexico in 1997.  After medical school, Jayatilaka

8  passed Step 1 of the USMLE, after multiple attempts, without requesting or

9  receiving any accommodations whatsoever.  Over the course of the next ten years,

10  Jayatilaka proceeded intermittently to take the Step 2 Clinical Knowledge ("CK")

11  portion of the USMLE, allowing months, and, at times years, to elapse between test

12  attempts.

13  Recently, and after barely failing the Step 2 CK examination on his sixth try,

14  in July 2008, Jayatilaka applied for an accommodation on the examination.  This

15  was the first time in his educational or professional career that he ever requested

16  such an accommodation.  To the contrary, a detailed review of his grades and

17  achievement scores from high school through medical school reveals that he was an

18  average student and test-taker who did not request or receive any accommodations.

19  In his accommodation request, Jayatilaka represented that he had two

20  disabilities that justified his request for double the standard testing time: (1) a

21  Reading Disorder; and (2) a Mixed Receptive/Expressive Language Disorder.

22  According to Jayatilaka's accommodation request, he suffered a depressed skull

23  fracture during a fight outside a bar in Mexico in 1995.  Nearly thirteen years after

24  the incident, Jayatilaka now claims that this skull fracture has resulted in "scores of

25  auditory and reading comprehension [that] are below expectation" and "difficulty

26  with comprehension for both written and oral language."

27  Along with his accommodation request, Jayatilaka also submitted reports

28  from his treating psychologists.  He submitted a May 21, 2008 Neuropsychological

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

1163883 v1/SF                            2.

NBME'S MEMO OF CONTENTIONS OF
LAW & FACT
CASE NO. CV 09-02932 PA (CWx)

1   Evaluation conducted by Drs. Terrance Dushenko and Andrew Levine which

2   contained Jayatilaka's results from a battery of neuropsychological tests.

3   Importantly, this evaluation contained no clinical diagnosis of any disability,

4   including no diagnosis of a Reading Disorder or a Mixed Receptive/Expressive

5   Language Disorder.  On the contrary, the report noted that no such diagnosis could

6   be made based on Jayatilaka's neuropsychological test scores.  Jayatilaka also

7   submitted medical records relating to his head injury.  These too, however, failed to

8   establish a disability.  According to these records, numerous MRI scans after the

9   1995 injury revealed no evidence of brain damage from the 1995 incident.

10      Following receipt of Jayatilaka's accommodation request, the NBME

11  provided his file to an expert in the field of learning disabilities for review.  The

12  expert subsequently provided the NBME with a report recommending denial of the

13  requested accommodation, finding that Jayatilaka's neuropsychological test scores

14  showed he was an individual with average cognitive functioning.  Accordingly, on

15  September 16, 2008, the NBME denied Jayatilaka's accommodation request.

16      On December 22, 2008, Jayatilaka requested reconsideration of the NBME's

17  decision.  In support of this request, Jayatilaka submitted the same May 21, 2008

18  Neuropsychological Evaluation previously submitted, along with an affidavit from

19  Dr. Dushenko listing, for the first time, a diagnosis of Cognitive Disorder Not

20  Otherwise Specified ("CDNOS").

21      Following receipt of this request, the NBME engaged a second expert – a

22  neuropsychologist knowledgeable in the area of brain injuries.  Again, this expert

23  concluded that Jayatilaka had failed to establish a functional impairment that would

24  justify an accommodation under the ADA.  Accordingly, on February 12, 2009, the

25  NBME denied Jayatilaka's request for reconsideration.  This lawsuit followed.

26  Jayatilaka has brought suit against the NBME seeking injunctive relief under the

27  ADA.

28  ///

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

1163883 v1/SF

3.

NBME'S MEMO OF CONTENTIONS OF
LAW & FACT
CASE NO. CV 09-02932 PA (CWx)

**2.     LEGAL CONTENTIONS.**

    **(a)     Claims.**  Jayatilaka has pled the following claim: Defendant violated the Americans with Disabilities Act, 42 U.S.C. §12101 et. seq.

    **(b)     Elements of Jayatilaka's Claim for Violation of the ADA**.

        **(i)**     Jayatilaka must establish that he has a disability within the meaning of the Americans with Disabilities Act, which requires Plaintiff to prove both:

            **(1)**     He has a physical or mental impairment.   42 U.S.C. § 12101; 28 CFR pt. 36 (1996); *see also Love v. Law School Admission Council, Inc.*, 513 F. Supp. 2d 206, 223  (E.D. Penn. 2007); *Pazery v. New York State Bd. of Law Exam'rs*, 849 F. Supp. 284 (S.D.N.Y. 1994); *Ware v. Wyoming Bd. of Law Exam'rs*, 973 F. Supp. 1339, 1357 (D. Wyo. 1997), *aff'd* 161 F.3d 19 (10th Cir. 1998).

            **(2)**     The mental or physical impairment substantially limits him in a major life activity as compared to most people in the general population. 42 U.S.C. § 12101; 28 CFR pt. 36 (1996); *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 627 (6th Cir. 2000).

