1   Vincent E. Nowak, Texas State Bar No. 15121550
    MULLIN HOARD & BROWN, LLP
2   P.O. Box 31656
    Amarillo, TX   79120-1656
3   Telephone: (806) 372-5050
    Facsimile: (806) 372-5086
4

5   Alisa M. Morgenthaler, State Bar No. 146940
    GLASER, WEIL, FINK, JACOBS
6    HOWARD & SHAPIRO, LLP
    10250 Constellation Boulevard, 19th Floor
7   Los Angeles, California 90067
    Telephone:  (310) 282-6287
8   Facsimile:  (310) 556-2920

9   Attorneys for Plaintiff

10   DRUVI JAYATILAKA

11   COOLEY GODWARD KRONISH LLP
    GREGORY C. TENHOFF (154553)
12   (gtenhoff@cooley.com)
    WENDY J. BRENNER (198608)
13   (wbrenner@cooley.com)
    Five Palo Alto Square, 4th Floor
14   3000 El Camino Real
    Palo Alto, CA  94306-2155
15   Telephone:  (650) 843-5000
    Facsimile:  (650) 857-0663
16

17   Attorneys for Defendant
    NATIONAL BOARD OF MEDICAL EXAMINERS

18

19              UNITED STATES DISTRICT COURT

20                   CENTRAL DISTRICT

21                 WESTERN DIVISION

22

23   DRUVI JAYATILAKA,        Case No.  CV 09-02932 PA (CWx)

24           Plaintiff,       **PROPOSED PRE-TRIAL CONFERENCE ORDER**

25      v.

26   NATIONAL BOARD OF MEDICAL
    EXAMINERS,
27           Defendant.

28

1

2                              **TABLE OF CONTENTS**

3

4    **1.     PARTIES**..................................................................**3**

5    **2.     JURISDICTION**......................................................**3**

6    **3.     TRIAL TIME ESTIMATE**......................................**3**

7    **4.     NON-JURY TRIAL**................................................**3**

8    **5.     ADMITTED FACTS**.............................................**3**

9    **6.     STIPULATED FACTS**...........................................**3**

10   **7.     CLAIMS**...............................................................**3**

11   **8.     ISSUES REMAINED TO BE TRIED**......................**9**

12   **9.     DISCOVERY COMPLETE**.....................................**9**

13   **10.    F.R.CIV.P. 26(a)(3) DISCLOSURES**......................**9**

14   **11.    EXHIBIT LISTS**..................................................**9**

15   **12.    WITNESS LISTS**..................................................**9**

16   **13.    MOTIONS PENDING**...........................................**10**

17   **14.    BIFURCATION**...................................................**10**

18   **15.    ORDER SHALL SUPERSEDE**..............................**10**

19

20

21

22

23

24

25

26

27

28

Following pretrial proceedings, pursuant to Rule 16, F.R.Civ.P. and L.R. 16, IT IS ORDERED:

1.     The parties are: (1) Druvi Jayatilaka ("Plaintiff"); and (2) National Board of Medical Examiners ("Defendant"). Each of these parties has been served and has appeared.

The pleadings which raise the issues are: (1) Plaintiff's First Amended Complaint; and (2) Defendant's Answer to Plaintiff's First Amended Complaint.

2.     Federal jurisdiction and venue are invoked upon the following grounds: The claims presented for trial are subject to this Court's jurisdiction under 28 U.S.C. § 1331. Venue is proper under 28 U.S.C. § 1391 in that Defendant NBME was doing business within the district. There is no dispute between the parties as to subject matter jurisdiction or venue.

3.     The trial is estimated to take 2 trial days.

4.     The trial is to be a non-jury trial. At least five (5) court days prior to the trial date each party shall lodge and serve by mail, fax, or personal delivery the findings of fact and conclusions of law the party expects the Court to make upon proof at the time of trial as required by L.R. 52-1.

5.     The following facts are admitted and require no proof: See Stipulation of Facts, attached hereto as Exhibit A.

6.     The following facts, though stipulated, shall be without prejudice to any evidentiary objection: None.

7.     Claims and Defenses to be presented at trial.
      (a)     Plaintiff.

           (i)             Claims. Plaintiff plans to pursue two claims against the Defendant: Plaintiff claims that Defendant violated the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq and a claim for Attorneys Fees under 42 U.S.C. § 12188(a)(1).

           (ii)           Elements.
<u>Claim 1, Element 1:</u>

The first element of the ADA claim that the plaintiff must prove is that the plaintiff has a recognized disability under the ADA. A "disability" under the ADA is a physical or mental impairment that substantially limits one or more of the major life activities of such individual.

The terms disability and physical or mental impairment include any mental or psychological disorder such as learning disabilities.

Major life activities are the normal activities of living which a non-disabled person can do with little or no difficulty, such as caring for oneself, performing manual tasks, walking, sleeping, seeing, hearing, speaking, breathing, learning, engaging in sexual relations, reproducing, interacting with others, and working.

A limitation is substantial if the disabled person is unable to perform the activity or is significantly restricted in doing so.

Factors to consider in deciding whether a major life activity is substantially limited include:

(1) the nature and severity of the impairment;

(2) the duration or expected duration of the impairment; and

(3) the permanent or long-term impact of the impairment.

<u>Claim 1, Element 2:</u>

The second element of the ADA claim that the plaintiff must prove is that the plaintiff is a qualified individual under the ADA.

The term qualified individual means an individual with a disability who, with or without a reasonable accommodation, can perform the essential functions of the examination that such individual takes or desires to take. The individual must satisfy the requisite experience, education, and other medical licensing-related requirements to take the examination.

Claim 1, Element 3:

To establish the defendant's duty to provide a reasonable accommodation, the plaintiff must prove, by a preponderance of the evidence, both of the following elements:

1. the plaintiff requested of the defendant an accommodation due to a disability;

and

2. the defendant could have made a reasonable accommodation that would have enabled the plaintiff to perform the essential functions of the testing procedure. Under the ADA, accommodations by the defendant may include, but are not limited to:

(1) lengthening the time permitted for completing the examination, or

(2) other similar accommodations for individuals with plaintiff's disabilities.

It is for you to determine whether the accommodations requested by the plaintiff are reasonable.

A reasonable accommodation does not include changing or eliminating any essential function of the examination, shifting any of the essential functions of the subject examination to others, or creating a new examination for the disabled party.

Claim 1, Element 4:

A defendant is not required to provide an accommodation that will impose an undue hardship on the operation of the defendant's business. The term undue hardship means an action requiring significant difficulty or expense. It takes into account the financial realities of the particular defendant and refers to any accommodation that would be unduly costly, extensive, substantial, or disruptive, or that would fundamentally alter the nature or operation of the business. The factors to be considered in deciding whether an accommodation would cause undue hardship include:

(1) the nature and net cost of the accommodation, accounting for tax credits or deductions and other outside funding;

(2) the overall financial resources of the defendant's facility involved in the provision of the reasonable accommodation, the effect on expenses and resources, or the impact otherwise of such accommodation upon the operation of the facility; and

(7) the overall impact of the proposed accommodation on the operation of the defendant's facilities, including the impact on other examinees and the ability to conduct business.

*See* The Manual of Model Civil Jury Instructions for the Ninth Circuit, 12.2, 6, 8, 9 (2007).

Claim 2, Element 1:

4. U.S.C. § 12188(a)(1) incorporates the remedies set forth in 42 U.S.C. § 2000a-3(a).

Claim 2, Element 2:

42 U.S.C. § 2000a-3(a) remedies include the right to recovery of reasonable attorney's fees, and costs and expenses incurred in bringing a claim under the ADA.

Claim 2, Element 3:

Plaintiff prevails on its ADA claim.

