1  Vincent E. Nowak, Texas State Bar No. 15121550
   MULLIN HOARD & BROWN, LLP
2  P.O. Box 31656
   Amarillo, TX  79120-1656
3  Telephone: (806) 372-5050
   Facsimile: (806) 372-5086
4
   Alisa M. Morgenthaler, State Bar No. 146940
5  GLASER, WEIL, FINK, JACOBS
     HOWARD & SHAPIRO, LLP
6  10250 Constellation Boulevard, 19th Floor
   Los Angeles, California 90067
7  Telephone:  (310) 282-6287
   Facsimile:   (310) 556-2920
8
   Attorneys for Plaintiff
9

10 COOLEY GODWARD KRONISH LLP
   GREGORY C. TENHOFF (154553) (tenhoffgc@cooley.com)
11 WENDY J. BRENNER (198608) (brennerwj@cooley.com)
   Five Palo Alto Square
12 3000 El Camino Real
   Palo Alto, CA  94306-2155
13 Telephone:  (650) 843-5000
   Facsimile:   (650) 857-0663
14
   Attorneys for Defendant
15 NATIONAL BOARD OF MEDICAL EXAMINERS

16
                    UNITED STATES DISTRICT COURT
17
                   CENTRAL DISTRICT OF CALIFORNIA
18

19 | DRUVI JAYATILAKA,              | Case No. CV 09-2932 PA (CWx)
20 |          Plaintiff,            | PLAINTIFF'S JOINT MOTION IN LIMINE
   |                                | NO. 3 TO EXCLUDE OPINIONS AND
21 |    v.                          | TESTIMONY OF DEFENDANT'S EXPERTS
   |                                | NANCY L. NUSSBAUM, CATHERINE
22 | NATIONAL BOARD OF MEDICAL      | FARMER, AND GEORGE LITCHFORD,
   | EXAMINERS,                     | AND BRIEF IN SUPPORT
23 |                                |
24 |          Defendant.            | Date:  March 29, 2010
   |                                | Time:  1:30 p.m.
25 |                                | Judge: Hon. Percy Anderson
   |                                |
26 |                                | Trial Date: April 6, 2010

27

28

**Table of Contents**

I. EVIDENCE ................................................................................................................. 1
II. BACKGROUND ........................................................................................................ 1
III. Applicable Standards ................................................................................................ 2
IV. None of the Defendant's Experts Have Ever Evaluated Jayatilaka ........................... 4
   A. Dr. Nancy L. Nussbaum ......................................................................................... 4
   B. Catherine Farmer, Psy.D. ........................................................................................ 5
   C. Dr. George Litchford .............................................................................................. 6
V. Because all of the Defendant's Experts Failed to Use Proper Methods to Arrive at Their Diagnosis, Their Testimony Must Be Stricken ..................................................... 7
VI. Conclusion ................................................................................................................ 8


I.   NBME's Opposition to Jayatilaka's Joint Motion *in Limine* No. 3. .......................... 1
II.   Factual Background. .................................................................................................. 2
III.   Jayatilaka's Motion to Exclude Testimony from Drs. Litchford and Nussbaum Should Be Denied. .................................................................................................... 4
   A.   Standard for Admissibility of Expert Opinion Testimony. ................................. 4
   B.   The Experts Have Not And Will Not Clinically Diagnose Jayatilaka. ................. 5
   C.   As A Matter Of Law, Medical Experts Can Rely Upon Other Physician Opinions And Medical Records In Forming Opinions And Even In Clinically Diagnosing Patients ...... 6
   D.   Jayatilaka's Argument Leads Only To Absurdity. ............................................... 7
IV.   Conclusion of the NBME's Opposition to Jayatilaka's Motion. ............................... 8

Table of Authorities

**Cases**

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) ......................... passim

*Domingo v. T.K.*, 289 F.3d 600 (9th Cir.2002) ............................................ 7

*General Electric Co. v. Joiner*, 522 U.S. 136 (1997) (Breyer, J., concurring) ........................................................................................... 2

*Guile v. U.S.*, 422 F.3d 221 (5th Cir. 2005) ................................................. 3

*Heller v. Shaw Indus., Inc.*, 167 F.3d 146 (3rd Cir. 1999) .......................... 3

*Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777 (3d Cir. 1996) .................. D4

*In re Agent Orange Prod. Liab. Litig.*, 611 F.Supp. 1223 (E.D.N.Y. 1985) ............................................................................................. 3, 7

*In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717 (3rd Cir. 1994) ......3, 7, D4, D6

*In re Silicone Gel Breasts Implants Prod. Liab. Litig.*, 318 F.Supp.2d 879 (C.D.Cal.2004) ............................................................................... 7

*Jahn v. Equine Serv.*, 233 F.3d 382 (6th Cir. 2000) ................................ D5, D6

*Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802 (3rd Cir. 1997) ........... D6, D7

