Vincent E. Nowak, Texas State Bar No. 15121550
MULLIN HOARD & BROWN, LLP
P.O. Box 31656
Amarillo, TX 79120-1656
Telephone: (806) 372-5050
Facsimile: (806) 372-5086

Alisa M. Morgenthaler, State Bar No. 146940
GLASER, WEIL, FINK, JACOBS
 HOWARD & SHAPIRO, LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone: (310) 282-6287
Facsimile: (310) 556-2920

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT

WESTERN DIVISION

| | |
|---|---|
| DRUVI JAYATILAKA,<br><br>    Plaintiff,<br><br>v.<br><br>NATIONAL BOARD OF MEDICAL EXAMINERS,<br><br>    Defendant. | Case No. CV 09-02932 PA (CWx)<br><br>**PLAINTIFF'S [PROPOSED] FINDINGS OF FACTS AND CONCLUSIONS OF LAW**<br><br>Date: March 29, 2010<br>Time: 1:30 p.m.<br>Judge: Hon. Percy Anderson |

Pursuant to Local Rule 6–1, and this Court's August 3, 2009 Amended Scheduling Order, Plaintiff submits the following Proposed Findings of facts and Conclusions of Law.

I. PROPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW

<u>Plaintiff</u>

1. Plaintiff Druvi Jayatilaka ("Jayatilaka" or "Plaintiff") has a disability, that is, a physical or mental impairment that substantially limits one or more of his major life activities of reading and learning. More specifically, Plaintiff's reading and visual processing skills are below average such that his ability to read and process written information is substantially limited and is below average in comparison to most people as well as persons of his age and educational level. Without accommodation this impairment, rather than other factors such as education or innate ability, substantially limits his ability to read, mentally process and comprehend written words, learn, and take time-limited tests.

2. Plaintiff, a graduate of the Universidad de Autonoma de Guadalajara ("Medical School") in Guadalajara, Mexico, experiences substantial difficulty completing testing tasks within prescribed time limits because of an inability to process written information as quickly as the majority of his peers. This inability to process information efficiently results in significantly reduced test scores on timed exams. Such reduced scores impair his chances of completing his medical licensing successfully.

3. Plaintiff is highly motivated. Before his admittance to medical school, he earned a Bachelor of Arts degree from the Franklin and Marshall College. Jayatilaka's learning disabilities date back to 1995 when he was brutally attacked in Guadalajara, Mexico and suffered a depressed skull fracture. Since that time, he has been diagnosed with post-traumatic migraines, along with a period of apparent short-term memory loss. He has noted challenges with verbal processing, speed of information processing, and extended mental tracking and control. After graduating from the Medical School in 1997, Jayatilaka made at least five attempts before passing the Step 1 without accommodation in 1999.

703937-1

4. Since 1999, Jayatilaka has made multiple attempts to pass the Step 2 without accommodation. For several years he has participated in a review program for Step 2 and Step 3 in Champaign, Illinois actually tutoring other students on the tested material.

5. Plaintiff has requested from the Defendant and was refused a formal time accommodation (double time) to take Step II of the U.S. Medical Licensing Examination. Passage of the Step II exam is required for continuation of the medical licensing process. This suit was filed to achieve that time accommodation from Defendant.

USMLE Step II

6. Defendant National Board of Medical Examiners ("NBME" or "Defendant") is a non-profit organization chartered in 1915 to design national standards for medical licensing examinations. The NBME has developed a medical licensing examination consisting of three separate parts, Steps I, II and III, which is now accepted by all fifty states. At issue in this case at the time is accommodation for the Step II exam.

7. The United States Medical Licensing Examination, Step II ("USMLE Step II"), is a timed examination designed to test a person's application of medical knowledge, skills, and understanding of clinical science essential for the provision of patient care under supervision and includes emphasis on health promotion and disease prevention. The Step II examination is not graded on a curve; it is a mastery test. Because it is a mastery test, the test taker either knows the material and passes the exam, or he does not know the tested-for material and fails the exam. Time constraints for most individual who take this test are not of major consequence because the majority of medical students possess the reading and processing efficiency needed to work through the test within the time constraints that are allowed. This is not true however for individuals with cognitive disabilities, such as Plaintiff.

703937-1

8. The NBME has contracted with Sylvan Learning Center, a national network of testing centers, to administer the USMLE Step II exam. As administered, the Step II exam consists mainly of multiple choice questions of 150 to 200 words and between three to twenty-six answer choices. The ability to rapidly read the English language, efficiently mentally process the medical test questions, and rapidly comprehend or understand the written test materials is essential to displaying one's mastery of the subjects tested by the examination.

9. A passing score on the Step II examination by a medical student or medical school graduate is required to become a licensed physician in the United States. Without accommodations, there will be a delay in the completion of the medical licensing process. There is no good way to remedy this injury. Timely Step II testing and passage is required.

