COOLEY GODWARD KRONISH LLP
GREGORY C. TENHOFF (154553)
(tenhoffgc@cooley.com)
WENDY J. BRENNER (198608)
(brennerwj@cooley.com)
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA  94306-2155
Telephone:   (650) 843-5000
Facsimile:   (650) 857-0663

Attorneys for Defendant
NATIONAL BOARD OF MEDICAL EXAMINERS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT

WESTERN DIVISION

| | |
|---|---|
| DRUVI JAYATILAKA,<br><br>              Plaintiff,<br><br>     v.<br><br>NATIONAL BOARD OF MEDICAL EXAMINERS,<br><br>              Defendant. | Case No.  CV 09-02932 PA (CWx)<br><br>**DEFENDANT NATIONAL BOARD OF MEDICAL EXAMINERS'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

Defendant National Board of Medical Examiners ("NBME") hereby submits its proposed findings of fact and conclusions of law in compliance with this Court's Scheduling Order.

## FINDINGS OF FACT

### I.   THE PARTIES AND THE USMLE.

**1.**      Plaintiff Druvi Jayatilaka is a medical school graduate seeking an accommodation on the basis of an alleged disability on the United States Medical Licensing Examination ("USMLE").  (Complaint, ¶ 1.).

**2.**      The NBME is an independent, not-for-profit organization that administers the USMLE jointly with the Federation of State Medical Boards.  The

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

837110 v5/HN                                                    1.                         NBME'S PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW
CV 09-02932 PA (CWx)

1   NBME is responsible for processing requests for accommodations based upon
2   alleged disabilities on that portion of the USMLE at issue in this action.  (Answer
3   of NBME, ¶¶ 3, 13.)

4       **3.**     Medical licensure in the United States requires, among other things,
5   successful completion of all three parts, or "steps," of the USMLE.   (Stipulated
6   Fact ("SF") 44.)

7   **II.   JAYATILAKA'S ACADEMIC AND TESTING HISTORY.**

8       **4.**     Jayatilaka was born in Sri Lanka.  He began speaking English at age
9   four or five.  English is therefore his second language.  (SFs 1-3.)

10      **5.**     Jayatilaka attended Chadwick High School between 1983 and 1986.
11  He graduated from Chadwick High School with a 3.13 cumulative grade point
12  average, and a class rank of 33 out of 60.  (SFs 4-6.)

13      **6.**     Jayatilaka did not request or receive any accommodations throughout
14  high school.  (SF 7.)

15      **7.**     Jayatilaka attended Franklin and Marshall College between 1987 and
16  1991.  He graduated from Franklin and Marshall College with a 2.69 cumulative
17  grade point average, and a class rank of 318 out of 431.   Jayatilaka earned the
18  following grades in his science courses at Franklin and Marshall:

19      • General Chemistry 1 (B+)
20      • General Chemistry 2 (B)
21      • Intro Cellular Biology (B-)
22      • Organic Chemistry 1 (C)
23      • Developmental Biology (B-)
24      • Organic Chemistry 2 (F)
25      • Genetics (C)
26      • Organic Chemistry 2 (B+)
27      • General Physiology (C)
28      • Population Biology (C-)  (SFs 8-11.)

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

837110 v5/HN                    2.

NBME'S PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW
CV 09-02932 PA (CWx)

**8.** Jayatilaka did not request or receive any accommodations throughout his undergraduate education. (SF 12.)

**9.** Jayatilaka took the Medical College Admissions Test ("MCAT") on four occasions. The MCAT has three components: Verbal Reasoning ("VR"); Physical Science ("PS") and Biological Science ("BS"). The highest score an examinee can achieve in any component of the MCAT examination taken by Jayatilaka is a score of 15. (SFs 18-20.)

**10.** The highest score Jayatilaka obtained on the VR component of the MCAT was a "9," which corresponds to the 55th to $77.9^{th}$ percentile. (SF 21.) The highest score Jayatilaka obtained on the PS component of the MCAT was an "8," which corresponds to the 47th to $62.9^{th}$ percentile. (SF 22.) The highest score Jayatilaka obtained on the BS component of the MCAT was an "8," which corresponds to the 45th to $65.9^{th}$ percentile. (SF 23.)

**11.** In 1991, Jayatilaka applied to more than ten medical schools but was not accepted into any medical school. (SF 24.) After he failed to obtain admission to any medical schools in 1991, he took a year off. (SF 25.)

**12.** In 1992, Jayatilaka was accepted to medical school at Universidad Autonoma de Guadalajara ("UAG"), which Jayatilaka attended. (SF 26.)

**13.** All of Jayatilaka's classes at UAG were conducted in Spanish. (SF 27.) Jayatilaka does not speak or write the Spanish language. (SF 28.)

**14.** Jayatilaka earned the minimum passing score of "6" on four occasions in medical school. (SF 30.)

**15.** Jayatilaka graduated from UAG and received his medical school degree in June 1997. (SF 31.)

**16.** Jayatilaka did not request or receive any accommodations throughout medical school on the basis of an alleged disability. (SF 29.)

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

837110 v5/HN

3.

NBME'S PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW
CV 09-02932 PA (CWx)

### III.   JAYATILAKA'S 1995 SKULL FRACTURE.

**17.**   In December 1995, Jayatilaka was treated at St. Mary Medical Center in Long Beach, California.  (SF 33.)  At the time, Jayatilaka reported to doctors at St. Mary Medical Center that he was "assaulted in Mexico, was struck on the head with a gun and was run over by a motor vehicle."  (SF 36.)

**18.**   He underwent surgery for a depressed skull fracture.  (SF 34.)  The fracture was located in the right parietal region of the skull.  (SF 35.)

**19.**   A subsequent MRI of Jayatilaka's brain taken on May 18, 1996 was negative.  "No intracranial abnormality [was] seen."  (SF 37.)