        **(ii)**     Jayatilaka must establish that the NBME failed to offer the USMLE "in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals."  42 U.S.C. § 12189; *see also Memmer v. Marin County Courts*, 169 F.3d 630, 634 (9th Cir. 1999) (requiring "accommodations be provided only 'when the modifications are necessary to avoid discrimination on the basis of disability'"); *Doe v. Nat'l Bd. of Med. Exam'rs*, 199 F.3d 146 (3d Cir. 1999); 28 C.F.R. 36.309(b)(i).

///

///

///

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

1163883 v1/SF

4.

**NBME'S MEMO OF CONTENTIONS OF
LAW & FACT
CASE NO. CV 09-02932 PA (CWx)**

1

**(c)     Summary of Evidence in Opposition to Jayatilaka's Claims.**

2

**(i)     Jayatilaka Is Not Disabled Under the ADA.**   Jayatilaka is

3

unable to show that he falls under the protection of the ADA because he is unable

4

to establish that he is disabled (i.e. he is unable to prove he has a physical or mental

5

impairment that substantially limits him in a major life activity).

6

**(1)     There is no evidence that Jayatilaka has a Reading**

7

**Disorder, Learning Disorder, or Mixed Expressive/Receptive Language**

**Disorder.**

8

- Although Jayatilaka has requested an accommodation from the NBME on

9

the basis of a Reading Disorder and Mixed Expressive/Receptive

10

Language Disorder, he has never been diagnosed with these impairments.

Moreover, his treating neuropsychologists agree that Jayatilaka does ***not***

11

meet the diagnostic criteria for these disorders.

12

- The NBME's expert also agrees that Jayatilaka does not meet the

13

diagnostic criteria for a Reading Disorder, Learning Disorder, or Mixed

14

Expressive/Receptive Language Disorder.

15

**(2)     There is no evidence that Jayatilaka has a Cognitive**

**Disorder Not Otherwise Specified.**

16

- Inexplicably, and only after Jayatilaka's initial request for

17

accommodations was denied, Dr. Dushenko diagnosed Jayatilaka with

18

Cognitive Disorder Not Otherwise Specified ("CDNOS").   Yet, Dr.

Dushenko did not administer a single additional neuropsychological test

19

to justify his subsequent diagnosis.  Moreover, Jayatilaka's other treating

20

psychologist, Dr. Levine, does not agree with the diagnosis of CDNOS.

21

- Under CDNOS, in order to be impaired, Jayatilaka's 1995 injury must be

22

the cause of his alleged deficits.

23

- Medical reports immediately following the 1995 incident, including MRI

24

reports, do not reveal a physical or mental impairment.  After the attack

in Mexico, Jayatilaka immediately returned to the United States for

25

treatment of his injury.  As a result of Jayatilaka's 1995 attack in Mexico,

26

he was diagnosed pre and postoperatively with a compound depressed

skull fracture.  He underwent surgery to repair the fracture; Jayatilaka

27

was released three days later.   Jayatilaka reported that he played

28

basketball the day after he was released.   A traumatic brain injury

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

1163883 v1/SF

5.

**NBME'S MEMO OF CONTENTIONS OF
LAW & FACT
CASE NO. CV 09-02932 PA (CWx)**

1
2
3

requires injury to the brain itself.  Available medical records, including MRI scans, do not indicate any injury to his brain, only a fracture of Jayatilaka's skull.

4
5
6
7

- Recent medical reports also do no show any brain injury.  An MRI in 2003 was negative.  A neurological evaluation in 2006 revealed that "[m]ental status is normal. Gait and station are normal.  Motor, sensory and reflex examination of the limbs are normal.  Cerebellar testing and tone testing are normal. . . . Neurovascular examination was unremarkable."

8
9
10
11
12
13
14

- Jayatilaka's academic history throughout high school and college showed both that he was an average student (in terms of GPA and class standing) and that he did not request or receive any accommodations from either his high school or his college.  He graduated 33 out of 60 students in high school with a 3.13 cumulative grade point average.  He graduated 318 out of 431 college students, with a 2.69 cumulative grade point average.  He generally earned B and C grades in his science courses during college.  Jayatilaka's SAT scores and MCAT scores, which were obtained before the 1995 incident, were also within the average range.

15
16
17
18
19

- Because he was an average student, it was difficult for Jayatilaka to even gain acceptance into medical school.  In fact, Jayatilaka was denied admittance to every U.S. medical school to which he applied.  Jayatilaka was eventually accepted into the program at Universidad Autonoma de Guadalajara in Mexico.  Jayatilaka obtained average scores in his medical school courses both before and after the 1995 incident.  He obtained the minimum passing grade of "6" in four of his classes in medical school.

20
21
22
23

- Jayatilaka was an average academic performer both before *and* after the 1995 incident, which means the incident has not caused any mental impairments.  For example, his current IQ score is in the average range and his "premorbid" IQ score (or a measure of what his IQ was before the 1995 incident) is also in the average range.

24
25
26
27

- Jayatilaka has never before requested or received any accommodations throughout his educational or professional career.  Moreover, Jayatilaka took and passed the USMLE Step 1 without the aid of any accommodations after the 1995 incident which purportedly caused his alleged impairments.