(iii)    Evidence.  In brief, the key evidence Plaintiff relies on for each of the claims is:

Claim 1, Element 1:  Testimony of Plaintiff regarding his background, onset of his disability and impairment, and the continuing effect of his disability.  Testimony of Dr. Dushenko regarding his evaluation of Plaintiff and his diagnosis of Plaintiff's impairment.  Also, use of Plaintiff's Exhibits 1 - 6 to support the above testimony.

Claim 1, Element 2:  Testimony of Plaintiff regarding his background, onset of his disability and impairment, and the continuing effect of his disability.  Testimony of Dr. Dushenko regarding his evaluation of Plaintiff and his diagnosis of Plaintiff's impairment.  Also, use of Plaintiff's Exhibits 1 - 6 to support the above testimony.

Claim 1, Element 3:  Testimony of Plaintiff regarding his correspondence with Defendant, his request for accommodations and the denial of requested

1  accommodations.  The use of Plaintiff's Exhibits 7 - 13 showing his request and the

2  subsequent denial by Defendant.

3      Claim 1, Element 4:   Testimony of Plaintiff regarding his correspondence

4  with Defendant, his request for accommodations and the denial of requested

5  accommodations.  The use of Plaintiff's Exhibits 7 - 13 showing his request and the

6  subsequent denial.

7      Claim 2, Element 1:  This is a matter of law.

8      Claim 2, Element 2:  This is a matter of law.

9      Claim 2, Element 3:  This will be decided by the Judge and the final

10  trial upon the merits.

11

12      (b)    Defendant.  Defendant disagrees and objects to the elements as

13  set forth by Plaintiff under Section 7(a)(ii) above under Claim 1.  Under Title III of

14  the ADA, Defendant asserts that the appropriate elements are as follows:

15      (1)    Plaintiff must establish that he has a disability

16  within the meaning of the Americans with Disabilities Act, which requires Plaintiff

17  to prove both:

18      a.    He has a physical or mental impairment.  42

19  U.S.C. § 12101; 28 CFR pt. 36 (1996); *see also Love v. Law School Admission*

20  *Council, Inc.*, 513 F. Supp. 2d 206, 223  (E.D. Penn. 2007); *Pazery v. New York*

21  *State Bd. of Law Exam'rs*, 849 F. Supp. 284 (S.D.N.Y. 1994); *Ware v. Wyoming*

22  *Bd. of Law Exam'rs*, 973 F. Supp. 1339, 1357 (D. Wyo. 1997), *aff'd* 161 F.3d 19

23  (10th Cir. 1998).

24      b.    The    mental    or    physical    impairment

25  substantially limits him in a major life activity as compared to most people in the

26  general population.  42 U.S.C. § 12101; 28 CFR pt. 36 (1996); *Gonzales v. Nat'l*

27  *Bd. of Med. Exam'rs*, 225 F.3d 620, 627 (6th Cir. 2000).

28

1    (2)    Plaintiff must establish that Defendant failed to
2  offer the USMLE "in a place and manner accessible to persons with disabilities or
3  offer alternative accessible arrangements for such individuals." 42 U.S.C. § 12189;
4  *see also Memmer v. Marin County Courts*, 169 F.3d 630, 634 (9th Cir. 1999)
5  (requiring "accommodations be provided only 'when the modifications are
6  necessary to avoid discrimination on the basis of disability'"); *Doe v. Nat'l Bd. of*
7  *Med. Exam'rs*, 199 F.3d 146 (3d Cir. 1999); 28 C.F.R. 36.309(b)(i).

8    Defendant does not plan to pursue any affirmative defenses.

9    **8.**    In view of the admitted facts and the elements required to establish the
10  claims and affirmative defenses, the following issues remain to be tried:

11    (a)    Whether Plaintiff has carried his burden of proof to establish
12  that he is disabled under the ADA by showing both that: (1) he has a physical or
13  mental impairment; and (2) the impairment substantially limits him in a major life
14  activity as compared to most people in the general population;

15    (b)    Whether Plaintiff has carried his burden of proof to establish
16  that by refusing to grant him double time on the USMLE Step 2 CK, Defendant
17  denied Plaintiff access to the examination pursuant to 42 U.S.C. § 12189.

18    **9.**    All discovery is complete.

19    **10.**    All disclosures under F.R.Civ.P. 26(a)(3) have been made.

20    **11.**    The joint exhibit list of the parties has been filed under separate cover
21  as required by L.R. 16-6.1.   Unless all parties agree that an exhibit shall be
22  withdrawn, all exhibits will be admitted without objection at trial, except those
23  exhibits listed below. The objections and grounds therefore are:

24    Plaintiff objects to Exhibit Nos. _____ None _____.

25    Defendant objects to Exhibit Nos. _____ None _____.

26    **12.**    Witness lists of the parties have been filed with the Court.  Only the
27  witnesses identified in the lists will be permitted to testify (other than solely for
28  impeachment).  Jayatilaka hereby identifies Dr. Terrance Dushenko as his expert

1  witness.  The NBME objects to Dr. Dushenko's designation as an expert as set forth

2  in Joint MIL # 1.   The NBME hereby identifies Dr. George Litchford and

3  Dr. Nancy Nussbaum as its expert witnesses.

4           Each party intending to present evidence by way of deposition

5  testimony has marked such depositions in accordance with L.R. 16-2.7. For this

6  purpose, the following depositions shall be lodged with the Clerk as required by

7  L.R. 32-1 : Dr. Andrew Levine; Dr. Catherine Farmer; Dr. Dushenko.

8       **13.**   The following law and motion matters and motions in limine, and no

9  others, are pending or contemplated:

10          (a)   Plaintiff's Motion in Limine to Exclude Opinions and

11  Testimony of Defendant's Experts Nancy L. Nussbaum, Catherine Farmer, and

12  George Litchford;

13          (b)   Defendant NBME's Motion in Limine No. 1 to Preclude

14  Plaintiff from Offering Further Expert Testimony at Trial and Designating Experts;

15          (c)   Defendant NBME's Motion in Limine No. 2 to Exclude Lay

16  Opinion Testimony; and

17          (d)   Stipulated Motion in Limine to Exclude Evidence of Any

18  Medical Records or Test Results of Any Neurological or Neuropsychological Tests

19  of Plaintiff Jayatilaka Which Have Not Already Been Disclosed and Produced.

20      **14.**   Bifurcation of the following issues for trial is ordered: None.

21      **15.**   The foregoing admissions having been made by the parties, and the

22  parties having specified the foregoing issues remaining to be litigated, this Final

23  Pretrial Conference Order shall supersede the pleadings and govern the course of

24  the trial of this cause, unless modified to prevent manifest injustice.