*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999) ..................... 2, 3, 5, D5

*Lanphere Enterprises, Inc. v. Jiffy Lube International Inc.*, 138 Fed.Appx. 20 (9th Cir. 2005) ............................................................ 7

*Menendez v. Terhune*, 422 F.3d 1012 (9th Cir.2005) ................................ 7

*Moore v. Ashland Chem., Inc.*, 151 F.3d 269 (5th Cir. 1998), cert. denied, 526 U.S. 1064 (1999) ........................................................ 3

*Smelser v. Norfolk S. Ry Co.*, 105 F.3d 299 (6th Cir. 1997) ...................... 3

*U.S. v. Bramlet*, 820 F.2d 851 (7th Cir. 1987) ......................................... D6

*U.S. v. Lawson*, 653 F.2d 299 (7th Cir. 1981) ......................................... D6

*Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052 (9th Cir. 2005) ...... D2

**Statutes**

42 U.S.C. § 12101 ................................................................................................ 1

Fed. R. Civ. P. 26(a)(2) ............................................................................. 4

FED. R. EVID. 702 ................................................................................ passim

**Other Authorities**

Advisory Committee Notes to FRE 703 ................................................... D1

{8070\00\00155626.DOC / 1}

PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE OPINIONS AND TESTIMONY OF DEFENDANT'S EXPERTS NANCY L. NUSSBAUM, CATHERINE FARMER, AND GEORGE LITCHFORD, AND BRIEF IN SUPPORT **Page ii**

NOW COMES Plaintiff Druvi Jayatilaka and submits this Motion in Limine to Exclude Opinions and Testimony of Nancy L. Nussbaum, Catherine Farmer, and George Litchford. (Collectively, the Defendant's experts). The Court should prohibit the Defendant's experts from testifying at trial because their methodology is unreliable and is not consistent with the standards of conduct for professional psychologists. In support, Jayatilaka shows the Court as follows:

## I. EVIDENCE

Plaintiff's Motion in Limine to Exclude and Strike is based on the evidence in Plaintiff's Appendix, fully incorporated herein, as applied to the live pleadings on file in this case. The Appendix contains: (i) Excerpts from the deposition of Nancy L. Nussbaum; (ii) Excerpts from the deposition of Catherine Farmer; (iii) Excerpts from the Deposition of George Litchford.

## II. BACKGROUND

This is an action brought under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. Plaintiff, Druvi Jayatilaka ("Jayatilaka" or "Plaintiff"), graduated from the Universidad de Autonoma de Guadalajara Medical School (the "Medical School") in Guadalajara, Mexico, in 1997. In order to become a licensed physician in the United States, Jayatilaka is required to pass a three-step examination administered by the Defendant, NBME.

Jayatilaka has a diagnosed learning disability. Despite several requests, NBME has not accommodated his disability in accordance with the ADA.

Jayatilaka's learning disabilities date back to 1995 when he was brutally attacked in Guadalajara, Mexico and suffered a fractured skull. Since that time, he has been diagnosed with post-traumatic migraines, along with a period of apparent short-term memory loss. He has noted challenges with verbal processing, speed of information processing, and extended mental tracking and control.

After graduating from the Medical School in 1997, Jayatilaka made at least five attempts before passing the Step 1 without accommodation in 1999. Since 1999, Jayatilaka has made multiple attempts to pass the Step 2 without accommodation. For several years he has participated in a review program for Step 2 and Step 3 in Champaign, Illinois. Knowing the material well, Jayatilaka was asked to tutor other medical students for Step 2.

Since his failures, a colleague suggested that Jayatilaka undergo neuropsychological and neurobehavioral testing. As a result of that evaluation, he was diagnosed with cognitive challenges that result in his being unable to process what he reads as quickly as most other persons. This inability to process the written language substantially limits Jayatilaka's reading and learning abilities and results in his being unable to perform adequately on timed examinations as compared to most people.

In a letter dated September 16, 2008, the NBME denied Jayatilaka's request for an accommodation for the USMLE Step 2 claiming Jayatilaka had not "demonstrate[d] substantial impairment in one or more life activities." Prior to the NBME's September 16, 2008 denial of Jayatilaka's request for accommodation, the NBME did not seek to independently examine Jayatilaka, nor meet, interview, or otherwise independently evaluate Jayatilaka.

### III. Applicable Standards

As the Supreme Court has recognized, "[e]xpert evidence can be both powerful and quite misleading because of the difficulty of evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 exercises more control over experts than over lay witnesses." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993). The Supreme Court is clear that judges must undertake this gate-keeping obligation with diligence, even though it "will sometimes ask judges to make subtle and sophisticated determinations about scientific methodology and its relation to the conclusions an expert witness seeks to offer." *General Electric Co. v. Joiner*, 522 U.S. 136, 147 (1997) (Breyer, J., concurring). The Court's gatekeeping function applies to all expert testimony, whether based on scientific, technical or other specialized knowledge. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 142 (1999).