10. The fact that a medical student received an ADA accommodation for his Step II examination, such as extra time to complete the exam, is noted on USMLE Step II test results by the statement that the test as taken was a non-standard or accommodated exam.

Neuropsychological Examination

11. Before granting a time accommodation on the USMLE, the NBME requires a disorder diagnosis and a current (less than three years old) assessment of an applicant's disability. A Neuropsychological Examination which consists of multiple tests, including but not limited to clinical interviews, the Millon Clinical Multiaxial Inventory – III, the Wechsler Adult Intelligence Scales – Third Edition, the Conners' Continuous Performance test –Second Edition, and the Woodcock Johnson Psychoeducational Battery – Third Edition, is accepted by the NBME for this assessment and a DSM-IV diagnosis is what is required. The NBME therefore informed Plaintiff that it required a current assessment report as well as a current diagnosis of a learning disability before it would grant his request for a time accommodation on the Step II examination.

703937-1

12. Pursuant to the Board's requirements, in April and May of 2008 Plaintiff underwent a neuropsychological examination by Drs. Terrence Dushenko and Andrew Levine of the Health Psychology Associates group in Long Beach, California. Specifically, Plaintiff's set of scores on processing speed of verbal information were much lower compared to other test scores. The large discrepancy shows more than just a "weakness." It shows a disability. The test results demonstrate that Plaintiff has low reading efficiency caused by a very low or very weak reading processing and decision speed. Processing speed is the ability to perform automatic cognitive tasks, particularly when measured under time pressure to maintain focused attention. Decision speed is an aspect of cognitive efficiency and provides an index of a person's ability to make correct conceptual decisions quickly.

13. Decreasing the time needed to take a mastery test such as the USMLE by, for example, refusing a time accommodation for a person such as Plaintiff, is tantamount to increasing the difficulty of that test. By forcing an individual with a cognitive disability to adhere to prescribed time limits that do not allow him adequate time to process test information in effect makes the testing situation more difficult for him than for his peers. Another result of a lack of accommodation is that the exam does not test the person's mastery of the subject but instead tests the level of disability. Accommodating the needs of an individual with such a disability is a means of equalizing test demands and ensuring that he has a fair chance to display his mastery, or lack thereof, of the required medical materials.

14. Following the testing and clinical assessment of Plaintiff, Dr. Dushenko made a DSM-IV clinical diagnosis of Cognitive Disorder – Not Otherwise Classified, that is, that Plaintiff is substantially limited in his ability to make sense of what he has read and be able to use it in a functional way, relative to most people. It is undisputed that such a diagnosis means that such an individual requires extra time to read and comprehend written examinations and that an

703937-1

appropriate accommodation for a person with this disorder is to afford him extra time on written examinations. No expert testifying at trial other than Drs. Dushenko and Levine clinically examined or assessed Plaintiff for a learning disability.[1] The Court finds Dr. Dushenko's report and diagnosis credible.

15. Any findings of fact constituting in whole or in part a conclusion of law will be deemed a conclusion of law. Any conclusion of law constituting in whole or in part a finding of fact will be deemed a finding of fact.

Discussion and Analysis

16. A preliminary injunction is an extraordinary equitable remedy that may be granted only if a plaintiff establishes a combination of:

(1) A probable success on the merits and the possibility of irreparable injury; or

(2) "Serious questions" raised on the merits and a balance of hardships that tips sharply in Plaintiff's favor.

Also, it must be shown that the injunction will serve the public interest. *Sierra On-line, Inc. v. Phoenix Software, Inc.* 739 F.2d 1415, 1421 (9th Cir 1984). The decision to grant a preliminary injunction is to be treated as the exception rather than the rule. *Regents of Univ. of California v. American Broadcasting Companies, Inc.*, 747 F.2d 511, 523 (9th Cir. 1984) (in dissent); *American Motorcyclist Ass'n v. Watt*, 714 F.2d 962, 967 (9th Cir. 1983).

17. A permanent injunction is also an extraordinary equitable remedy that will be granted only if a plaintiff establishes an irreparable injury and that the remedies at law are inadequate. The Plaintiff must show "actual success on the merits and that the balance of equities favors injunctive relief. That is, the plaintiff seeking an injunction must prove the plaintiff's own case and adduce the requisite proof, by a preponderance of the evidence, of the conditions and circumstances

---

[1] Defendant has offered the testimony of Dr. Nancy Nussbaum and Dr. George Litchford for the evaluation of Plaintiff's disability. Drs. Nussbaum and Litchford have had no personal contact with Plaintiff.

703937-1

upon which the plaintiff bases the right to and necessity for injunctive relief." *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998) (citing *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 558 (9th Cir. 1990). The decision a court makes regarding a permanent injunction involves factual, legal, and discretionary components. *Id.* A permanent injunction is only proper if monetary damages or other legal remedies will not compensate the plaintiff for his injuries. *LaDuke v. Nelson*, 762 F.2d 1318, 1330 (9th Cir. 1985).