**20.**   Another MRI of Jayatilaka's brain taken on July 28, 1997 stated there had been "[n]o change since the prior study dated 5/18/96.  No abnormality [was] seen."  (SF 38.)

**21.**   An MRI of Jayatilaka's brain taken on June 5, 2003 was "[n]egative."  (SF 39.)

**22.**   In June 2006, Jayatilaka "underwent outpatient consultation with Dr. A.J. Aksamit, Jr. (Mayo Clinic-Rochester, Department of Neurology), due to recurrent headaches in the context of prior closed head trauma with surgical repair of depressed skull fracture, subsequent migraine, and history of sleep apnea."  (SF 40.)

**23.**   During Jayatilaka's evaluation in June 2006 at the Mayo Clinic, the June 5, 2003 MRI was reviewed by the Mayo Clinic doctors and "felt to be unrevealing."  (SF 41.)

**24.**   An MRI Scan in 2006 of Jayatilaka's "head/brain" was "unremarkable."  (SF 42.)

**25.**   No MRI scan taken of Jayatilaka's brain has ever revealed brain injury.  (SF 43.)  Thus, there is no evidence that Jayatilaka suffered any injury to his brain as a result of the 1995 incident.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

837110 v5/HN                                    4.                    NBME'S PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW
CV 09-02932 PA (CWx)

## IV.   JAYATILAKA'S HISTORY OF USMLE ADMINISTRATIONS.

**26.**   Jayatilaka first took Step 1 of the USMLE on October 1996, after the 1995 skull fracture.

**27.**   Jayatilaka passed Step 1 of the USMLE on his fifth attempt.  (SF 45.)

**28.**   Jayatilaka did not request or receive any accommodations from the NBME during any administration of Step 1 of the USMLE.   (SF 46.)

**29.**   Jayatilaka has attempted to pass the USMLE Step 2 Clinical Knowledge ("CK") on six occasions between 1998 and 2007.  (SF 49.)

**30.**   Jayatilaka's first attempt to pass the USMLE Step 2 CK was on March 3, 1998.   Jayatilaka received a score of 129 on that administration of the USMLE Step 2 CK.  (SFs 50-51.)

**31.**   Jayatilaka next attempted to pass the USMLE Step 2 CK on December 21, 2000.  Jayatilaka received a score of 115 on that administration of the USMLE Step 2 CK.  (SFs 52-53.)

**32.**   Jayatilaka next attempted to pass the USMLE Step 2 CK one year later on December 21, 2001.  Jayatilaka received a score of 140 on that administration of the USMLE Step 2 CK.  (SFs 54-55.)

**33.**   Jayatilaka did not attempt to take the USMLE Step 2 CK again until April 30, 2004.   Jayatilaka received a score of 151 on that administration of the USMLE Step 2 CK.  (SFs 56-57.)

**34.**   Jayatilaka next attempted to pass the USMLE Step 2 CK on October 28, 2004.  Jayatilaka obtained a score of 172 on that administration of the USMLE Step 2 CK.  (SFs 58-59.)

**35.**   Between October 28, 2004 and August 31, 2007, Jayatilaka was scheduled to take the USMLE Step 2 CK exam on three occasions, but he did not show up for the exam on any of these three occasions.  (SF 60.)

**36.**   On his most recent attempt to pass Step 2 CK on August 31, 2007, Jayatilaka scored a 177, which was nearly a passing score.  (SF 64; Jayatilaka trial

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

837110 v5/HN                                    5.                        NBME'S PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW
CV 09-02932 PA (CWx)

1   testimony.)

2       **37.**    Jayatilaka did not request or receive any accommodations from the

3   NBME during any of these administrations of the USMLE Step 2 CK.  (Complaint,

4   ¶ 10.)

5   **V.    JAYATILAKA'S REQUESTS FOR ACCOMMODATION ON THE USMLE STEP 2**
        **CLINICAL KNOWLEDGE EXAMINATION.**

6

7       **38.**    Jayatilaka first requested an accommodation from the NBME on the

8   USMLE on July 14, 2008. (SF 66.)

9       **39.**    The requested accommodation was for the Step 2 Clinical Knowledge

10  ("CK") component of the USMLE which assesses clinical knowledge.  (SFs 47;

11  68.)

12      **40.**    The Step 2 CK is a computer-based multiple-choice examination

13  administered over a single day.  There are nine test blocks of one hour each and 45

14  minutes of break time.  (SF 48.)

15      **41.**    Jayatilaka's requested accommodation was double the standard

16  amount of testing time.  (SF 68.)

17      **42.**    As the basis for his accommodation request, Jayatilaka stated that he

18  had a "Reading Disability" and "Language Impairment" in the form of "Mixed

19  Receptive/Expressive Language Disorder," which he also indicated was a "speed of

20  processing" issue. (SFs 67, 121.)

21      **43.**    In support of his accommodation request, Jayatilaka submitted the

22  following documentation:   (i) a letter from Dr. William Gorunoff, a treating

23  neurologist; (ii) medical records from the Mayo Clinic from an observation in June

24  2006; (iii) pre and post operative reports from St. Mary Medical Center from 1995

25  and 1996, when he underwent surgery in 1995 for a depressed skull fracture that

26  occurred as a result of the incident outside a bar in Guadalajara, Mexico in 1995;

27  and (iv) a Neuropsychological Evaluation dated 05/21/08 (the "Evaluation"),

28  conducted by Drs. Terrance Dushenko and Andrew Levine.  (SFs 69-72.)

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

837110 v5/HN                          6.                    NBME'S PROPOSED FINDINGS OF FACT AND
                                                              CONCLUSIONS OF LAW
                                                              CV 09-02932 PA (CWx)

44.     The Evaluation reported all of Jayatilaka's test scores from neuropsychological tests administered to him by Dr. Levine in April and May 2008. (SF 73.)