28

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

1163883 v1/SF

6.

NBME'S MEMO OF CONTENTIONS OF
LAW & FACT
CASE NO. CV 09-02932 PA (CWx)

- Jayatilaka's scores from his December 2008 Neuropsychological Evaluation are inconsistent with CDNOS. For example, he scored in the average, or better, range in nearly all functional areas assessed, including General Intellectual Functioning, Achievement Testing, Attention/Working Memory, Speech and Language Functioning, Visuospatial Functioning, Learning and Memory, and Executive Functioning.

- Out of a battery of about seventy-one tests, Dr. Dushenko bases his diagnosis of CDNOS on only a few low scores. For example, Jayatilaka scored in the low average range on the Boston Naming Test. Dr. Levine acknowledges however that the test may have been incorrectly administered and this test result may be influenced by the fact that English is Jayatilaka's second language. Dr. Dushenko also bases his diagnosis on the 04/02/08 administration of the [DKEFS] Verbal Fluency exam. This test was administered twice and Jayatilaka scored in the average range on his second attempt. Finally, Jayatilaka received a low score on the Wisconsin Card Sorting Test. However, Dr. Levine acknowledged that an abbreviated version of the test was administered and that he would have expected Jayatilaka's score on the full version of the test to have been higher.

### (3)  There are numerous explanations for Jayatilaka's failure to pass the USMLE Step 2 CK, including:

- Jayatilaka obtained his medical degree from a university in Guadalajara, Mexico. All of his courses were conducted in Spanish, a language Jayatilaka does not speak, read, or understand.

- It has been nearly 13 years since Jayatilaka graduated medical school. Jayatilaka has often allowed years to pass between his attempts to pass the USMLE Step 2 CK. For example, Jayatilaka allowed two and a half years to elapse after he took the USMLE Step 2 CK on December 21, 2001. After the October 28, 2004 exam, he allowed nearly three years to elapse before he attempted the USMLE Step 2 CK again. Jayatilaka has not attempted to pass the exam since August 31, 2007.

- Evidence from psychologists and psychiatrists reveal that Jayatilaka's own lack of effort, focus, and desire to pass Step 2 CK are impacting his motivation to study for and pass the test, including evidence that he is conflicted about becoming a doctor. These doctors also reveal that Jayatilaka exhibits tendencies to sabotage his own success.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

1163883 v1/SF

7.

NBME'S MEMO OF CONTENTIONS OF
LAW & FACT
CASE NO. CV 09-02932 PA (CWx)

- Familial pressures and stress could be a significant factor in Jayatilaka's anxiety and ambivalence regarding Step 2 CK.

**(ii)   Jayatilaka is unable to show that by denying his requested accommodation, the NBME has denied Jayatilaka "access" to the USMLE Step 2 CK examination.**

- Jayatilaka fails to offer any explanation or basis for his requested accommodation. As stated above, Jayatilaka does not have any Reading Disorder, Learning Disorder, or Mixed Expressive/Receptive Language Disorder. Thus he reads, learns, and processes information within the normal limits. Tests given during his Neuropsychological Evaluation also reveal that his attention is within normal limits.

- Jayatilaka's doctors failed to explain why his alleged disability of CDNOS requires double the standard testing time. Rather, Jayatilaka reads, learns, and processes information within normal limits. He has failed to show why double the standard testing time on the USMLE Step 2 CK is necessary under these circumstances to provide him with access to the examination.

**(d)   Affirmative Defenses.**  Defendant has pleaded and plans to pursue the following affirmative defenses:  None.

**(e)   Evidentiary Issues.**  Defendant does not anticipate evidentiary issues in regards to the preceding evidence.

**(f)   Issues of Law.**  There appears to be no dispute over the law applicable to this case as set forth in 42 U.S.C. §§ 12101 and 12189, along with the applicable regulations and interpretive case law.

**3.   BIFURCATION OF ISSUES.**  Defendant does not request bifurcation of any issues.

**4.   NON-JURY TRIAL**.  None of the issues in this matter are triable to a jury as a matter of right.

**5.   ATTORNEYS' FEES.**  Attorneys' fees and costs are available to the prevailing party in this case pursuant to 42 U.S.C. § 12188.

///

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

1163883 v1/SF

8.

NBME'S MEMO OF CONTENTIONS OF
LAW & FACT
CASE NO. CV 09-02932 PA (CWx)

1    **6.     ABANDONMENT OF ISSUES.**  Defendant does not intend to pursue its

2    affirmative defenses as pleaded in its Answer to Plaintiff's First Amended

3    Complaint.

4

5    Dated:  February 19, 2010             COOLEY GODWARD KRONISH LLP
                                           GREGORY C. TENHOFF (154553)
6                                          WENDY J. BRENNER (198608)

7

8                                                        /S/
                                           _____
9                                          Gregory C. Tenhoff (154553)
                                           Attorneys for Defendant
10                                         NATIONAL BOARD OF MEDICAL
                                           EXAMINERS

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

1163883 v1/SF                              9.              **NBME'S MEMO OF CONTENTIONS OF
                                                           LAW & FACT
                                                           CASE NO. CV 09-02932 PA (CWx)**