25

26  Dated: _____, 2010

27

28  _____
    UNITED STATES DISTRICT JUDGE

1

2    Approved as to form and content.

3

4    Dated:   February 19, 2010                    COOLEY GODWARD KRONISH LLP
                                                     GREGORY C. TENHOFF (154553)
5                                                    WENDY J. BRENNER (198608)

6

7                                                              /S/
                                                     ─────────────────────────────
8                                                    GREGORY C. TENHOFF (154553)
                                                     Attorneys for the Defendant
9                                                    NATIONAL BOARD OF MEDICAL
                                                     EXAMINERS

10   Dated:   February 19, 2010                      MULLIN HOARD & BROWN, LLP
                                                     JOHN M. BROWN (87985)
11                                                   VINCENT E. NOWAK (*pro hac vice*)

12

13                                                             /S/
                                                     ─────────────────────────────
14                                                   VINCENT E. NOWAK
                                                     Attorneys for the Plaintiff
15                                                   DRUVI JAYATILAKA

16   832981 v4/HN

17

18

19

20

21

22

23

24

25

26

27

28

Stipulated Facts
(Exhibit A to Final Pretrial Conference Order)
Jayatilaka v. NBME

## I.     Background Facts About Druvi Jayatilaka

| | STIPULATED FACT | SUPPORTING EVIDENCE |
|---|---|---|
| 1. | Jayatilaka was born in Sri Lanka. | (Jayatilaka Depo. Tr. 90:2-8) |
| 2. | Jayatilaka speaks English as a second language. | (Jayatilaka Depo. Tr. 89:25-90:24) |
| 3. | Jayatilaka began speaking English at age four or five. | (Jayatilaka Depo. Tr. 90:9-10) |
| 4. | Jayatilaka attended Chadwick High School between 1983 and 1986. | CHS Transcript; SD0019–SD0020 (Depo. Ex. 9) |
| 5. | Jayatilaka graduated from Chadwick High School with a 3.13 cumulative grade point average. | CHS Transcript; SD0019–SD0020 (Depo. Ex. 9) |
| 6. | Jayatilaka graduated from Chadwick High School with a class rank of 33 out of 60 students. | CHS Transcript; SD0019–SD0020 (Depo. Ex. 9) |
| 7. | Jayatilaka did not request or receive any accommodations throughout high school. | |
| 8. | Jayatilaka attended Franklin and Marshall College between 1987 and 1991. | Franklin & Marshall Transcript; SD0105 (Depo. Ex. 10) |
| 9. | Jayatilaka graduated from Franklin and Marshall College with a 2.69 cumulative grade point average. | Franklin & Marshall Transcript; SD0105 (Depo. Ex. 10) |
| 10. | Jayatilaka graduated from Franklin and Marshall College with a class rank of 318 out of 431 students. | Franklin & Marshall Transcript; SD0105 (Depo. Ex. 10) |
| 11. | Jayatilaka earned the following grades in his science courses at Franklin and Marshall: General Chemistry 1 (B+), General Chemistry 2 (B); Intro Cellular Biology (B-), Organic Chemistry 1 (C); Developmental Biology (B-), Organic Chemistry 2 (F); Genetics (C); Organic Chemistry 2 (B+), General Physiology | Franklin & Marshall Transcript; SD0105 (Depo. Ex. 10) |

|  | (C); Population Biology (C-) |  |
|---|---|---|
| 12. | Jayatilaka did not request or receive any accommodations throughout his undergraduate education. | (Jayatilaka Depo. Tr. at 21:7-9) |
| 13. | Jayatilaka took the Scholastic Achievement Test ("SAT") on three occasions in 1986. | SAT score reports; SD0051 (Depo Ex. 12); SD0045–46; SD0041–42. |
| 14. | The SAT has two components: Math and Verbal. |  |
| 15. | The greatest possible score in any component (Math or Verbal) of the SAT examination taken by Jayatilaka was a score of 800. |  |
| 16. | The highest score Jayatilaka obtained on the Math component of the SAT was a 600, which corresponds to the eighty-third (83rd) percentile. | SAT score reports; SD0051 (Depo Ex. 12); SD0045–46; SD0041–42. |
| 17. | The highest score Jayatilaka obtained on the Verbal component of the SAT was a 510, which corresponds to the seventy-sixth (76th) percentile. | SAT score reports; SD0051 (Depo Ex. 12); SD0045–46; SD0041–42. |
| 18. | Jayatilaka took the Medical College Admissions Test ("MCAT") on four occasions. | MCAT score reports; SD0138–SD0139 (Depo. Ex. 13); SD0140–SD0143 (Depo. Ex. 27). |
| 19. | The MCAT has three components: Verbal Reasoning ("VR"); Physical Science ("PS") and Biological Science ("BS"). | MCAT score reports; SD0138–SD0139 (Depo. Ex. 13); SD0140–SD0143 (Depo. Ex. 27). |
| 20. | The greatest possible score in any component of the MCAT examinations taken by Jayatilaka was a score of 15. |  |
| 21. | The highest score Jayatilaka obtained on the VR component of the MCAT was a "9," which corresponds to the fifty-fifth to seventy-seven point nine (55.0–77.9) percentile. | MCAT score reports; SD0138–SD0139 (Depo. Ex. 13); SD0140–SD0143 (Depo. Ex. 27). |
| 22. | The highest score Jayatilaka obtained on the PS component of the MCAT was an "8," which corresponds to the forty-seventh to sixty-two point nine (47.0 – 62.9) percentile. | MCAT score reports; SD0138–SD0139 (Depo. Ex. 13); SD0140–SD0143 (Depo. Ex. 27). |

| | | |
|---|---|---|
| 23. | The highest score Jayatilaka obtained on the BS component of the MCAT was an "8," which corresponds to the forty-fifth to sixty-five point nine (45.0–65.9) percentile. | MCAT score reports; SD0138–SD0139 (Depo. Ex. 13); SD0140–SD0143 (Depo. Ex. 27). |
| 24. | In 1991, Jayatilaka applied to medical schools but was not accepted into any medical school. | UAG Personal Statement; SD0126–SD0127 (Depo. Ex. 28). |
| 25. | After he failed to obtain admission to any medical school in 1991, he took a year off. | UAG Personal Statement; SD0126–SD0127 (Depo. Ex. 28). |
| 26. | In 1992, Jayatilaka was accepted to medical school at Universidad Autonoma de Guadalajara ("UAG") in Guadalajara, Mexico, which Jayatilaka attended. | |
| 27. | All of Jayatilaka's classes at UAG were conducted in Spanish. | (Jayatilaka Depo. Tr. at 22:16–23:13) |
| 28. | Jayatilaka does not speak or write the Spanish language. | (Jayatilaka Depo. Tr. at 22:16–23:13) |
| 29. | Jayatilaka did not request or receive any accommodations throughout medical school. | (Jayatilaka Depo. Tr. at 22:11-14) |
| 30. | Jayatilaka earned the minimum passing score of "6" on four occasions in medical school. | UAG Transcript; SD0131-SD0133 (Depo. Ex. 11). |
| 31. | Jayatilaka graduated from UAG and received his medical school diploma in June 1997. | SD0135 |
| 32. | Jayatilaka successfully "completed a series of rotating clinical clerkships for the purpose of fulfilling Mexico's ninth and tenth semester program." | Letter from New York Medical College; SD0136 (Depo. Ex. 29). |

828622 v3/ HN

## II.   1995 Incident

| 33. | In December 1995, Jayatilaka was treated at St. Mary Medical Center in Long Beach, California. | (Depo. Ex. 31). |
|---|---|---|
| 34. | He underwent surgery for a depressed skull fracture. | (Depo. Ex. 31). |
| 35. | The fracture was located in the right parietal region of the skull. | N014–N015. |
| 36. | At the time of the incident, Jayatilaka reported to doctors at St. Mary Medical Center that he was "assaulted in Mexico, was struck on the head with a gun and was run over by a motor vehicle. He was brought to St. Mary Medical Center with a depressed skull fracture and then underwent surgery on 12/7/95." | (Depo. Ex. 31). |
| 37. | An MRI of Jayatilaka's brain taken on 05/18/96 was a "[n]egative MRI of the brain. No intracranial abnormality [was] seen." | SD0314 (Depo. Ex. 7). |
| 38. | An MRI of Jayatilaka's brain taken on 07/28/97 stated there had been "[n]o change since the prior study dated 5/18/96. No abnormality [was] seen." | SD0315 (Depo. Ex. 7). |
| 39. | An MRI of Jayatilaka's brain taken on 06/05/03 was "[n]egative." | SD0316 (Depo. Ex. 7). |
| 40. | In June 2006, Jayatilaka "underwent outpatient consultation with Dr. A.J. Aksamit, Jr. (Mayo Clinic-Rochester, Department of Neurology), due to recurrent headaches in the context of prior closed head trauma with surgical repair of depressed skull fracture, subsequent migraine, and history of sleep apnea." | SD0235 (Depo. Ex. 32). |
| 41. | An MRI of Jayatilaka's brain dated 06/05/03 was reviewed by doctors at the Mayo Clinic and was "felt to be unrevealing, by our neuroradiologist." | Mayo Clinic report dated June 8, 2006; SD0234 (Depo. Ex. 32). |
| 42. | An MRI Scan in 2006 of Jayatilaka's | Mayo Clinic report dated 07/31/06; SD0233 (Depo. Ex. 32). |

| | | |
|---|---|---|
| | "head/brain" was "unremarkable." | |
| 43. | No MRI scan taken of Jayatilaka's brain has ever revealed brain injury. | *See* Hornstein Neurologic Consultation; SD0169–SD0171 (Depo. Ex. 33) (stating "The patient did have an MRI scan of the brain at some point following his skull injury. It is reported to me that this was negative for any intracranial pathology"). |