"[W]hether the specific expert testimony focuses upon specialized observations, the specialized translation of those observations into theory, a specialized theory itself, or the application of such a theory in a particular case, the expert's testimony often will rest "upon an experience confessedly foreign in kind to [the jury's] own." *Kumho Tire*, 526 U.S. at 149. The trial judge's effort to assure that the specialized testimony is reliable and relevant can help the jury evaluate

1  that foreign experience, whether the testimony reflects scientific, technical, or other specialized knowledge.

2  In order to be admissible, expert testimony must be "not only relevant, but reliable." *Daubert*, 509 U.S. at 597; see also *Kumho Tire*, 526 U.S. at 141; *Joiner*, 522 U.S. at 142; FED. R. EVID. 702. More specifically, in *Daubert*, the Court held an expert's opinion must be grounded in scientific method, must constitute more than a mere subjective belief, and must be relevant to and fit the facts of the case in question. 509 U.S. at 590-591. Courts since *Daubert* have subjected expert testimony to strict scrutiny, making a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue. *See e.g., Moore v. Ashland Chem., Inc.*, 151 F.3d 269 (5th Cir. 1998), cert. denied, 526 U.S. 1064 (1999).

When an expert relies on data that does not have sufficient probative force and reliability such that a reasonable expert could rely upon it, the expert's opinions must be excluded. *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 748 (3rd Cir. 1994) (quoting *In re Agent Orange Prod. Liab. Litig.*, 611 F.Supp. 1223, 1245 (E.D.N.Y. 1985)). The Court must examine the data and testing upon which the opinion is allegedly based to determine its reliability. *Guile v. U.S.*, 422 F.3d 221, 227 (5th Cir. 2005); see also *Smelser v. Norfolk S. Ry Co.*, 105 F.3d 299, 303 (6th Cir. 1997).

Even if the expert is qualified to render an opinion regarding a particular subject, the opinion must nevertheless be based on a reliable foundation, including accurate and relevant facts, in order to be admissible. While *Daubert's* focus is primarily on principles and methodology, "conclusions and methodology are not entirely distinct from one another." *Joiner*, 522 U.S. at 146; *Kumho Tire*, 526 U.S. at 157 (district courts must "scrutinize" whether the principles and methods used by the expert have properly been applied to the facts of the case). The district court must examine the expert's conclusions in order to determine whether they could reliably follow from the facts known to the expert and the methodology used." *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 253 (3rd Cir. 1999). If the court concludes that there is simply too great an "analytical gap" between the facts and the expert's conclusion from those facts, the opinion should be excluded. *Joiner*, 522 U.S. at 146; see also *Moore*, 151 F.3d at 276 ("a district court, while acting as a gatekeeper for expert evidence,

must evaluate whether there is an adequate 'fit' between the data and the opinion proffered"). In short: an expert's bare opinion will not suffice.

## IV. None of the Defendant's Experts Have Ever Evaluated Jayatilaka

NBME has designated three experts, and all three are of the opinion that Jayatilaka is not entitled to any accommodation for his disability. Remarkably, none of the experts have personally interviewed Jayatilaka, or conducted any tests on him. Instead, they rely solely on his test results.

All of NBME's experts agree that personal evaluations would be the appropriate method to diagnose Jayatilaka. Each of the witnesses stated that they would not conduct a diagnosis without a personal interview. In other words, all of Defendant's experts agree that personal evaluations are necessary for a psychiatric diagnosis, but somehow do not believe that a personal evaluation is necessary to refute the diagnosis of another physician.

### A. Dr. Nancy L. Nussbaum

FED. R. EVID. 702 establishes three factors to evaluate whether expert testimony is admissible: "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Remarkably, Dr. Nancy L. Nussbaum's (Nussbaum) testimony fails all three of these factors.

Nussbaum's testimony is not "based upon sufficient facts or data" by her own admission. In her deposition, Nussbaum agreed that there are four steps to evaluate a person for a disability: to first take a history of the person, administer any tests necessary, make clinical observations, and review records. (Nussbaum Deposition, pg. 9, line 19 though pg. 10, line 9.) Further, Nussbaum stated that she would "never presume to make a diagnosis of a person without personally meeting that person." (Nussbaum Deposition, pg. 10, lines 10-13).

Nussbaum did not take a history, administer any tests, or make any clinical observations of Jayatilaka. (Nussbaum Deposition, pg. 34, lines 9-16). By her own admission, Nussbaum has entirely failed to gather facts necessary to make a clinical diagnosis.