18. Title II of the ADA prohibits discrimination by public entities, such as the National Board of Medical Examiners, on the basis of disability. 42 U.S.C. § 12132. Title III of the ADA requires, *inter alia*, entities offering licensing examinations to provide reasonable accommodations to disabled individuals. 42 U.S.C. § 12189. *See also* 29 C.F.R. § 1630.2(j)(3)(i) (extra time accommodations on timed examinations).

19. In order to find that Plaintiff has a reading disability, he must be substantially limited in reading in comparison to "most people." 28 C.F.R. Pt. 35, App. A § 35.104.

> "[A]n impairment is substantially limiting if it significantly restricts the duration, manner or condition under which an individual can perform a particular major life activity as compared to the average person in the general population's ability to perform that same major life activity…"

29 C.F.R. pt. 1630, App. A § 1630.2(j).

20. On the totality of evidence, including Plaintiff's current neuropsychological examination scores (required by the NBME to document Plaintiff's diagnosis and disability) and his DSM diagnosis, Plaintiff has shown that he is an individual with a disability under the ADA because he is substantially limited in the major life activities of reading and comprehending what is read to use it in functional way when compared to most people.

703937-1

21. The USMLE Step II examination involves and requires extensive reading, and scoring well and/or passage of the exam requires extensive subject-matter knowledge. Plaintiff has shown a sufficient causal connection between his cognitive impairment and his failures to score well, or as well as he might, on time-limited examinations requiring extensive reading. Plaintiff has shown that if he is accommodated he will be effectively tested not on his disability but rather on his subject matter knowledge. Plaintiff has shown that his cognitive impairment seriously decreases the rate at which he reads with comprehension. Plaintiff will suffer irreparable injury if the requested injunction is denied.

22. With the requested reasonable accommodation of double time to take the Step II exam, Plaintiff will have time to either display his mastery of the subject matter, or show that he has not sufficiently mastered the tested materials. In either event, granting the injunction will allow Plaintiff to be tested on his medical and science knowledge and not his disability.

23. The threatened injury to Plaintiff outweighs any damage that granting the injunction might cause at this time to the Defendant or to the public.

24. The injunction will not disserve the public interest but will further the public interest in prohibiting discrimination by public entities, such as the National Board of Medical Examiners, on the basis of disability by fulfilling the ADA's requirement that entities offering licensing examinations provide reasonable accommodations to disabled individuals.

Order

25. Defendant National Board of Medical Examiners is ordered to allow Plaintiff Druvi Jayatilaka double or twice the normal amount of time to take and complete the U.S. Medical Licensing Examination, Step II. If the examination cannot be completed in one day, Plaintiff is to be allowed to complete the examination over two days.

703937-1

26. This injunction is binding upon the Defendant National Board of Medical Examiners, its officers, agents, servants, employees, and attorneys, and upon those persons administering the Step II examination who are under contract with the NBME or in active concert or participated with them who receive actual notice of this Order by personal service or otherwise.

It is SO ORDERED.

## II. CONCLUSION

Plaintiff Druvi Jayatilaka prays that upon final trial of the merits the Honorable Court make the above findings of fact and conclusions of law.

Dated: March 16, 2010.  MULLIN HOARD & BROWN, LLP

By: /s/ Vincent E. Nowak
Vincent E. Nowak
Attorneys for Plaintiff

703937-1

# PROOF OF SERVICE

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California; I am over the age of 18 and not a party to the within action; my business address is 10250 Constellation Boulevard, 19th Floor, Los Angeles, California 90067.

On March 16, 2010, at the direction of a member of the Bar of this Court, I served the within:

**PLAINTIFF'S [PROPOSED] FINDINGS OF FACTS AND CONCLUSIONS OF LAW**

on the interested parties to this action by delivering a copy thereof in a sealed envelope addressed to each of said interested parties at the following address(es):

Gregory C. Tenhoff, Esq.
(gtenhoff@cooley.com)
Wendy J. Brenner, Esq.
(wbrenner@cooley.com)
Cooley, Godward, Kronish, LLP
5 Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155

☐ (BY MAIL) I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service. This correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business at our Firm's office address in Los Angeles, California. Service made pursuant to this paragraph, upon motion of a party served, shall be presumed invalid if the postal cancellation date of postage meter date on the envelope is more than one day after the date of deposit for mailing contained in this affidavit.

☐ (BY OVERNIGHT DELIVERY SERVICE) I served the foregoing document by Federal Express, an express service carrier which provides overnight delivery, as follows. I placed true copies of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed to each interested party as set forth above, with fees for overnight delivery paid or provided for.

☒ (BY –E-MAIL) I caused such documents to be delivered via electronic transmission to the offices of the addressee(s) at the e-mail addresses listed above.

Executed this 16th day of March, 2010, at Los Angeles, California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
ERIKA BARBOUR

700531-1