45.     The NBME publishes "General Guidelines for All Disabilities" regarding the process for obtaining accommodations on the USMLE.  (SF 65.)

46.     These Guidelines include the requirement that individuals seeking accommodations "provide documentation from their own treatment or evaluators," which the NBME then reviews.  (SF 76.)

47.     In accordance with its Guidelines, the NBME reviewed the documentation Jayatilaka submitted with his request for accommodation and provided Jayatilaka's file to an expert in the field of learning disabilities, Dr. George Litchford, for review.  (SFs 77-78.)

48.     Dr. Litchford subsequently provided the NBME with a report dated August 26, 2008 recommending denial of the requested accommodation.  (SF 79.)

49.     Dr. Litchford's report stated that Jayatilaka's "test battery suggests average cognitive functioning" and that any difficulties with language and/or executive functioning were not significantly impacting his achievement functioning.  (SF 80.)

50.     The NBME subsequently denied Jayatilaka's request for accommodations for the USMLE Step 2 CK on September 16, 2008 on the grounds that the documentation he submitted did not support the existence of an impairment justifying an accommodation.  (SFs 82-83.)

51.     On or about December 23, 2008, Jayatilaka submitted a request for reconsideration of the NBME's decision denying his accommodation request.  (SF 84.)

52.     In support of his December 23, 2008 request for reconsideration, Jayatilaka submitted an affidavit from Dr. Dushenko in which Dr. Dushenko first diagnosed Jayatilaka with Cognitive Disorder Not Otherwise Specified

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

837110 v5/HN                         7.

NBME'S PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW
CV 09-02932 PA (CWx)

("CDNOS").   (SF 85, 122.)  Jayatilaka also resubmitted the same Evaluation from Drs. Dushenko and Levine (dated 05/21/08) that he submitted with his original request for accommodation.  (SF 86.)

53.    Dr. Dushenko's affidavit stated that the CDNOS diagnosis was a "direct consequence" of a "traumatic head injury" that Jayatilaka received in a 1995 assault.  (SF 137.)

54.    In response to Jayatilaka's December 23, 2008 request for reconsideration, and in accordance with its guidelines, the NBME provided Jayatilaka's file to neuropsychologist Dr. Nancy Nussbaum, who is knowledgeable in the area of brain injuries.  (SF 87.)

55.    Dr. Nussbaum reviewed all the materials submitted by Jayatilaka since July 14, 2008 and concluded, in a January 22, 2009 report, that Jayatilaka had failed to establish a functional impairment that would justify an accommodation under the ADA.  (SF 88.)  Dr. Nussbaum's report further stated that Jayatilaka's performance on the neuropsychological tests set forth in the Evaluation was not consistent with a traumatic brain injury.  (SF 89.)

56.    The NBME denied Jayatilaka's request for reconsideration on February 12, 2009.  (SF 90.)

## VI.   THE NEUROPSYCHOLOGICAL EVALUATION AND TESTING OF JAYATILAKA SET FORTH IN THE EVALUATION OF DRS. DUSHENKO AND LEVINE.

57.    In April/May 2008, Jayatilaka underwent a neuropsychological evaluation by Drs. Terrance Dushenko and Andrew Levine in Long Beach California, which included approximately 71 neuropsychological tests to determine if Jayatilaka had any cognitive impairments.  (SF 94.)

58.    Jayatilaka was referred for such testing by his treating neurologist to (among other things) assist Jayatilaka with meeting his educational/professional goals.  (Exhibit 1 at p.1.)

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

837110 v5/HN

8.

NBME'S PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW
CV 09-02932 PA (CWx)

**59.**   Dr. Levine personally administered the neuropsychological tests.  (SF 95.)

**60.**   As a part of their neuropsychological assessment, Drs. Dushenko and Levine also interviewed Jayatilaka.  (SF 96.)

**61.**   In connection with the neuropsychological assessment, Jayatilaka reported to Drs. Dushenko and Levine that he "does not feel he currently has significant cognitive problems that interfere with his day-to-day functioning."  (SF 97.)

**62.**   Drs. Dushenko and Levine stated in their Evaluation that Jayatilaka is a "highly functioning" individual.   (SF 98.)

**63.**   Dr. Levine testified in deposition that rehabilitation measures are "not necessarily designed for people [like Jayatilaka] who are still independently functioning and going to school and working and able to function independently in most areas – in all areas of daily life, which Dr. Jayatilaka is."  (SF 99.)

**64.**   Jayatilaka reported to Drs. Dushenko and Levine that he was "never that motivated till recently and hates tests."  (SF 100.)

**65.**   Dr. Levine testified that Jayatilaka's approach during neuropsychological testing was "flippant" and that at first, Jayatilaka did not take the testing "too seriously."  (SF 101.)

**66.**   During the neuropsychological assessment, Jayatilaka stated that he had "Been a heavy drinker for an extended period of time" and stated that he drank "6 Jack/Coke" during the weekends.  (SF 102.)

**67.**   Dr. Levine administered approximately 71 neuropsychological tests in the following nine functional areas: (1) General Intellectual Functioning; (2) Achievement Testing; (3) Attention/Working Memory; (4) Speech and Language; (5) Visuospatial Functioning; (6) Learning and Memory; (7) Executive Functioning; (8) Motor/Psychomotor Functioning; and (9) Personality and Emotional Functioning.  (SF 103.)  The results of such testing are set forth in the

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

837110 v5/HN                                    9.

NBME'S PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW
CV 09-02932 PA (CWx)

Evaluation.

**68.** Of these 71 neuropsychological tests, Jayatilaka scored in the average range on all but four tests. Specifically, Jayatilaka scored below the 16th percentile (i.e., below the "average" range) on only four tests: (1) the "Letters" subtest of the Delis-Kaplan battery ("DKEFS") administered on 04/02/08; (2) the Wisconsin Card Sorting Test ("WCST"); (3) the Grooved Pegboard test for the left hand; and (4) the Finger Tapping Test for both the left and right hand. (SF 104.)