828622 v3/ HN

### III.   Background Regarding the USMLE

| | | |
|---|---|---|
| 44. | Medical licensure in the United States requires, among other things, successful completion of all three parts, or "steps", of the United States Medical Licensing Examination ("USMLE"). | |
| 45. | Jayatilaka passed Step 1 of the USMLE on his fifth attempt. | N093 (Depo. Ex. 30). |
| 46. | Jayatilaka did not request or receive any accommodations from the NBME during any administration of Step 1 of the USMLE. | N093 (Depo. Ex. 30). |
| 47. | The USMLE Step 2 Clinical Knowledge ("CK") assesses clinical knowledge. | (Farmer Depo. Tr. at 16:11-15) |
| 48. | The USMLE Step 2 CK is a "computer-based multiple-choice examination administered over a single day.  There are nine test blocks of one hour each and 45 minutes of break time." | (Farmer Depo. Tr. at 16:16-22) |
| 49. | Jayatilaka has attempted to pass the USMLE Step 2 CK on six occasions between 1998 and 2007. | N093 (Depo. Ex. 30). |
| 50. | Jayatilaka's first attempt to pass the USMLE Step 2 CK was on March 3, 1998. | N093 (Depo. Ex. 30). |
| 51. | Jayatilaka received a score of 129 on the March 3, 1998 administration of the USMLE Step 2 CK. | N093 (Depo. Ex. 30). |
| 52. | Jayatilaka next attempted to pass the USMLE Step 2 CK on December 21, 2000. | N093 (Depo. Ex. 30). |
| 53. | Jayatilaka received a score of 115 on the December 21, 2000 administration of the USMLE Step 2 CK. | N093 (Depo. Ex. 30). |
| 54. | Jayatilaka next attempted to pass the USMLE Step 2 CK one year later on December 21, 2001. | N093 (Depo. Ex. 30). |
| 55. | Jayatilaka received a score of 140 on the December 21, 2001 administration of the USMLE Step 2 CK. | N093 (Depo. Ex. 30). |

828622 v3/ HN

| 56. | Jayatilaka did not attempt to take the USMLE Step 2 CK again until April 30, 2004. | N093 (Depo. Ex. 30). |
|---|---|---|
| 57. | Jayatilaka received a score of 151 on the April 30, 2004 administration of the USMLE Step 2 CK. | N093 (Depo. Ex. 30). |
| 58. | Jayatilaka next attempted to pass the USMLE Step 2 CK on October 28, 2004. | N093 (Depo. Ex. 30). |
| 59. | Jayatilaka obtained a score of 172 on the October 28, 2004 administration of the USMLE Step 2 CK. | N093 (Depo. Ex. 30). |
| 60. | Between October 28, 2004 and August 31, 2007, Jayatilaka was scheduled to take the USMLE Step 2 CK exam on three occasions, but he did not show up for the exam on any of these three occasions. | N093 (Depo. Ex. 30). |
| 61. | In 2007, Jayatilaka underwent outpatient psychotherapy to learn stress reduction and relaxation techniques he could use when taking the USMLE Step 2 CK exam. | |
| 62. | Between April through August 2007, Jayatilaka underwent outpatient psychotherapy with Dr. Lawrence L. Jeckel. | SD0079–SD0090 (Depo. Ex. 39). |
| 63. | On August 16, 2007, Jayatilaka reported to Dr. Jeckel that he was scheduled to take the USMLE Step 2 CK on August 31, 2007 and he seemed "more motivated than ever." | SD0079–SD0090 (at SD0089) (Depo. Ex. 39). |
| 64. | On his most recent attempt to pass Step 2 CK on August 31, 2007, Jayatilaka scored a 177. | N093 (Depo. Ex. 30). |

**IV.**    **Jayatilaka's Request for Accommodations from the NBME**

| 65. | The National Board of Medical Examiners ("NBME") publishes "General Guidelines for All Disabilities" regarding the process for obtaining accommodations on the USMLE. | SD0290–SD0294 (Depo. Ex. 2). |
|---|---|---|
| 66. | Jayatilaka requested an accommodation from the NBME for the USMLE Step 2 CK for the first time on July 14, 2008. | N001–N004 (Depo. Ex. 35). |
| 67. | As the basis for his accommodation request, Jayatilaka stated that the nature of his disability was a "Reading Disability" and a "Language Impairment" in the form of "Mixed Receptive/Expressive Language Disorder," which he also indicated was a "speed of processing" issue. | N001–N004 (Depo. Ex. 35). |
| 68. | Jayatilaka requested an accommodation from the NBME for double the testing time on the USMLE Step 2 CK. | N001–N004 (Depo. Ex. 35); (Depo. Ex. 34). |
| 69. | In support of his July 14, 2008 accommodation request, Jayatilaka submitted a letter from Dr. William Gorunoff, a treating neurologist. | Letter from Dr. Gorbonuff; N007. |
| 70. | In support of his July 14, 2008 accommodation request, Jayatilaka submitted medical records from the Mayo Clinic from an observation in June 2006. | Mayo Clinic records; N008–N013. |
| 71. | In support of his July 14, 2008 accommodation request, Jayatilaka submitted pre and post operative reports from St. Mary Medical Center from 1995 and 1996, when he underwent surgery in 1995 for a depressed skull fracture that occurred as a result of the incident outside of a bar in Guadalajara, Mexico in 1995. | St. Mary Medical Center records; N014–N022. |
| 72. | In support of his July 14, 2008 accommodation request, Jayatilaka submitted a Neuropsychological Evaluation, dated 05/21/08 (the "Neuropsychological Evaluation"), which was conducted by Drs. | Neuropsychological Evaluation; (Depo. Ex. 1). |

| | | |
|---|---|---|
| | Terrance Dushenko and Andrew Levine. | |
| 73. | The Neuropsychological Evaluation reported all of Jayatilaka's test scores from the neuropsychological tests administered to him by Dr. Levine in April and May 2008. | Neuropsychological Evaluation; (Depo. Ex. 1). |
| 74. | Dr. Catherine Farmer is the Manager of Disability Services for the NBME. | (Farmer Depo. Tr. 4:11-15) |
| 75. | Dr. Farmer's job duties include receiving and reviewing requests for test accommodations on the USMLE. | (Farmer Depo. Tr. 4:21-5:5) |
| 76. | The NBME Guidelines include the requirement that individuals requesting accommodations "provide documentation from their own treatment or evaluators," which the NBME then reviews. | (Farmer Depo. Tr. 12:15-14:12) |
| 77. | The NBME reviewed the documentation Jayatilaka submitted with his July 14, 2008 request for an accommodation. | (Farmer Depo. 22:17-23:2) |
| 78. | The NBME provided Jayatilaka's file to an expert in the field of learning disabilities, Dr. George Litchford, for review. | |
| 79. | Dr. Litchford subsequently provided the NBME with a report dated August 26, 2008 recommending denial of the requested accommodation. | Litchford 8/26/08 Report; N041–N044. |
| 80. | Dr. Litchford's report dated August 26, 2008 stated, in part:<br><br>"After carefully reviewing the documentation, I would not recommend granting test accommodations. . . . His psychological test battery suggests average cognitive functioning as measured by the WAIS-III and his performance on the Woodcock Johnson achievement tests is also in the average range or better than his cognitive performances. His examiner specifically notes that [Jayatilaka] does not meet | Litchford 8/26/08 Report; N041–N044. |