Nor is Nussbaum's testimony "the product of reliable principles and methods." Nussbaum testified that she would "never presume to make a diagnosis of a person without personally meeting that person." (Nussbaum Deposition, pg. 10, lines 10-13). However, that is exactly what Nussbaum's testimony seeks to accomplish. Nussbaum determined, after only "a couple of hours" of review that Jayatilaka is not entitled to ADA accommodations. (Nussbaum Deposition, pg. 16, line 9; pg, 17 lines 8-13). Nussbaum herself agrees that her own methodology is not one which is generally accepted by the "relevant scientific" community. *See Kumho Tire*, 526 U.S. at 149-50 (citing *Daubert*, 509 U.S. at 592-94). Nussbaum's diagnosis is not a product of the psychiatric method of diagnosis *by her own admission*, but instead merely a two-hour review of diagnostic tests; it is not the "product of reliable principles and methods."

Nussbaum failed to meet the third requirement of Rule 702 as well. Rule 702 requires an expert witness to apply the principles and methods reliably to the facts of the case. This is simply impossible, given that Nussbaum did not even use the principles and methods necessary to make a psychological diagnosis.

If the expert fails to ground her opinion in the principles and methodology of the relevant discipline, the opinion is "inadmissible no matter how imposing [the] credentials of the proffered expert." In determining whether an expert's methods are reliable, the courts are not required "to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. *Joiner*, 522 U.S. at 146. Nussbaum's testimony clearly falls under the Supreme Court's ruling in *Joiner*. Although she recognizes the professional standard necessary to make a competent diagnosis, Nussbaum has not undertaken these steps. As a result, Nussbaum's testimony must be stricken.

**B. Catherine Farmer, Psy.D.**

Catherine Farmer ("Farmer") is a trained psychologist and the manager of disability service and ADA compliance officer for NBME. (Farmer Deposition, pg. 4, lines 12-14). She was the "ultimate decision maker" who denied Jayatilaka's request for accommodation. (Farmer

Deposition, pg. 42, lines 13-15). Like Nussbaum, Farmer never personally interviewed Jayatilaka, nor has she conducted any history or taken any steps to perform a diagnosis.

Farmer testified that taking "a history is important to make a diagnosis" and that the proper method to conduct a diagnosis for a psychological disorder required the psychologist "to take the history and administer whatever tests are indicated." (Farmer Deposition, pg. 9, lines 15-16; pg. 11, lines 9-12). Farmer stated that she personally would not make a cognitive disorder diagnosis without taking those steps. (Farmer Deposition, pg. 11, lines 4-8). Farmer agreed that, in order to make a diagnosis, a psychologist would have to meet with the patient. (Farmer Deposition, pg. 51, lines 6-16).

All of the same objections to Nussbaum apply equally to Farmer. Farmer testified that the correct method to diagnose a patient with a cognitive disorder was through a patient interview and testing, which she did not conduct. Farmer simply did not obtain the facts necessary to form an expert opinion. Further, she did not conduct her psychological testing in the manner that she testified would be reliable. Because of her failure to apply the methods and principles of psychologists, her testimony is inherently unreliable and completely fails under both *Daubert* and FED. R. EVID. 702.

### C. Dr. George Litchford

Dr. George Litchford ("Litchford") is the medical consultant for NBME. He is trained in clinical psychology, and practices psychology in addition to his consultation work for NBME. Litchford generally agrees with Farmer and Nussbaum as to the standards necessary to diagnose a patient for a cognitive disorder. Litchford, at his deposition, testified that the "general standard" for a cognitive disorder diagnosis would be to "meet the patient, take the history, administer the testing, make clinical observations, review the documents and as part of the testing, rule out other conditions." (Litchford Deposition, pg. 9, lines 1-9).

Litchford never met with Jayatilaka. (Litchford Deposition, pg. 9, lines 10-12). Instead, Litchford reviewed Jayatilaka's file for approximately an hour and forty-five minutes. (Litchford Deposition, pg. 13, lines 1-8).

All of the objections to Nussbaum and Farmer are also applicable to Litchford. Litchford testified that the correct method to diagnose a patient with a cognitive disorder was through a patient interview, taking a history, and appropriate testing and analysis. Litchford simply reviewed the

records of another psychiatrist and second-guessed the diagnosis. This is not the standard for diagnosis cognitive disorders that all three experts testified to.

Litchford did not conduct his psychological testing — if it can be called that — in the manner that he testified would be reliable. He failed to apply the methods and principles of psychologists. His testimony is inherently unreliable and completely fails under both *Daubert* and FED. R. EVID. 702.

### V. Because all of the Defendant's Experts Failed to Use Proper Methods to Arrive at Their Diagnosis, Their Testimony Must Be Stricken

Under *Daubert*, an expert's opinion must be grounded in scientific method and must fit the facts of the case in question. *Daubert*, 509 U.S. 590. The opinions of an expert must be excluded when the methods and data used lack sufficient probative force and reliability such that a reasonable expert could rely upon them. *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 748 (3rd Cir. 1994) (quoting *In re Agent Orange Prod. Liab. Litig.*, 611 F.Supp. 1223, 1245 (E.D.N.Y. 1985)). Such is the case with the Defendant's three experts.