**69.** The Evaluation reported that Jayatilaka's overall cognitive functioning is in the average range:

**(a)** Under General Intellectual Functioning, the Evaluation states that "[p]sychometric estimates of premorbid functioning, including the WTAR and subtests of the WAIS-III, indicate that Dr. Jayatilaka has likely been functioning within the Average range of intellectual ability for some time." (SF 105.)

**(b)** Under Achievement Testing, the Evaluation states that "[Jayatilaka] obtained very high scores on measures of reading, arithmetic, and mathematical reasoning, consistent with reported level of education. Speeded measures of reading, calculation, and writing were also within expectation. Conversely, his scores of measures of auditory and reading comprehension were below expectation. . . . Together, results of academic testing suggest relative difficulty with comprehension for both written and oral language. However, his scores still fell within the Average range when compared to individuals from his age group." (SF 106.)

**(c)** The Evaluation stated in part under Attention/Working Memory: "Formal tests of auditory attention found basic attention, or registration, to be average relative to peers. . . . Auditory working memory, assess by repeating a string of digits in reverse order, was above average (83%ile). . . . Dr. Jayatilaka's performance on a visual measure of registration and working memory was average. . . . In sum, Dr. Jayatilaka does not demonstrate deficits in attention or working

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

837110 v5/HN                                    10.

NBME'S PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW
CV 09-02932 PA (CWx)

memory." (SF 107.)

     **(d)**    The Evaluation stated in part under "Speech and Language Functioning": "expressive language deficits were noted in confrontation naming and phonemic fluency. Receptive language was notable for auditory and reading comprehension that is below expectation considering educational attainment, albeit average for his age." (SF 108.)

     **(e)**    The Evaluation stated that his "[v]isuospatial functioning was intact." (SF 109.)

     **(f)**    The Evaluation stated in part under "Learning and Memory": "Dr. Jayatilaka demonstrated High Average visual learning and memory. Auditory/Verbal learning was characterized by below average learning of prose and above average learning of word-lists, suggesting perhaps that Dr. Jayatilaka is prone to being overwhelmed when presented with too much information at once." (SF 110.)

     **(g)**    The Evaluation stated under "Executive Functioning": "Performances on measures of executive functioning were generally within expectation with one exception….Basic executive abilities were within the average range." (SF 111.)

     **(h)**    The Evaluation stated that although Jayatilaka's receptive language is "notable for auditory and reading comprehension that is below expectation considering educational attainment," it further noted that his performance in this area is "average for his age." (SF 108.)

     **(i)**    The Evaluation stated in part under "Motor/Psychomotor Functioning": "Basic psychomotor speed, as assessed with a line tracing task, was intact (84%ile), as was his performance on more complex visuomotor tasks (WAIS-III Processing Speed Index – 58%ile)." (SF 112.)

     **70.**    As a result of their evaluation (including their neuropsychological testing), Drs. Dushenko and Levine did not diagnose Jayatilaka with any cognitive

Cooley Godward
Kronish LLP
Attorneys At Law
Palo Alto

837110 v5/HN           11.         **NBME's Proposed Findings of Fact and
Conclusions of Law
CV 09-02932 PA (CWx)**

disability in the Evaluation under the standards set forth in the Diagnostic and Statistical Manual, Fourth Edition ("DSM-IV").  (SF 114.)

71.    The DSM-IV is used by physicians, psychiatrists and psychologists for the diagnosis of psychiatric disorders or mental disorders.  (SF 119.)

72.    Drs. Dushenko and Levine did not diagnose Jayatilaka with a Reading Disorder in the Evaluation.  (SF 126.)   The Evaluation found no significant discrepancy between Jayatilaka's "intellectual ability" and his "scores on achievement testing."  (SF 115.)   Jayatilaka has never been diagnosed with a Reading or Learning Disorder.  (SF 125.)

73.    Furthermore, despite the fact that Jayatilaka initially requested an accommodation on the basis of an alleged Mixed Receptive/Expressive Language Disorder (SF 67), Jayatilaka has never been diagnosed with such a disorder, including by Drs. Dushenko and Levine.  (SFs 132-133.)  Indeed, Drs. Dushenko and Levine concede that Jayatilaka does not meet the criteria for such a diagnosis. (SFs 134-135.)

74.    Despite Jayatilaka's average or above-average functioning, the Evaluation includes the following recommendation: "It is recommended that Dr. Jayatilaka be given provision, under the Americans with Disabilities Act, for extended time for completion of current and future written medical examinations." (SF 117.)

75.    In making this recommendation, Dr. Dushenko was not aware of the format of the USMLE Step 2 CK examination.  (SF 157.)

76.    The Evaluation does not suggest that Jayatilaka be given double the standard test time on the USMLE, although that is the accommodation Jayatilaka sought from the NBME, and the accommodation being sought in this action. (SF 116.)

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

837110 v5/HN                                    12.

NBME'S PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW
CV 09-02932 PA (CWx)

## VII. Dr. Dushenko's Belated Diagnosis of Cognitive Disorder Not Otherwise Specified.

77.     The DSM-IV defines Cognitive Disorder Not Other Specified ("CDNOS") as follows:  "This category is for disorders that are characterized by cognitive dysfunction presumed to be due to the direct physiological effect of a general medical condition that do not meet criteria for any of the specific deliriums, dementias, or amnestic disorders listed in this section . . . ."  (SF 136.)

78.     Drs. Dushenko and Levine did not diagnose Jayatilaka with CDNOS in the Evaluation.  (SF 140.)

79.     The diagnosis of CDNOS was first set forth in an affidavit from Dr. Dushenko dated December 19, 2008 (SF 137) that was submitted by Jayatilaka to the NBME after his initial accommodation request was denied because he had not identified any mental impairment diagnosis under the DSM-IV.  (Exhibit 36.)