9

| | | |
|---|---|---|
| | criteria for learning disability. . . . In addition, any difficulties that may have occurred in the area of language and/or executive functioning did not seem to rise to a level to significantly impact his achievement functioning as evidenced by his average to high average performances on the Woodcock Johnson, 3rd Edition achievement tests." | |
| 81. | Dr. Litchford's report dated August 26, 2008 stated, in part:<br><br>"the Board should note [Jayatilaka's] examiner did not indicate whether he used age or grade norms on the Woodcock Johnson Achievement Test and, in addition, on some of the neuropsychological tests he did not indicate whether age or grade norms were used, for example, the Boston Word Naming Test and the motor functions tests used in the battery." | Litchford 8/26/08 Report; N041–N044. |
| 82. | The NBME denied Jayatilaka's request for accommodations for the USMLE Step 2 CK on September 16, 2008. | N046–N047; (Depo. Ex. 36). |
| 83. | The NBME's letter denying Jayatilaka's request states, in part, "[o]verall, your performances on a range of cognitive and academic tasks, including processing speed and academic fluency, were well within the average range of functioning.  Average range ability and academic achievement is by definition average and does not demonstrate impairment." | N046–N047; (Depo. Ex. 36). |
| 84. | On or about December 23, 2008, Jayatilaka submitted a request for reconsideration of the NBME's decision denying his accommodation request. | N072; (Depo. Ex. 38). |
| 85. | In support of his December 23, 2008 request for reconsideration, Jayatilaka submitted an affidavit from Dr. Dushenko in which Dr. Dushenko first diagnosed Jayatilaka with | N053–N054; (Depo. Ex. 22). |

| | | |
|---|---|---|
| | Cognitive Disorder Not Otherwise Specified ("CDNOS"). | |
| 86. | In support of his December 23, 2008 request for reconsideration, Jayatilaka resubmitted the same Neuropsychological Evaluation from Drs. Dushenko and Levine (dated 05/21/08) that he submitted with his original request for accommodation. | (Depo. Ex. 23). |
| 87. | In response to Jayatilaka's December 23, 2008 request for reconsideration, the NBME provided Jayatilaka's file to neuropsychologist Nancy Nussbaum who is knowledgeable in the area of brain injuries. | Nussbaum Report; N082–N084. |
| 88. | Dr. Nussbaum reviewed all the materials submitted by Jayatilaka since July 14, 2008 and concluded, in a January 22, 2009 report, that Jayatilaka had failed to establish a functional impairment that would justify an accommodation under the ADA. | Nussbaum Report; N082–N084. |
| 89. | Dr. Nussbaum's January 22, 2009 report stated, in part: <br><br> "In my review of the results of Mr. Jayatilaka's neuropsychological test results, the following findings are not generally consistent with a traumatic brain injury: Relatively good performance on the Working Memory Index from the WAIS-III. Average performance on the Processing Speed Index from the WAIS-III, with no impairment noted on Digit Symbol Coding, which is typically found to be sensitive to organic dysfunction, especially traumatic brain injury. Attention within normal limits. Good reaction time on the CPT-II. Intact visuospatial functioning." | Nussbaum Report; N082–N084. |
| 90. | The NBME denied Jayatilaka's request for reconsideration on February 12, 2009. | N085–N086. |

| 91. | Dr. Nussbaum did not personally interview or personally meet with Jayatilaka. | (Nussbaum Depo. Tr. 34:9-16) |
|---|---|---|
| 92. | Dr. Litchford did not personally interview or personally meet with Jayatilaka. | (Litchford Depo. Tr. 9:10-12) |
| 93. | Dr. Farmer did not personally interview or personally meet with Jayatilaka. | (Farmer Depo. Tr. 13:21-23; 15:24-16:10) |

## V.     Evidence of Alleged Disability

### A.     Neuropsychological Testing

| | | |
|---|---|---|
| 94. | Between April and May 2008, Jayatilaka completed a neuropsychological evaluation from Drs. Terrance Dushenko and Andrew Levine in Long Beach California, which included approximately 71 neuropsychological tests to determine if Jayatilaka had any cognitive impairments. | Neuropsychological Evaluation; N023–N038 (Depo. Ex. 1); SD0244–SD0504 (Complete file from Dushenko). |
| 95. | Dr. Levine personally administered all of the neuropsychological tests. | |
| 96. | As a part of his neuropsychological assessment, Drs. Dushenko and Levine also interviewed Jayatilaka. | *See* SD0296–SD0301 (Depo Ex. 3); SD0302 (Depo Ex. 4); SD0306–SD0307 (Depo. Ex. 5); SD0479 (Depo Ex. 6). |
| 97. | In connection with the neuropsychological assessment, Jayatilaka reported to Drs. Dushenko and Levine that he "does not feel he currently has significant cognitive problems that interfere with his day-to-day functioning." | Neuropsychological Evaluation; N023–N038 (Depo. Ex. 1). |
| 98. | Drs. Dushenko and Levine stated in their 05/21/08 Neuropsychological Evaluation that Jayatilaka is a "highly functioning" individual. | Neuropsychological Evaluation; N023–N038 (Depo. Ex. 1). |
| 99. | Dr. Levine testified in deposition that rehabilitation measures are "not necessarily designed for people [like Jayatilaka] who are still independently functioning and going to school and working and able to function independently in most areas – in all areas of daily life, which Dr. Jayatilaka is." | (Levine Depo. Tr. at 152:15-153:14) |
| 100. | Jayatilaka reported to Drs. Dushenko and Levine that he was "never that motivated till recently and hates tests." | Neuropsychology Questionnaire; SD0299 (Depo. Ex. 3). |
| 101. | Dr. Levine testified that Jayatilaka's approach during neuropsychological testing was "flippant" and that at first, Jayatilaka did not take the testing "too seriously." | (Levine Depo. Tr. at 126:3–18) |

828622 v3/ HN

| | | |
|---|---|---|
| 102. | During the neuropsychological assessment, Jayatilaka stated that he had "Been a heavy drinker for an extended period of time" and stated that he drank "6 Jack/Coke" during the weekends. | Neuropsychology Questionnaire; SD0299 (Depo. Ex. 3). |
| 103. | Dr. Levine administered approximately 71 neuropsychological tests in the following nine functional areas: (1) General Intellectual Functioning; (2) Achievement Testing; (3) Attention/Working Memory; (4) Speech and Language; (5) Visuospatial Functioning; (6) Learning and Memory; (7) Executive Functioning; (8) Motor/Psychomotor Functioning; and (9) Personality and Emotional Functioning. | Neuropsychological Evaluation; (Depo. Ex. 1). |
| 104. | Out of all the neuropsychological tests administered, Jayatilaka scored below the 16th percentile in only four (4) of the tests: (1) One DKEFS Verbal Fluency test for "Letters" administered on 04/02/08; (2) the Wisconsin Card Sorting Test; (3) Grooved Pegboard test for the left hand; and (4) the Finger Tapping Test for both the left and right hand. | Neuropsychological Evaluation; (Depo. Ex. 1). |
| 105. | The 05/21/08 Neuropsychological Evaluation written by Drs. Dushenko and Levine stated in part under General Intellectual Functioning:<br><br>"Psychometric estimates of premorbid functioning, including the WTAR and subtests of the WAIS-III, indicate that Dr. Jayatilaka has likely been functioning within the Average range of intellectual ability for some time." | Neuropsychological Evaluation; (Depo. Ex. 1). |
| 106. | The Neuropsychological Evaluation stated in part under Achievement Testing:<br><br>"[Jayatilaka] obtained very high scores on measures of reading, arithmetic, and mathematical reasoning, consistent with reported level of education. Speeded measures of reading, calculation, and writing were also | Neuropsychological Evaluation; (Depo. Ex. 1). |