The proponent of the expert testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements are met under Rule 702. *In re Silicone Gel Breasts Implants Prod. Liab. Litig.*, 318 F.Supp.2d 879, 889 (C.D.Cal.2004). When an expert relies on insufficient data, "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Menendez v. Terhune*, 422 F.3d 1012, 1033 (9th Cir.2005).

Numerous Ninth Circuit cases have excluded expert testimony where there is an analytical gap between the testimony proposed and the research and data available. *See e.g. Domingo v. T.K.*, 289 F.3d 600, 606-607 (9th Cir.2002) (district court's exclusion of expert's causation testimony was not abuse of discretion, in part because expert did not provide "analytical support" for his extrapolation of animal study results to humans, because there was no evidence that expert had applied a valid scientific method in developing his theory, and because there were unexplained gaps between the expert's premises and conclusion); *Lanphere Enterprises, Inc. v. Jiffy Lube International Inc.*, 138 Fed.Appx. 20 (9th Cir. 2005)(Not published) (Expert testimony excluded where research conducted only provided "marginal support for the expert's opinions").

In this case, the analytical gap between the data relied upon by the experts is huge. All three experts state that personal interviews are necessary for a psychological diagnosis. (Nussbaum Deposition, pg. 9, line 19 though pg. 10, line 9); (Farmer Deposition, pg. 9, lines 15-16; pg. 11, lines 9-12); (Litchford Deposition, pg. 9, lines 1-9). Yet none of the Defendant's experts took that step.

Ultimately, the testimony of all three NBME experts amounts to simple *ipse dixit*. The experts did not rely on the scientific principles to which they testified, as *Daubert* requires. They did not use the recognized methodology of psychologists and mental health experts.

### VI. Conclusion

Because the Defendant's experts, by their own admission, did not take the steps reasonable necessary to conduct a diagnosis of a cognitive disorder, their testimony must be excluded and stricken. Their testimony is not reliable, as necessary under Rule 702 and the Supreme Court's decision in *Daubert*. Their testimony is merely conjecture based on a cursory review of the plaintiff's records, and is designed to mislead its audience.

For the above reasons, Plaintiff Druvi Jayatilaka prays that this court strikes Defendant's expert testimony from the record and excludes their testimony from all consideration.

## I. NBME'S OPPOSITION TO JAYATILAKA'S JOINT MOTION *IN LIMINE* NO. 3.

Jayatilaka's motion to exclude the NBME's three expert opinions is based entirely on one contention: that the NBME's experts cannot provide expert testimony because they didn't personally interview or examine Jayatilaka and thus cannot clinically diagnose him. This argument fails.

First, even if Jayatilaka's contention – that an expert must examine a patient in order to diagnose a disability – was true, it would not apply here. The NBME's experts *did not clinically diagnose* Jayatilaka's condition, nor will they be asked to do so at trial. Rather, they reviewed the documentation that Jayatilaka submitted to support his accommodation request (including the results of extensive neuropsychological tests administered by one of his treating psychologists, the report of his two experts, medical records, and other documents), and then gave their view whether that documentation showed a mental impairment that substantially limits him in a major life activity. Neither undertook to clinically diagnose Jayatilaka with any disorder.

Second, even if these experts had attempted to clinically diagnose Jayatilaka, they could properly have done so based upon the documentation they reviewed. The Advisory Committee Notes to FRE 703 provide that with respect to the presentation of data to an expert outside of court and "other than by his own perception:"

> [Rule 703] is designed to broaden the basis for expert opinions beyond that current in many jurisdictions and *to bring the judicial practice into line with the practice of the experts themselves when not in court.* Thus a physician in his own practice bases his diagnosis on information from numerous sources and of considerable variety, including statements by patients and relatives, *reports and opinions from nurses, technicians and other doctors, hospital records*, and X rays. ... The physician makes life-and-death decisions in reliance upon them. His validation, expertly performed and subject to cross-examination, ought to suffice for judicial purposes.

*FRE 703 Notes of Advisory Committee on Rules* (emphasis added). Numerous courts have held, consistent with the Advisory Committee Notes, that expert opinions based on medical records and reports are reliable even when the expert opining did not

personally examine the patient.

Indeed, if adopted, Jayatilaka's position would lead to absurd results. If medical experts could not diagnose a condition or review another physician's diagnosis without examining patients themselves, plaintiffs would have to undergo numerous duplicative tests and examinations in every case in which their medical condition was at issue. Obviously this is not the case in regular practice, as recognized by the Advisory Committee. In fact, by Jayatilaka's reasoning, one of his own expert opinions (the only one who ever actually clinically diagnosed him) would be excluded, since he did not conduct the neuropsychological testing of Jayatilaka.

Jayatilaka's motion to exclude these expert opinions should be denied.