80.     Jayatilaka's other treating psychologist, Dr. Levine, does not agree with Dr. Dushenko's diagnosis of CDNOS.  Dr. Levine testified that he would not diagnose Jayatilaka with CDNOS:  "Cognitive disorder NOS is kind of a wastebasket term for somebody who doesn't meet diagnostic criteria for, say, amnestic disorder or dementia or delirium or any other disorders, but that they have some form of impairment that limits them in some substantial way.  So one could argue that these deficits are limiting Dr. Jayatilaka in a substantial way.  At the time of my evaluation, that wasn't my impression."  (SF 141.)

81.     Indeed, Dr. Levine testified that he does not believe Jayatilaka falls into any category described in the DSM-IV.  (SF 146.)

82.     Dr. Levine further testified that he does not believe that Jayatilaka's performance on the neuropsychological testing reflects a "traumatic head injury":

Cooley Godward
Kronish LLP
Attorneys At Law
Palo Alto

837110 v5/HN

13.

NBME's Proposed Findings of Fact and
Conclusions of Law
CV 09-02932 PA (CWx)

1   It would be hard for me to make that conclusion because of the site of
2   the injury. If there were any underlying damage to the brain, it would
    not necessarily affect the abilities which were below expectation on
3   the achievement testing. It's conceivable. Anything's possible. One
    could make the argument, but that not a conclusion I believe that I
4   would have made. . . . No, I wouldn't make that conclusion sitting here
    today. (SF 142.)

5   **83.**   Jayatilaka did not experience a loss of consciousness, seizure or other

6   neurological deficit after the 1995 incident that resulted in a depressed skull

7   fracture.   (SF 138.)   Additionally, every MRI taken after Jayatilaka's 1995 injury

8   were "negative" for underlying brain injury. (SF 139.)

9   **84.**   Dr. Dushenko bases his CDNOS diagnosis on three of the

10  neuropsychological tests administered by Dr. Levine on which Jayatilaka scored

11  below the average range:  the Boston Naming Test ("BNT"), the Wisconsin Card

12  Sorting Test ("WCST"), and one administration of the DKEFS Letter subtest.  But:

13  **(a)**   Dr. Levine conceded that the BNT may have been incorrectly

14  administered since he did not provide the stimulus cues required to be given to

15  Jayatilaka. (SF 148.)

16  **(b)**   Dr. Levine acknowledged that there could be a "difference in

17  performance on the BNT for individuals who speak English as a second language."

18  (SF 149.)

19  **(c)**   Dr. Levine administered an abbreviated version of the WCST

20  (SF 151), and acknowledged that Jayatilaka would likely have scored higher if he

21  had been given the standard version of that test.  (SFs 152-153.)

22  **(d)**   The DKEFS Letter subtest was administered twice and on the

23  second administration, Jayatilaka scored in the average range.  (SF 145.)

24  **VIII.   OPINIONS OF NBME EXPERT DR. GEORGE LITCHFORD.**

25  **85.**   At trial, the NBME presented expert testimony from Dr. George

26  Litchford, an expert in learning disabilities.

27  **86.**   The NBME consulted with Dr. Litchford in August 2008 when it

28  initially   reviewed,   considered   and   responded   to   Jayatilaka's   request   for

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

837110 v5/HN                    14.                    NBME'S PROPOSED FINDINGS OF FACT AND
                                                       CONCLUSIONS OF LAW
                                                       CV 09-02932 PA (CWx)

accommodation.  (Exhibit 44.)

**87.**  Dr. Litchford's opinion, which he expressed to the NBME in August 2008 and again at trial, is that Jayatilaka has not presented evidence of a mental impairment that substantially limits his cognitive functions and therefore justifies the double-time accommodation he seeks on the USMLE:

**(a)**  When determining whether an individual has a cognitive impairment, Dr. Litchford assesses the individual's performance against the average person in the general population.  A neuropsychological test score falls within the average range if it falls between the 15th and 85th percentile, which is within one standard deviation from the mean.[1]

**(b)**  Jayatilaka performed in the average range on the Weschler Adult Intelligence Scale ("WAIS-III") full-scale IQ test.  He also performed in the average to superior range on the Woodcock Johnson ("WJ-III") Achievement tests of functioning including measures of reading, mathematics and writing ability. Accordingly, there is no discrepancy between Jayatilaka's cognitive abilities and his achievement (which is required for a diagnosis of a Reading Disorder or a Mixed Receptive/Expressive Disorder under the DSM-IV).  Indeed, Jayatilaka's own evaluators did not diagnose either of these disorders in their Evaluation or deposition testimony.  His high scores on tests of academic functioning also demonstrate that his reading, writing and math abilities are unimpaired as compared to the average person in the population.  Moreover, the other neuropsychological test results show that Jayatilaka's other measures of cognitive functioning are within the average range.

**(c)**  Jayatilaka's evaluators noted difficulties with two tests of language (DKEFS and BNT), however, those scores do not reveal a cognitive impairment.  While Jayatilaka experienced difficulty with verbal fluency on the

---

[1] This is the same standard applied by Dr. Nancy Nussbaum, the NBME's expert in neuropsychology and traumatic brain injuries.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

837110 v5/HN                                    15.

NBME'S PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW
CV 09-02932 PA (CWx)

DKEFS Letter subtest (2nd percentile), he did not have problems with the Category Fluency subtest, which was in the average range.  He also performed in the average range on the second administration of the DKEFS Letter subtest.  His score on the BNT was low (16th percentile), however, it still was in the average range.

  **(d)** To the extent the BNT and DKEFS Letter subtest reveal weaknesses with verbal fluency, those weaknesses are not resulting in any impaired academic functioning  because other tests of reading and language fluency show at least average performance – WJ-III test of Reading Fluency (78th percentile); WAIS Processing Speed Index (58th percentile); and the WJ-III test of Writing Fluency (94th percentile).  (Exhibits 44 and 47.)