14

| | | |
|---|---|---|
| | within expectation.  Conversely, his scores of measures of auditory and reading comprehension were below expectation. . . . Together, results of academic testing suggest relative difficulty with comprehension for both written and oral language.  However, his scores still fell within the Average range when compared to individuals from his age group." | |
| 107. | The Neuropsychological Evaluation stated in part under Attention/Working Memory:<br><br>"Formal tests of auditory attention found basic attention, or registration, to be average relative to peers. . . . Auditory working memory, assess by repeating a string of digits in reverse order, was above average (83%ile). . . . Dr. Jayatilaka's performance on a visual measure of registration and working memory was average. . . . In sum, Dr. Jayatilaka does not demonstrate deficits in attention or working memory." | Neuropsychological Evaluation; (Depo. Ex. 1). |
| 108. | The Neuropsychological Evaluation stated in part under "Speech and Language Functioning":<br><br>"Formal testing found deficits in expressive language. . . . Receptive language abilities were also below expectation. . . . In sum, expressive language deficits were noted in confrontation naming and phonemic fluency.  Receptive language was notable for auditory and reading comprehension that is below expectation considering educational attainment, albeit average for his age." | Neuropsychological Evaluation; (Depo. Ex. 1). |
| 109. | The Neuropsychological Evaluation stated in part under "Visuospatial Functioning": | Neuropsychological Evaluation; (Depo. Ex. 1). |

| | | |
|---|---|---|
| | "Visuospatial functioning was intact." | |
| 110. | The Neuropsychological Evaluation stated in part under "Learning and Memory":<br><br>"To summarize, Dr. Jayatilaka demonstrated High Average visual learning and memory. Auditory/Verbal learning was characterized by below average learning of prose and above average learning of word-lists, suggesting perhaps that Dr. Jayatilaka is prone to being overwhelmed when presented with too much information at once. Further, Auditory/Verbal memory was comparatively weaker than visual." | Neuropsychological Evaluation; (Depo. Ex. 1). |
| 111. | The Neuropsychological Evaluation stated in part under "Executive Functioning":<br><br>"Performances on measures of executive functioning were generally within expectation with one exception. That was on the [Wisconsin Card Sorting Test ("WCST")], a measure of conceptual thinking and flexibility of thought. On this test, Dr. Jayatilaka made a large number of errors (Error Rate – 1%ile), and took an usually long time to figure out the purpose of the test. However, once he discovered the purpose of the task, he quickly developed a successful strategy. Basic executive abilities were within the average range." | Neuropsychological Evaluation; (Depo. Ex. 1). |
| 112. | The Neuropsychological Evaluation stated in part under "Motor/Psychomotor Functioning":<br><br>"Basic psychomotor speed, as assessed with a line tracing task, was intact (84%ile), as was his performance on more complex visuomotor tasks (WAIS-III Processing Speed Index – 58%ile). | Neuropsychological Evaluation; (Depo. Ex. 1). |
| 113. | The Neuropsychological Evaluation stated in part under "Personality and Emotional | Neuropsychological Evaluation; (Depo. Ex. 1). |

16

| | | |
|---|---|---|
| | Functioning": | |
| | "[A]n objective measure of current depressive symptoms was not indicative of current depression." | |
| 114. | Drs. Dushenko and Levine did not diagnose Jayatilaka with any cognitive disability in their 05/21/08 Neuropsychological Evaluation under the standards set forth in the Diagnostic and Statistical Manual, Fourth Edition ("DSM-IV"). | *See* Neuropsychological Evaluation; (Depo. Ex. 1). |
| 115. | The Neuropsychological Evaluation states in part under "Summary and Impressions": "Diagnostically, a significant discrepancy must exist between his intellectual ability (as measured by the WAIS-III) and his scores on achievement testing (as measured by the WJ-III). Such a discrepancy was not found. Indeed, his scores on many tests of achievement exceeded expectation based on his estimated IQ, although they were consistent with educational attainment. Despite the absence of learning disability per this psychometric definition, it does appear that Dr. Jayatilaka has areas of deficit that are likely to affect his capacity to perform well on standardized testing." | Neuropsychological Evaluation; (Depo. Ex. 1). |
| 116. | The Neuropsychological Evaluation does not suggest that Jayatilaka be given double the standard test time on the USMLE. | *See* Neuropsychological Evaluation; (Depo. Ex. 1). |
| 117. | The Neuropsychological Evaluation states in part under "Recommendations/Plan": "It is recommended that Dr. Jayatilaka be given provision, under the Americans with Disabilities Act, for extended time for completion of current and future written medical examinations." | *See* Neuropsychological Evaluation; (Depo. Ex. 1). |

| 118. | Dr. Litchford, Dr. Farmer and Dr. Nussbaum have not personally conducted any neuropsychological testing of Jayatilaka and have relied upon the results of the neuropsychological testing conducted by Dr. Levine. | (Nussbaum Depo. Tr. 34:9-18)<br><br>(Litchford Depo. Tr. 9:10-12)<br><br>(Farmer Depo. Tr. 13:21-23; 15:24-16:10) |
|---|---|---|

18

**B.      Alleged Disorders and/or Diagnoses**

| | | |
|---|---|---|
| 119. | The Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM-IV") is used by physicians, psychiatrists and psychologists for the diagnosis of psychiatric disorders or mental disorders. | (Levine Depo. Tr. at 35:10-36:19.) |
| 120. | The DSM-IV defines "substantially below" in part as:<br><br>"a discrepancy of more than 2 standard deviations between achievement and IQ." | DSM-IV Manual, Ex. 8 at p. 46 |
| 121. | Jayatilaka's Request for Accommodations to the NBME stated that the nature of his disability was: (1) a Reading Disability; and (2) Mixed Receptive/Expressive Language Disorder. | N001–N004 |
| 122. | Dr. Dushenko's December 21, 2008 Affidavit lists, for the first time, a diagnosis of Cognitive Disorder Not Otherwise Specified. | |

**C.      Reading or Learning Disorder**

| | | |
|---|---|---|
| 123. | The DSM-IV states in part that "Learning Disorders," which includes "Reading Disorders":<br><br>"are diagnosed when the individual's achievement on individually administered, standardized tests in reading, mathematics, or written expression is substantially below that expected for age, schooling, and level of intelligence.  The learning problems significantly interfere with academic achievement or activities of daily living that require reading, mathematical, or writing skills." | DSM-IV Manual; (Depo Ex. 8 at p. 46). |