## II. FACTUAL BACKGROUND.

In this case, Jayatilaka has requested an accommodation under Title III of the Americans with Disabilities Act ("ADA") for double the standard testing time on the United States Medical Licensing Examination ("USMLE"). Licensure to practice medicine in the United States requires, among other things, successful completion of three parts, or "Steps" on the USMLE. Jayatilaka has already successfully passed Step 1 of the USMLE without accommodation but now seeks an accommodation on Step 2 Clinical Knowledge ("CK").

Defendant National Board of Medical Examiners (the "NBME") develops and provides for the administration of the USMLE. The NBME regularly grants requests for reasonable accommodations for test takers who have disabilities under the ADA. Similar to their burdens of proof in litigation, the individuals requesting such accommodations must submit information to the NBME sufficient to support the diagnosis claimed and their need for accommodation. *See Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1063 (9th Cir. 2005).

In his initial accommodation request, which sought double the standard testing time on the Step 2 CK exam, Jayatilaka represented that he had two disabilities: (1) a Reading Disorder; and (2) a Mixed Receptive/Expressive Language Disorder. In

support of his request, Jayatilaka submitted a single report dated May 21, 2008 from his treating psychologists, Drs. Levine and Dushenko, which included results from neuropsychological tests administered to Jayatilaka by Dr. Levine. Jayatilaka also submitted medical records and other documentation. None of these documents contained a clinical diagnosis of any mental impairment.

Following receipt of Jayatilaka's request, Dr. Catherine Farmer, Manager, Disability Services and ADA Compliance Officer, Testing Programs at the NBME, provided the information submitted by Jayatilaka in support of his request to Dr. George Litchford, an expert in the field of learning disabilities, for review. Dr. Litchford recommended that the NBME deny the requested accommodation:

> After carefully reviewing the documentation, I would not recommend granting test accommodations. ... His psychological test battery suggests average cognitive functioning ... and his performance on the Woodcock Johnson achievement tests is also in the average range or better than his cognitive performances. His examiner specifically notes that he does not meet criteria for a learning disability. ... In addition, any difficulties that may have occurred in the area of language and/or executive functioning did not seem to rise to a level to significantly impact his achievement functioning ....

(Declaration of Wendy Brenner, submitted herewith ("Brenner Decl."), ¶ 2 & Ex A, p. A-7.) Accordingly, the NBME denied Jayatilaka's accommodation request.

Jayatilaka then requested reconsideration of the NBME's decision. In support of this request, Jayatilaka submitted the same May 21, 2008 report from his psychologists, along with an affidavit from Dr. Dushenko listing, for the first time, a clinical diagnosis of Cognitive Disorder Not Otherwise Specified. The NBME engaged a second expert, Dr. Nancy Nussbaum, a neuropsychologist knowledgeable in the area of brain injuries, who reviewed the entire set of documentation submitted by Jayatilaka and found that his documentation failed to establish a functional impairment that would justify an accommodation:

After reviewing all of the records available to me, it is my opinion that Mr. Jayatilaka's documentation does not provide sufficient support for the diagnosis of a disorder that qualifies as a disability requiring accommodations ...

(Brenner Decl., ¶ 3 & Ex. B, p. B-5.) Accordingly, on February 12, 2009, the NBME denied Jayatilaka's request for reconsideration. This lawsuit followed.

The NBME has designated Dr. Litchford and Dr. Nussbaum as experts under Fed. R. Civ. P. 26(a)(2). Drs. Litchford and Nussbaum are expected to offer testimony at trial as to whether the documentation Jayatilaka submitted to the NBME, along with all of the other documentation obtained during discovery in this case (such as medical records, educational records, etc.), establish a mental impairment and/or show a functional limitation in a major life activity. The NBME has not designated Dr. Farmer as an expert in this matter,[1] and will offer her testimony in the form of deposition transcript designations at trial. Nevertheless, Jayatilaka by this motion seeks to exclude the testimony of all three of them.

### III. JAYATILAKA'S MOTION TO EXCLUDE TESTIMONY FROM DRS. LITCHFORD AND NUSSBAUM SHOULD BE DENIED.

#### A. Standard for Admissibility of Expert Opinion Testimony.

The FRE assigns the trial judge the "gatekeeping" task of ensuring that expert testimony is relevant to the task at hand and rests on a reliable foundation. *Daubert v. Merrell Dow Pharm.*, 509 US 579, 592 (1993). The FRE include a strong and undeniable preference for admitting any evidence that has the potential to assist the trier of fact. *See Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 780 (3d Cir. 1996). FRE 702 governs the admissibility of expert testimony and has a liberal policy of admissibility. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994).

---

[1] Jayatilaka's motion with respect to Dr. Farmer should be denied because Dr. Farmer has not been designated as an expert witness and does not intend to offer expert witness testimony. Rather, she is a percipient witness as an employee of the NBME who was involved in the decision to deny Jayatilaka's accommodation requests.