  **88.** Dr. Litchford also noted flaws with respect to some of the neuropsychological testing on which Dr. Dushenko relied in forming his diagnoses:

  **(a)** Jayatilaka's performance on the BNT test could have been affected by English as a second language issues.  Indeed, English as a second language can affect performance on any verbal test, especially tests of verbal fluency.  Moreover, the BNT was not properly administered, and proper administration would likely have resulted in a higher score.  (Exhibits 44 and 47.)

  **(b)** Dr. Levine did not administer any tests of malingering, motivation and/or effort (SF 156), and it appears that factors related to effort and/or motivation or anxiety could have influenced Jayatilaka's neuropsychological test performance.

  **(c)** Dr. Levine did not give the standard administration of the WAIS-III verbal and performance subtests – he did not administer the verbal comprehension subtest as part of the verbal scale and did not administer the Picture Arrangement Subtest as part of the performance scale.  (SF 150.)

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

837110 v5/HN

16.

NBME'S PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW
CV 09-02932 PA (CWx)

## IX.   OPINIONS OF NBME EXPERT DR. NANCY NUSSBAUM.

**89.**   At trial, the NBME presented expert testimony from Dr. Nancy Nussbaum, an expert in neuropsychology.

**90.**   The NBME consulted with Dr. Nussbaum in January 2009 when it initially reviewed, considered and responded to Jayatilaka's request for reconsideration of his request for accommodation.  (Exhibit 45.)

**91.**   Dr. Nussbaum's opinion, which she expressed to the NBME in January 2009 and again at trial, is that Jayatilaka does not have a mental impairment that substantially limits his cognitive functioning and that Jayatilaka's neuropsychological test results are not consistent with a traumatic brain injury. Specifically, he scored in the average range on various measures that would typically be affected by a traumatic brain injury:

**(a)**   Jayatilaka performed well on the WAIS-III Working Memory Index.

**(b)**   Jayatilaka performed in the average range on the WAIS-III Processing Speed Index, with no impairment noted on Digit Symbol Coding, which is typically found to be sensitive to organic brain dysfunction, especially traumatic brain injury.  (SF 144.)

**(c)**   Jayatilaka's scores on tests of attention were normal.

**(d)**   Jayatilaka's reaction time on the CPT-II was good.

**(e)**   Jayatilaka had intact visuospatial functioning.  (Exhibit 45.)

**92.**   Jayatilaka had low scores on the BNT and DKEFS Letter subtest, however, low scores on such tests are mostly associated with injury to the left brain hemisphere and Jayatilaka's 1995 injury was to the right side of his skull.  (SF 143.)

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

837110 v5/HN

17.

NBME'S PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW
CV 09-02932 PA (CWx)

93.     The lack of evidence supporting a traumatic brain injury refutes Dr. Dushenko's diagnosis of CDNOS, because CDNOS requires cognitive dysfunction due to the direct physiological effect of a general medical condition (such as an injury).  (SF 136.)

94.     A CDNOS diagnosis also requires some evidence of cognitive impairment.  However, Dr. Nussbaum testified that Jayatilaka's neuropsychological test scores in the Evaluation reflect intact cognitive functioning, and based on all such neuropsychological test scores, Dr. Nussbaum concluded that Jayatilaka's reading performance was unaffected by the 1995 assault.

95.     Additionally, Dr. Nussbaum opined that to the extent Dr. Jayatilaka could be diagnosed with CDNOS, the evidence does not support a finding that he has any functional limitation as a result of the alleged impairment.  Given that the USMLE Step 2 CK is a written examination, the most relevant cognitive functions to the USMLE are reading comprehension, reading fluency, and processing speed, and Jayatilaka performed in the average range on all neuropsychological tests in those areas.  Specifically, Jayatilaka scored in the 52nd percentile in the Letter-Word identification subtest; 78th percentile on Reading Fluency; and 42nd percentile in Reading Comprehension.  These scores show average academic functioning and no functional impairment as compared to the average person in the general population.  (Exhibit 45.)

X.     OTHER PSYCHIATRIC FACTS RELATED TO JAYATILAKA.

96.     There is evidence suggesting that factors other than an alleged impairment are affecting Jayatilaka's ability to pass the USMLE Step 2 CK.

97.     In addition to Drs. Dushenko and Levine, Jayatilaka has consulted with other psychologists and psychiatrists regarding his efforts to pass the USMLE Step 2 CK.  (SF 159.)

98.     Jayatilaka met with Dr. Terry L. Higgins, PhD for outpatient psychotherapy on at least eight (8) occasions in and around May 2006.  (SF 160.)

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

837110 v5/HN                                          18.

NBME'S PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW
CV 09-02932 PA (CWx)

Dr. Higgins' notes from her sessions with Jayatilaka include the following:

**(a)** "Cl[ient] seemingly 'wants' to pass exam but also sabotages success – Does not possess 'driven mentality' necessary for achieving MD status."

**(b)** "He is conflicted about his desire to become a MD but simultaneously says he's 'got to do it.'"

**(c)** "Cl[ient] did relate that he is open to either MD [and] passing exam . . . or 'even going to business school' – again, ambivalence abounds. Poor insight; poor judgment; cancels exam; travels instead; doesn't do enough practice exams."

**(d)** "Discussed Cl[ient's] thoughts about medical field and motivation necessary to achieve license. Client expressed lack of specificity in strategy to study and pass exam." (SFs 161-164.)

**99.** Jayatilaka met with Dr. James Pratty in or around December 2006. (SF 165.)

**100.** Dr. Pratty administered the Millon Clinical Multiaxial Inventory Third edition ("MCMI-III") on December 7, 2006. (SF 166.) The MCMI-III results state that Jayatilaka's profile is consistent with "Self-Defeating Personality Features" and "Generalized Anxiety Disorder" (Exhibit 18 at p.2), and that he may exhibit a "tendency to undermine constructive opportunities" by "withdraw[ing] protectively into a peripheral social role and then sabotag[ing] constructive opportunities." (Exhibit 18 at p.6.)