19

| | | |
|---|---|---|
| 124. | The DSM-IV specifically defines the criteria used to assess Reading Disorder (315.00) in part as:<br><br>"A. Reading achievement, as measured by individually administered standardized test of reading accuracy or comprehension, is substantially below that expected given the person's chronological age, measured intelligence, and age-appropriate education. B. The disturbance in Criterion A significantly interferes with academic achievement or activities of daily living that require reading skills." | DSM-IV Manual; (Depo Ex. 8 at p. 50). |
| 125. | Jayatilaka has never been diagnosed with a Reading or Learning Disorder. | |
| 126. | Drs. Dushenko and Levine did not diagnose Jaytilaka with either a Reading or Learning Disorder in the Neuropsychological Evaluation. | *See* Neuropsychological Evaluation, (Depo. Ex. 1). |
| 127. | Dr. Dushenko testified in his deposition that "there was no diagnosis in the first report." | (Dushenko Depo. Tr. at 19:10-15; *see also* 66:17-67:4 (no LD or RD)). |
| 128. | Dr. Dushenko testified in his deposition,<br><br>"I think it was fairly clear to us that he did not have a developmental learning disorder. There was no reason to believe that. There's no school, history or evaluation of any sort or any other history that identifies him as having a learning disorder or anything other than acquired disorder." | (Dushenko Depo. Tr. at 20:24-21:5) |
| 129. | Dr. Levine testified in his deposition,<br><br>"Q. Are you familiar with the criteria for a reading disorder [in the DMS-IV]?<br><br>A. Yes. | (Levine Depo. Tr. at 64:11-16) |

| | | |
|---|---|---|
| | Q. And did you ever conclude that Mr. Jayatilaka met the diagnostic criteria for such a reading disorder?<br><br>A. No, not according to the DSM." | |
| 130. | Dr. Levine testified in his deposition:<br><br>"Q. [Y]ou didn't diagnose Mr. Jayatilaka with a learning disability under the DSM-IV standards, did you?<br><br>A. That's correct." | (Levine Depo. Tr. at 18-21) |

### D.    Mixed Expressive/Receptive Language Disorder

| | | |
|---|---|---|
| 131. | The DSM-IV defines Mixed Receptive/Expressive Language Disorder (315.31), in part as:<br><br>"The essential feature of Mixed Receptive-Expressive Language Disorder is an impairment in both receptive and expressive language development as demonstrated by scores on standardized individually administered measures of both receptive and expressive language development that are substantially below those obtained from standardized measures of nonverbal intellectual capacity (Criterion A). . . .   The language difficulties interfere with academic or occupational achievement or with social communication (Criterion B), and the symptoms do not meet criteria for a Pervasive Developmental Disorder (Criterion C)." | DSM-IV Manual (Depo Ex. 8 at p. 58). |
| 132. | Jayatilaka has never been diagnosed with Mixed/Expressive Receptive Language Disorder. | |
| 133. | Drs. Dushenko and Levine did not diagnose Jayatilaka with Mixed Receptive/Expressive Language Disorder. | *See* Neuropsychological Evaluation, (Depo. Ex. 1). |

21

| 134. | Dr. Levine testified in his deposition:<br><br>"Q. And would you agree that Mr. Jayatilaka does not meet the criteria for a mixed receptive-expressive language disorder?<br><br>A. I do." | (Levine Depo. Tr. at 68:12-15) |
|---|---|---|
| 135. | Dr. Dushenko testified in his deposition:<br><br>"Q. Dr. Levine also testified yesterday that in his opinion, that Dr. Jayatilaka did not meet the diagnostic criteria for mixed receptive-expressive language disorder as set forth in the DSM-IV. Would you agree with that opinion?<br><br>A. Yes, I would." | (Dushenko Depo. 67:5-10.) |

**E.   Cognitive Disorder Not Otherwise Specified**

| 136. | The DSM-IV defines Cognitive Disorder Not Otherwise Specified ("CDNOS"), in part as:<br><br>"This category is for disorders that are characterized by cognitive dysfunction presumed to be due to the direct physiological effect of a general medical condition that do not meet criteria for any of the specific deliriums, dementias, or amnestic disorders listed in this section . . . ." | DSM-IV Manual, Ex. 8 at p. 163. |
|---|---|---|
| 137. | Dr. Dushenko's 12/19/08 Affidavit diagnoses Jayatilaka with CDNOS for the first time and stated in part:<br><br>"This diagnosis [of CDNOS] is a direct consequence of the traumatic head injury with depressed skull fracture." | N054–N055 |
| 138. | Jayatilaka did not experience a loss of consciousness, seizure or other neurological deficit after the 1995 incident that resulted in a depressed skull fracture. | *See* SD0238 (06/06/06 Specialty Evaluation by Dr. Aksamit). |

| 139. | Every MRI taken after Jayatilaka's 1995 injury were "negative" for underlying brain injury. | SD0194–SD1096; SD0233–SD0234 (Mayo Clinic); SD0169 (Depo. Ex. 33) (Hornstein 04/15/08). |
|------|-----------------------------------------------------------------------------------------------|------------------------------------------------------------------------------------------|
| 140. | Drs. Dushenko and Levine did not diagnose Jayatilaka with CDNOS in their 05/21/08 Neuropsychological Evaluation. | *See* Neuropsychological Evaluation, (Depo. Ex. 1). |
| 141. | Dr. Levine testified that he would not diagnose Jayatilaka with CDNOS and stated, in part:<br><br>"Cognitive disorder NOS is kind of a wastebasket term for somebody who doesn't meet diagnostic criteria for, say, amnestic disorder or dementia or delirium or any other disorders, but that they have some form of impairment that limits them in some substantial way. So one could argue that these deficits are limiting Dr. Jayatilaka in a substantial way. At the time of my evaluation, that wasn't my impression." | (Levine Depo. Tr. 69:12-24) |
| 142. | Dr. Levine does not believe that Jayatilaka's weaknesses as identified by neuropsychological testing reflect "traumatic head injury," and testified in deposition, in part:<br><br>"It would be hard for me to make that conclusion because of the site of the injury. If there were any underlying damage to the brain, it would not necessarily affect the abilities which were below expectation on the achievement testing. It's conceivable. Anything's possible. One could make the argument, but that not a conclusion I believe that I would have made. . . . No, I wouldn't make that conclusion sitting here today." | (Levine Depo. Tr. 85:1-21) |
| 143. | Deficits on the Boston Word Naming Test and Delis-Kaplan Executive Function Systems ("DKEFS") test are mostly associated with injury to the left brain hemisphere and Jayatilaka's 1995 injury was to the right side of | |

23

| | | |
|---|---|---|
| | his skull. | |
| 144. | Jayatilaka scored in the average range on neuropsychological tests that would be sensitive to traumatic brain injury, such as the WAIS-III Digit Symbol Coding Test. | |
| 145. | The DKEFS test was administered twice, and on the second administration, Jayatilaka scored in the average range. | |
| 146. | Dr. Levine does not believe Jayatilaka falls under any category described in the DSM-IV and testified in his deposition, in part:<br><br>"Q. Was there ever a point in time where you concluded that there was a DSM-IV diagnosis that was applicable to Mr. Jayatilaka?<br><br>A. Not at the time of my evaluation of writing this report.<br><br>Q. Did you come to that conclusion at some later point?<br><br>A. Well, it's arguable. The DSM is not the best reference guide for diagnosing cognitive and neuropsychological disorders. There's better diagnostic criteria out there for diagnosing a learning disability that what's in the DSM-IV, that I didn't use for this particular evaluation and, in fact, probably would not have applied to Dr. Jayatilaka. Based on my evaluation of him, I found him to have some weaknesses in some areas, but I didn't feel that he met diagnostic criteria for any of the DSM-IV disorders." | (Levine Depo. Tr. 68:16-69:7) |
| 147. | In a supplemental report dated November 17, 2009 that Dr. George Litchford drafted after reviewing the neuropsychological test protocols and deposition testimony from Dr. Dushenko, Dr. Levine, and Jayatilaka, Dr. Litchford stated that "it is not clear whether the Boston Word Naming Test was administered | |