Under Rule 702, admissibility of expert opinion testimony is based upon the court's determination that: (1) the opinion is based on "scientific, technical, or other specialized knowledge;" (2) the opinion would "assist the trier of fact" in understanding the evidence or determining a fact in issue; and (3) the expert has appropriate qualifications. FRE 702. Jayatilaka concedes that testimony from Drs. Litchford and Nussbaum would assist the trier of fact, and they have appropriate qualifications. He seeks to exclude their testimony only under element (1).

Element (1) establishes a standard of "evidentiary reliability." *Daubert*, 509 U.S. at 589. Expert testimony is sufficiently reliable if the expert has "good grounds" for the testimony in that the testimony displays the "same level of intellectual rigor that characterizes the practice in the relevant field." *Jahn v. Equine Serv.*, 233 F.3d 382, 388 (6th Cir. 2000) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)); *see also Daubert*, 509 U.S. at 589.

The Rule 702 analysis is intended to be flexible, and a court should be mindful of other applicable rules, such as FRE 703, which provides that an expert can rely on certain types of information in forming an opinion, even if otherwise inadmissible, if that information is "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." *Daubert*, 509 U.S. at 593.

Here, Jayatilaka challenges only whether the NBME's experts' opinions are reliable, based upon the methodology used (which undisputedly involved a thorough review of the report of Jayatilaka's own experts, his neuropsychological test results, his medical records and other documents, but not a personal examination of him). This is the only argument offered by Jayatilaka in his motion and it fails.

**B. The Experts Have Not And Will Not Clinically Diagnose Jayatilaka.**

Jayatilaka argues that by their own admission, the NBME's experts' methodology for ***diagnosing a disability*** would include a personal interview and examination of the patient, and therefore their opinions must be excluded because they did not personally interview or examine Jayatilaka. (See Section IV of

Jayatilaka's motion, above.) However, their methodology for performing a diagnosis is irrelevant here. Nowhere in their opinions do they seek to clinically diagnose Jayatilaka. (See Brenner Decl., Exs. A-B.) Rather, each of them reviewed the documentation submitted by Jayatilaka to support his request for an accommodation, reviewed his results from neuropsychological tests administered by one of his treating psychologists, reviewed his medical records, reviewed documents regarding his background, and reviewed the reports and conclusions by his treating psychologists. Based upon their review of the documentation, the NBME's experts gave their views on whether Jayatilaka had shown that he has a mental impairment and whether this impairment substantially limits him in a major life activity. (*See id.*) They do not purport to make any clinical diagnosis whatsoever. Thus, Jayatilaka's premise – that a personal interview and examination are required for a clinical diagnosis – has no application here and Jayatilaka's argument fails.

### C. As A Matter Of Law, Medical Experts Can Rely Upon Other Physician Opinions And Medical Records In Forming Opinions And Even In Clinically Diagnosing Patients.

It well settled that physicians and experts can rely upon the information the NBME's experts relied upon here to form their opinions and even to reach a diagnosis. Indeed, basing expert opinions on such reports is, as a matter of law, reliable methodology. *Jahn*, 233 F.3d at 391-92 (pathologists' opinions relying on physical symptoms in report to presume infection, without personal interviews or examinations, were not methodologically unsound, even if the conclusions were "less than certain"); *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802 (3rd Cir. 1997) (physician's opinion admissible without personal examination of patient); *In re Paoli RR. Yard PCB Litig.*, 35 F.3d 717, 762 (3d Cir. 1994) (evaluating medical records is reliable method for drawing conclusions about patient "even in the absence of a physical examination").[2]

---

[2] Even reports from non-experts can be a "reliable basis" for expert testimony and are "exactly the type of information ... Rule 703 was intended to encompass." *U.S. v. Bramlet*, 820 F.2d 851, 856 (7th Cir. 1987) (quoting *U.S. v. Lawson*, 653 F.2d 299, 301-302 (7th Cir. 1981)) (psychiatrist's

In *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802 (3rd Cir. 1997), the plaintiff offered the testimony of an expert who "did not 'examine, or even speak to'" the subject of his diagnosis. *Id.* at 807. Instead, the expert looked solely to the subject's "medical history" and the report of a neuropsychologist who tested the subject. *Id.* The defendant moved to dismiss the expert's testimony, arguing that he did not personally examine or administer tests to the patient. Finding the testimony admissible, the Third Circuit held: ***"a physician may reach a reliable differential diagnosis without himself performing a physical examination ... [i]n fact, it is perfectly acceptable, in arriving at a diagnosis, for a physician to rely on examinations and tests performed by other medical practitioners."*** *Id.* (emphasis added).