**101.** Jayatilaka also saw Dr. Jeckel in or around February 2007 for outpatient psychotherapy which lasted until August 2007. (SF 167.) Jayatilaka told Dr. Jeckel that he was "ingrained" to be a doctor. (Exhibit 40 at p.2.)

**102.** Jayatilaka also saw Dr. Sipich in or around April 2007 for outpatient psychotherapy. (SF 168.) Dr. Sipich's notes reflect that Jayatilaka was receiving treatment for an "[a]nxiety reaction" to the USMLE, and that the psychotherapy was focused on anxiety management techniques. (Exhibit 39 at p.1.) Dr. Sipich's

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

837110 v5/HN

19.

NBME'S PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW
CV 09-02932 PA (CWx)

notes also reflect that on a Step 2 CK practice examination, Jayatilaka received a passing score.  (Exhibit 39 at SD 0086, 0088.)

**103.**  Jayatilaka's outpatient psychotherapy in 2007 included lessons on stress reduction and relaxation techniques that he could use when taking the USMLE Step 2 CK exam.  (SF 61.)  Shortly after, Jayatilaka took and nearly passed the August 2007 administration of the USMLE Step 2 CK.  (SF 64.)

**XI.   FACTS REGARDING THE REQUESTED ACCOMMODATION.**

**104.**  When Dr. Dushenko made his recommendation for extended time on the USMLE, he was not aware of the format of the USMLE Step 2 CK examination.  (SF 157.)

**105.**  Dr. Dushenko's recommendation for extended time is based on a speed of processing deficit related to auditory processing.  (SF 158.)

**106.**  The USMLE Step 2 CK has no auditory content.  The test is a written examination.  (SF 48.)

**107.**  Dr. Dushenko has not identified any problem with Jayatilaka processing written information.  (SF 158.)

## CONCLUSIONS OF LAW

**I.   PLAINTIFF HAS NOT MET HIS BURDEN OF ESTABLISHING A VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (THE "ADA).**

**1.**  Under the ADA, the NBME has a legal duty to provide access to the USMLE to examinees with documented disabilities pursuant to Title III of the ADA.  42 U.S.C. § 12189.

**2.**  It is Jayatilaka's burden to prove that he is disabled as defined under the ADA.  *Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1063 (9th Cir. 2005).

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

837110 v5/HN                    20.                    NBME'S PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW
CV 09-02932 PA (CWx)

**3.**     In order to prove he has a disability within the meaning of the ADA, Jayatilaka must prove both:

**(a)**     He has a physical or mental impairment.  42 U.S.C. § 12101; 28 CFR pt. 36 (1996); *see also Love v. Law School Admission Council, Inc.*, 513 F. Supp. 2d 206, 223   (E.D. Penn. 2007); *Pazery v. New York State Bd. of Law Exam'rs*, 849 F. Supp. 284 (S.D.N.Y. 1994); *Ware v. Wyoming Bd. of Law Exam'rs*, 973 F. Supp. 1339, 1357 (D. Wyo. 1997), *aff'd* 161 F.3d 19 (10th Cir. 1998); and

**(b)**     The mental or physical impairment substantially limits him in a major life activity as compared to most people in the general population.  42 U.S.C. § 12101; 28 CFR pt. 36 (1996); *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 627 (6th Cir. 2000).

**4.**     When determining whether Jayatilaka is substantially limited in a major life activity, his performance must be compared against most people in the general population.  42 U.S.C. § 12101; 28 CFR pt. 36 (1996); *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 627 (6th Cir. 2000).

**5.**     Jayatilaka has **not** met his burden of establishing that he suffers from any physical or mental impairment:

**(a)**     Jayatilaka's treating psychologists initially did not diagnose any mental impairment in their Evaluation.  Moreover, both of Jayatilaka's treating psychologists, and the NBME's expert, all agree that Jayatilaka does not meet the diagnostic criteria set forth in the DSM-IV for a diagnosis of a Reading Disorder or a Mixed Receptive/Expressive Language Disorder (which were the two conditions that Jayatilaka claimed in his initial request for test accommodations from the NBME).

**(b)**     The results of the neuropsychological tests administered by Jayatilaka's treating psychologists show no mental impairment in that Jayatilaka scored in the average or above average range in virtually every test, including the

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

837110 v5/HN

21.

**NBME'S PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW
CV 09-02932 PA (CWx)**

IQ tests and the WJ-III Achievement tests which measure reading, mathematics, and writing ability.  Moreover, these test results show that Jayatilaka's performance on achievement tests is consistent with his overall IQ; his receptive language abilities are consistent with his nonverbal IQ; and his overall cognitive functioning is in the average range.  Finally, the Evaluation written by Drs. Dushenko and Levine contain numerous statements that Jayatilaka is an individual with average functioning in virtually all cognitive areas.

(c)     While Dr. Dushenko ultimately diagnosed Jayatilaka with CDNOS – a diagnosis rejected by Jayatilaka's other treating psychologist – the record does not support a finding of such an impairment.  This impairment requires cognitive dysfunction which is caused by a general medical condition.  However:

(i)     Jayatilaka scored in the average or above-average range on almost all of the neuropsychological tests thereby showing a lack of cognitive dysfunction.  To the extent Jayatilaka had a few low neuropsychological test scores, there is no evidence that the 1995 incident caused any cognitive deficits.  In fact, Jayatilaka's educational history demonstrates that he performed in the average range academically both before and after this incident.

(ii)     The available medical records, including MRI scans, do not indicate that Jayatilaka suffered any brain injury.