| | | |
|---|---|---|
| | according to standard procedures." | |
| 148. | Dr. Levine testified in his deposition and acknowledged that the Boston Word Naming Test may have been incorrectly administered. | SD0480–SD0481 (Depo. Ex. 15); (Levine Depo. Tr. at 94:11–99:20) |
| 149. | Dr. Levine testified in his deposition and acknowledged that there could be a "difference in performance on the Boston Naming Test for individuals who speak English as a second language." | (Levine Depo. Tr. at 99:21-25) |
| 150. | Dr. Litchford stated in his November 17, 2009 supplemental report that "Dr. Levine did not give the standard administration of the [WAIS-III] verbal and performance subtests as he did not administer the verbal comprehension subtest (as part of the verbal scale) and did not administer the Picture Arrangement Subtest as part of the performance scale." | [Litchford 11/17/09 Supplemental Report] |
| 151. | Dr. Levine administered an abbreviated version of the Wisconsin Card Sorting Test ("WCST"). | (Levine Depo. Tr. at 114:3-22) |
| 152. | The 05/21/08 Neuropsychological Evaluation states that it took Jayatilaka "an usually long time to figure out the purpose of the [WCST] test. However, once he discovered the purpose of the task, he quickly developed a successful strategy." | Neuropsychological Evaluation, N023–N038 (Depo. Ex. 1). |
| 153. | Dr. Levine testified that if the standard version of the WCST had been administered, he would have expected Jayatilaka to score higher, "I would think it would have been higher because he would have had more opportunity to make up for the initial poor performance." | (Levine Depo. Tr. at 114:23-115:3) |
| 154. | The WCST is a measure of executive functioning regarding over rigidity in thinking or severation. | |
| 155. | Dr. Levine testified that he would not conclude that Jayatilaka demonstrated either over-rigidity or severation:<br><br>"Q. But you concluded that he actually | (Levine Depo. Tr. at 115:4-14) |

25

| | | |
|---|---|---|
| | didn't demonstrate either of those problems, correct?<br><br>A. That's right. If one were to just look at the scores, one could make that conclusion, but having administered it to him and seeing how – why he made the errors he did or why he got the scores he did, I didn't come to that conclusion." | |
| 156. | Dr. Litchford's November 17, 2009 report noted that "it does not appear that [Jayatilaka's] examiners administered any tests of malingering, motivation and/or effort." | |
| 157. | Dr. Dushenko is not aware of the format of the USMLE Step 2 CK.<br><br>"Q. In terms of the USMLE Step 2, are you aware of what type of test it is?<br><br>A. No, I am not familiar with that." | (Dushenko Depo. Tr. at 118:25-119:9) |

828622 v3/ HN

| 158. | To the extent Dr. Dushenko believes that Jayatilaka has a speed of processing relative deficit, he also testified that Jayatilaka is unable to process auditory information but does not have a problem processing written information. | (*See* Dushenko Depo. Tr. at 115:5-16) |
| | "Q.  There's two ways we get information: We either hear it verbally or we read it. | |
| | A. Right. | |
| | Q. Are there any neuropsych test scores on here that indicate that there is a problem with processing speed when [Jayatilaka] receives the information via reading? | |
| | A. Well, let me take a look and see if there's anything else.  I don't believe there is, though. | |
| | Q.  All right. | |
| | A.  No, it's apparently through – predominantly through oral presentation of information that [Jayatilaka] has difficulty." | |

828622 v3/ HN

## VI.    Other Psychiatric Reports

| | | |
|---|---|---|
| **159.** | Jayatilaka has consulted with other psychologists and psychiatrists regarding his efforts to pass the USMLE Step 2 CK. | |
| **160.** | Jayatilaka met with Dr. Terry L. Higgins, PhD for outpatient psychotherapy on at least eight (8) occasions in and around May 2006. | *See* SD0587–SD0593 (Depo. Ex. 24). |
| **161.** | Dr. Higgins' notes stated, in part:<br><br>"Cl[ient] seemingly 'wants' to pass exam but also sabotages success – Does not possess 'driven mentality' necessary for achieving MD status." | at SD0590 (Depo. Ex. 24). |
| **162.** | Dr. Higgins' notes stated, in part:<br><br>"He is conflicted about his desire to become a MD but simultaneously says he's 'got to do it.'" | at SD0590 (Depo. Ex. 24). |
| **163.** | Dr. Higgins' notes stated, in part:<br><br>"Cl[ient] did relate that he is open to either MD [and] passing exam . . . or 'even going to business school' – again, ambivalence abounds.   Poor insight; poor judgment; cancels exam; travels instead; doesn't do enough practice exams." | at SD0591 (Depo. Ex. 24). |
| **164.** | Dr. Higgins' notes stated, in part:<br><br>"Discussed Cl[ient's] thoughts about medical field and motivation necessary to achieve license.   Client expressed lack of specificity in strategy to study and pass exam." | at SD0593 (Depo. Ex. 24). |
| **165.** | Jayatilaka met with Dr. James Pratty in or around December 2006. | SD0522–SD0536 (Depo. Ex. 18). |
| **166.** | Dr. Pratty administered the Millon Clinical Multiaxial Inventory Third edition ("MCMI-III") on December 7, 2006. | SD0522–SD0536 (Depo. Ex. 18). |

| 167. | Jayatilaka also saw Dr. Jeckel in or around February 2007 for outpatient psychotherapy. | SD0155–SD0158 (Depo. Ex. 40). |
|---|---|---|
| 168. | Jayatilaka also saw Dr. Sipich in or around April 2007 for outpatient psychotherapy. | SD0079–0090 (Depo. Ex. 39). |

29

1

## PROOF OF SERVICE

2  STATE OF CALIFORNIA
   COUNTY OF LOS ANGELES

3

4          I am employed in the County of Los Angeles, State of California; I am over the age of 18
   and not a party to the within action; my business address is 10250 Constellation Boulevard, 19th
   Floor, Los Angeles, California  90067.

5

6          On February 19, 2010, at the direction of a member of the Bar of this Court, I served the
   within:

7  PROPOSED PRE-TRIAL CONFERENCE ORDER

8  on the interested parties to this action by delivering a copy thereof in a sealed envelope addressed to
   each of said interested parties at the following address(es):

9

   Gregory C. Tenhoff, Esq.
10 Cooley, Godward, Kronish, LLP
   5 Palo Alto Square
11 3000 El Camino Real
   Palo Alto, CA  94306-2155
12 (650) 843-5000
   (650) 857-0663 (fax)

13

   [X]      (BY MAIL)  I am readily familiar with the business practice for collection and
14          processing of correspondence for mailing with the United States Postal Service.  This
            correspondence shall be deposited with the United States Postal Service this same
15          day in the ordinary course of business at our Firm's office address in Los Angeles,
            California.  Service made pursuant to this paragraph, upon motion of a party served,
16          shall be presumed invalid if the postal cancellation date of postage meter date on the
            envelope is more than one day after the date of deposit for mailing contained in this
17          affidavit.

18 [ ]      (BY OVERNIGHT DELIVERY SERVICE)  I served the foregoing document by Federal
            Express, an express service carrier which provides overnight delivery, as follows.  I
19          placed true copies of the foregoing document in sealed envelopes or packages
            designated by the express service carrier, addressed to each interested party as set
20          forth above, with fees for overnight delivery paid or provided for.

21 [ ]      (BY PERSONAL SERVICE)  I caused such envelope to be delivered by hand to the
            offices of the above named addressee(s).
22
   [ ]      (BY FACSIMILE)  I caused such documents to be delivered via facsimile to the offices
23          of the addressee(s) at the following facsimile number:  .

24 Executed this 13th day of July, 2009, at Los Angeles, California.

25          I declare under penalty of perjury under the laws of the United States of America that the
   foregoing is true and correct.

26

27                                                        ERIKA BARBOUR

28

681863-1

LAW OFFICES
GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000