Here, the NBME's experts have not even gone as far as the expert in *Kannankeri* since none of them clinically diagnosed Jayatilaka. Moreover, it is undisputed that their opinions are based upon all of the documentation regarding Jayatilaka. These are exactly the type of records that courts have found reliable, and indeed, are expressly anticipated by the FRE to be reliable and admissible.

### D. Jayatilaka's Argument Leads Only To Absurdity.

If Jayatilaka's arguments were accepted, the results would be absurd for Jayatilaka, and for every other case in which more than one medical expert testifies.

Jayatilaka submitted the reports of his treating psychologists to the NBME to support his request for an accommodation, and has stated in this litigation that he intends to present both experts at trial. Only one of those treating psychologists, Dr. Levine, actually administered neuropsychological tests to Jayatilaka. The other made evaluations based on the test results, similar to the NBME's experts, and indeed is the only expert who has ever clinically diagnosed Jayatilaka with a mental impairment. By Jayatilaka's reasoning, the opinion of his own expert – the only one who actually

---

testimony relying on prison officials' reports without a personal examination was admissible as the types of reports/records that doctors would rely upon in making a similar professional judgment).

clinically diagnosed him – should be excluded.[3]

Additionally, Jayatilaka's argument would change the face of every litigation in which medical experts provide opinions. If no evaluation can be made without a personal interview or examination, every accommodation request that came to the NBME (and similarly every litigation involving medical experts) would require that every expert independently interview and administer tests to the requestor. Jayatilaka would have undergone at least three more rounds of interviews and the administering of the exact same test four times in order for the four experts here to have admissible opinions. The extra steps Jayatilaka himself would have had to undergo, not to mention every other person whose condition was a critical subject-matter in litigation, would be extremely burdensome and unnecessary. The practical result of Jayatilaka's argument would be absurd.

### IV. CONCLUSION OF THE NBME'S OPPOSITION TO JAYATILAKA'S MOTION.

For the foregoing reasons, the NBME respectfully requests that the Court deny Jayatilaka's motion *in limine* to exclude the three experts' opinions.

Dated: March 1, 2010

MULLIN HOARD & BROWN, LLP
JOHN M. BROWN (87985)
VINCENT E. NOWAK (*pro hac vice*)

/S/
VINCENT E. NOWAK
Attorneys for the Plaintiff
DRUVI JAYATILAKA

Dated: March 1, 2010

COOLEY GODWARD KRONISH LLP
GREGORY C. TENHOFF (154553)
WENDY J. BRENNER (198608)

/S/
Gregory C. Tenhoff (154553)
Attorneys for Defendant NATIONAL BOARD OF MEDICAL EXAMINERS
807771/PA

---

[3] Dr. Levine, who administered the neuropsychological tests, did not personally conduct the interviews that are referenced in his joint report with Dr. Dushenko (Jayatilaka's other expert).
{8070\00\00155626.DOC / 1}

# PROOF OF SERVICE

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

    I am employed in the County of Los Angeles, State of California; I am over the age of 18 and not a party to the within action; my business address is 10250 Constellation Boulevard, 19th Floor, Los Angeles, California 90067.

    On March 1, 2010, at the direction of a member of the Bar of this Court, I served the within:

**PLAINTIFF'S JOINT MOTION IN LIMINE NO. 3 TO EXCLUDE OPINIONS AND TESTIMONY OF DEFENDANT'S EXPERTS NANCY L. NUSSBAUM, CATHERINE FARMER, AND GEORGE LITCHFORD, AND BRIEF IN SUPPORT; PLAINTIFF'S APPENDIX TO PLAINTIFF'S JOINT MOTION IN LIMINE NO. 3 TO EXCLUDE OPINIONS AND TESTIMONY OF DEFENDANT'S EXPERTS NANCY L. NUSSBUAM, CATHERINE FARMER, AND GEORGE LITCHFORD, AND BRIEF IN SUPPORT**

on the interested parties to this action by delivering a copy thereof in a sealed envelope addressed to each of said interested parties at the following address(es):

Gregory C. Tenhoff, Esq.
(gtenhoff@cooley.com)
Wendy J. Brenner, Esq.
(wbrenner@cooley.com)
Cooley, Godward, Kronish, LLP
5 Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155

☐ (BY MAIL) I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service. This correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business at our Firm's office address in Los Angeles, California. Service made pursuant to this paragraph, upon motion of a party served, shall be presumed invalid if the postal cancellation date of postage meter date on the envelope is more than one day after the date of deposit for mailing contained in this affidavit.

☐ (BY OVERNIGHT DELIVERY SERVICE) I served the foregoing document by Federal Express, an express service carrier which provides overnight delivery, as follows. I placed true copies of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed to each interested party as set forth above, with fees for overnight delivery paid or provided for.

☒ (BY –E-MAIL) I caused such documents to be delivered via electronic transmission to the offices of the addressee(s) at the e-mail addresses listed above.

Executed this 1st day of March, 2010, at Los Angeles, California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

ERIKA BARBOUR

700531-1