(iii)     As set forth in detail in Dr. Nussbaum's testimony, Jayatilaka's neuropsychological test scores do not support or suggest traumatic brain injury.  Jayatilaka scored in the average range on tests that would be sensitive to traumatic brain injury, such as the WAIS-III Digit Symbol Coding test, and his neuropsychological test scores showed that his reading performance was unaffected by the 1995 incident.  In fact, in the cognitive functions most relevant to the USMLE (reading comprehension, reading fluency, and processing speed), Jayatilaka performed in the average range on all neuropsychological tests in those areas.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

837110 v5/HN                                      22.

NBME'S PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW
CV 09-02932 PA (CWx)

1       **(iv)**   Dr. Dushenko points to Jayatilaka's BNT and DKEFS

2 scores as evidence of brain injury; however, deficits on these tests are mostly

3 associated with injury to the left brain hemisphere and Jayatilaka's 1995 injury was

4 to the right side of his skull.

5       **(v)**   Jayatilaka's performance on the BNT, on which Dr.

6 Dushenko relies, is suspect because the test may have been incorrectly

7 administered, and could have been affected by the fact that Jayatilaka speaks

8 English as a second language.  Additionally, Jayatilaka's score on this test, while

9 low, was still in the average range.

10       **(vi)**   Jayatilaka's score on the Letter subtest of the DKEFS also

11 does not support the claimed impairment.   Although the score was low, this test

12 was administered twice, and on the second occasion, Jayatilaka scored in the

13 average range.  He also scored in the average range on other fluency subtests of the

14 DKEFS, which are more difficult than the Letter subtest.  Moreover, an individual

15 with poor verbal fluency would be expected to have problems with reading but

16 Jayatilaka scored well on measures of reading.

17       **(vii)** Jayatilaka's experts point to his performance on the

18 WCST as supposed proof of an executive functioning impairment; however, they

19 administered an abbreviated version of the test, and the standard longer test would

20 likely have yielded a higher score.

21     **6.**   Jayatilaka also has **not** met his burden that any alleged impairment

22 substantially limits one or more major life activities.

23       **(a)**   Jayatilaka told his treating psychologists before any

24 neuropsychological testing that he "does not feel he currently has significant

25 cognitive problems that interfere with his day-to-day functioning."  Drs. Dushenko

26 and Levine also characterized Jayatilaka as a "highly functioning" individual in

27 their Evaluation.

28       **(b)**   Jayatilaka's neuropsychological test scores do not reveal any

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

837110 v5/HN

23.

NBME'S PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW
CV 09-02932 PA (CWx)

limitations on his cognitive functioning.  Jayatilaka was administered the WJ-III battery of achievement tests and his performance in all areas of academic performance were within the average to superior range, including measures of reading, mathematics and writing ability (including tests of reading fluency and writing fluency).  Dr. Nussbaum testified that Jayatilaka's reading comprehension, reading fluency, and processing speed all were evaluated by the neuropsychological tests and all showed average academic functioning.

**(c)**    Jayatilaka was able to successfully graduate medical school and pass the USMLE Step 1 after the 1995 incident without seeking or obtaining any accommodations whatsoever.  In addition, he nearly passed the USMLE Step 2 CK in August 2007 without seeking or obtaining any accommodations at all.

**(d)**    There is significant evidence suggesting that non-disability related factors (such as stress, lack of focus, motivation, parental pressure, and the fact that his medical school classes were conducted in Spanish, a language Jayatilaka does not speak, read or understand) could be affecting Jayatilaka's ability to pass the Step 2 CK.  Some of these same factors could have caused Jayatilaka to perform below his capabilities on the neuropsychological tests administered to him.

**7.**    Jayatilaka also must establish that the NBME failed to offer the USMLE "in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals."  42 U.S.C. § 12189; *see also Memmer v. Marin County Courts*, 169 F.3d 630, 634 (9th Cir. 1999) (requiring "accommodations be provided only 'when the modifications are necessary to avoid discrimination on the basis of disability'"); *Doe v. Nat'l Bd. of Med. Exam'rs*, 199 F.3d 146 (3d Cir. 1999); 28 C.F.R. 36.309(b)(i)

**8.**    Even assuming *arguendo* Jayatilaka could establish the existence of a covered disability, he also has not established that the requested accommodation is necessary for him to access the USMLE.  Dr. Dushenko's recommendation for extended time is based on an alleged speed of processing deficit related to auditory

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

837110 v5/HN                    24.

NBME'S PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW
CV 09-02932 PA (CWx)

1  processing.  (SF 158.)  However, the USMLE Step 2 CK is administered solely in
2  writing and the Evaluation (and all of the other evidence) show that Jayatilaka's
3  ability to process information presented to him visually is in the average range.
4  Indeed, Dr. Dushenko has not identified any problem with Jayatilaka processing
5  written information.  (SF 158.)  Thus, he does not need double the standard testing
6  time to access this written examination.

7      **9.**  Because Jayatilaka has not established a violation of the ADA, he is
8  not entitled to any injunctive relief.

9  **II.   Jayatilaka Is Not Entitled To An Award Of Attorneys' Fees.**

10     **10.**  Because Plaintiff has failed to establish a violation of the ADA, his
11  claim for attorneys' fees is denied.

12     **11.**  As the prevailing party, the NBME may seek its attorneys' fees and
13  costs by way of noticed motion.

14  Dated:  March 16, 2010                COOLEY GODWARD KRONISH LLP
                                          GREGORY C. TENHOFF (154553)
15                                        WENDY J. BRENNER (198608)

16

17

18                                        _____/S/_____
                                          Gregory C. Tenhoff (154553)
19                                        Attorneys for Defendant
                                          NATIONAL BOARD OF MEDICAL
20                                        EXAMINERS

21

22

23

24

25

26

27

28

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

837110 v5/HN                    25.

NBME'S PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW
CV 09-02932 PA (CWx)