COOLEY GODWARD KRONISH LLP
GREGORY C. TENHOFF (154553)
(tenhoffgc@cooley.com)
WENDY J. BRENNER (198608)
(brennerwj@cooley.com)
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155
Telephone: (650) 843-5000
Facsimile: (650) 857-0663

Attorneys for Defendant
NATIONAL BOARD OF MEDICAL EXAMINERS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT

WESTERN DIVISION

| | |
|---|---|
| DRUVI JAYATILAKA,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL BOARD OF MEDICAL EXAMINERS,<br><br>Defendant. | Case No. CV 09-02932 PA (CWx)<br><br>**DECLARATION OF NANCY NUSSBAUM, PH.D.**<br><br>**(DIRECT TESTIMONY OFFERED BY DEFENDANT NBME FOR 4/6/10 BENCH TRIAL)** |

I, Nancy Nussbaum, hereby declare:

1. I have personal knowledge of the facts set forth herein and could testify competently thereto.

2. **Educational Qualifications.** I obtained a Bachelor's Degree in Psychology from Louisiana State University in 1979. I then obtained a Ph.D. with a focus on Developmental Neuropsychology in 1986 from the University of Texas at Austin. My postgraduate work included a one year Post-Doctoral Internship in Child Neuropsychology from 1986 to 1987 at the Austin Neurological Clinic in Austin, Texas.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

839074 v2/HN

1.

DECLARATION OF NANCY NUSSBAUM
CV 09-02932 PA (CWx)

3. **Licensure and Certifications.** I am a Licensed Psychologist. I am also Board Certified by the American Board of Professional Psychology in the area of Clinical Neuropsychology. I am also a fellow of the National Academy of Neuropsychology.

4. **Professional Qualifications.** I have had a private practice in Clinical Neuropsychology since 1987. That practice has focused on the examination and treatment of individuals with a variety of neuropsychological issues, including learning disabilities, development disorders, strokes, and brain injuries. I have also served as a Lecturer at the University of Texas at Austin in the Educational Psychology Department since 2007. A current curriculum vitae further detailing my educational background and qualifications is before the Court as Exhibit 49.

5. **Experience with Learning Disabilities and Cognitive Impairments.** I have more than twenty years of clinical experience diagnosing and treating patients, ranging from young children to adults, with a vast array of neuropsychological issues, including learning disabilities, development disorders, strokes, and brain injuries. The focus of my work with my patients is to understand their brain dysfunction, how it impacts their daily life, and how to improve their functioning in light of their impairment. As part of my practice, I evaluate people for purposes of assessing whether they are eligible for ADA accommodations, which includes diagnosing patients with learning disabilities and other cognitive impairments. This work has included extensive learning disability assessment and psychological assessment of individuals.

6. **The Americans with Disabilities Act.** Approximately 5-10% percent of my professional time is devoted to advising various testing organizations (including the National Board of Medical Examiners and the Texas Board of Law Examiners) concerning accommodation requests. In this capacity, I have reviewed more than 75 case files, and have been doing so for approximately 10-15 years. Because of this work, I attend regular continuing education programs and review

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

839074 v2/HN

2.

DECLARATION OF NANCY NUSSBAUM
CV 09-02932 PA (CWx)

publications related to the requirements of the Americans with Disabilities Act ("ADA"), and stay current on changes to the statutory framework and legal requirements. When advising testing entities, I consider the nature of the individual's impairment, the functional limitations imposed by the impairment, and what reasonable modifications would allow the individual to access the test material so as to overcome the effects of their functional limitations. I regularly make recommendations to various test entities to grant accommodations to individuals with a wide variety of cognitive impairments.

7. **Average Person Standard.** When forming my opinions concerning whether an individual is impaired, I compare the individual's functional capabilities against the average person in the general population. It is my understanding that this standard is required under the ADA. For purposes of neuropsychological tests, the term "average" is defined as a score that falls within one standard deviation of the mean. Most neuropsychological tests have a mean of 100, and a standard deviation of 15. This means that a standard score is within the average range if it falls between 85 and 115. This translates into a percentile range of 16 to 84, meaning that any score between the 16th and 84th percentiles, inclusive, is within the average range.

8. **Materials and Information Relied Upon in Forming My Opinions.** In formulating the opinions set forth in this Declaration, I have reviewed and relied upon the following materials:

(a) The materials submitted by Mr. Jayatilaka to the NBME on or around July 17, 2008 and December 19, 2008 in support of his requests for accommodation on the USMLE, which included the following:

(i) Mr. Jayatilaka's completed application form for a testing accommodation submitted to the NBME;

(ii) A personal statement written by Mr. Jayatilaka;

(iii) A Neuropsychological Evaluation dated May 21, 2008 by Drs. Terrance Dushenko and Andrew Levine (the "Evaluation");

(iv) A December 17, 1996 letter from Dr. William Gorbunoff;

(v) Reports dated August 2, 1996 and August 4, 1996 from Dr. David Morgan;

(vi) A June 12, 2006 letter from Allan Aksamit; and

(vii) A December 19, 2008 affidavit from Dr. Dushenko.

(b) The raw test data from the neuropsychological tests administered by Drs. Dushenko and Levine;

(c) The deposition transcript and the exhibits thereto of Dr. Levine's deposition on October 7, 2009;

(d) The deposition transcript and the exhibits thereto of Dr. Dushenko's deposition on October 8, 2009; and

(e) The deposition transcript and the exhibits thereto of Dr. Jayatilaka's deposition on October 8 and 9, 2009.

I also relied upon my own personal knowledge of cognitive impairments based upon my twenty years of clinical, teaching, assessment, and supervisory experience in the field of neuropsychology.

9. **Overall Opinion.** I have not been requested to clinically diagnose or medically examine Mr. Jayatilaka, nor have I done so. Instead, I have reviewed all of the materials specified above to determine if Mr. Jayatilaka has shown a mental impairment that substantially limits his cognitive functioning and therefore justifies the accommodation he seeks on the USMLE (which I understand to be double the standard testing time). It is my opinion that Mr. Jayatilaka does **not** have a mental impairment that substantially limits his cognitive functioning.

10. **Cognitive Disorder Not Otherwise Specified ("CDNOS").** I have reviewed Dr. Dushenko's December 19, 2008 affidavit diagnosing Mr. Jayatilaka with CDNOS, which I understand serves as the basis for the accommodations Mr.

Cooley Godward
Kronish LLP
Attorneys At Law
Palo Alto

839074 v2/HN

4.

DECLARATION OF NANCY NUSSBAUM
CV 09-02932 PA (CWx)

Jayatilaka has requested from the NBME. I do not believe that the information I have reviewed supports a CDNOS diagnosis.

11. **Definition of CDNOS.** The Diagnostic and Statistical Manual, Fourth Edition ("DSM-IV") is used by physicians, psychiatrists and psychologists for the diagnosis of psychiatric disorders and mental disorders. The DSM-IV defines CDNOS as follows: "This category is for disorders that are characterized by cognitive dysfunction presumed to be due to the direct physiological effect of a general medical condition that do not meet criteria for any of the specific deliriums, dementias, or amnestic disorders listed in this section . . . ." More simply, this condition requires cognitive dysfunction which is caused by a general medical condition.

12. **Traumatic Brain Injury.** Dr. Dushenko contends that Mr. Jayatilaka suffered a brain trauma as a result of his 1995 assault, and that this brain injury provides the "medical condition" allegedly causing Mr. Jayatilaka's claimed cognitive impairment. As reported in the Evaluation of Drs. Dushenko and Levine, however, Mr. Jayatilaka's neuropsychological test results are not consistent with a traumatic brain injury ("TBI"). Specifically:

   (a) Mr. Jayatilaka performed well on the Weschler Adult Intelligence Scale ("WAIS-III") Working Memory Index (70th percentile) and Processing Speed Index (58th percentile), two scores where a TBI would typically result in low scores;

   (b) Mr. Jayatilaka performed well on the WAIS-III Digit Symbol Coding test (50th percentile), which is typically found to be sensitive to organic brain dysfunction, especially TBI;

   (c) Mr. Jayatilaka's attention was within normal limits (his scores ranged from the 25th percentile to the 91st percentile);

   (d) Mr. Jayatilaka's reaction time was good (his score on the CPT-II Hit Reaction Time test was at the 77th percentile);

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

839074 v2/HN                             5.                    DECLARATION OF NANCY NUSSBAUM
                                                                    CV 09-02932 PA (CWx)

  **(e)** His visual-spatial functioning was intact on the WAIS-IV (his scores ranged from the 63rd to 84th percentile);

  **(f)** I understand that no MRI of Mr. Jayatilaka's brain after the 1995 assault has ever showed any evidence of a brain injury; and

  **(g)** Mr. Jayatilaka's neuropsychological test measures of premorbid functioning as stated in the Evaluation do not show any significant differences between his estimated intellectual capability before and after the assault.

Based on all of this information, I do not believe that Mr. Jayatilaka suffered a substantiated TBI in the 1995 assault.

  **13.** **Cognitive Dysfunction.** A CDNOS diagnosis also requires some evidence of cognitive impairment, however, Mr. Jayatilaka's neuropsychological test scores in the Evaluation reflect intact cognitive functioning. The tests listed below are good measures and examples of cognitive functioning, and on all such neuropsychological tests, Mr. Jayatilaka scored in the average range:

  **(a)** WAIS-III Working Memory Index was at the 81st percentile.

  **(b)** WMS-III Working Memory Index was at the 70th percentile.

  **(c)** WAIS-III Digit Symbol Performance was at the 50th percentile

  **(d)** CPT-II Hit RT Standard Error was at the 87th percentile.

  **(e)** CPT-II Variability was at the 65th percentile.

Further, Mr. Jayatilaka scored in the 52nd percentile on the WJ-III Letter-Word Identification (Reading) Test. This is a very stable measure of reading ability, meaning that it reflects reading abilities prior to his assault. This score suggests that Mr. Jayatilaka has always read in the average range. This score is also consistent with his Reading Comprehension score (42nd percentile), which suggests that his current reading abilities are consistent with his pre-assault reading abilities. This refutes any notion that Mr. Jayatilaka's reading performance was affected by the 1995 assault.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

839074 v2/HN    6.    DECLARATION OF NANCY NUSSBAUM
CV 09-02932 PA (CWx)

14. **Functional Limitation.** Even if Mr. Jayatilaka has CDNOS (which I reject), that condition would have to result in cognitive impairment to justify an accommodation on the USMLE, and I cannot find any evidence of a cognitive impairment as compared to the average person in the general population. It is my understanding that the USMLE Step 2 CK examination is a written examination – that is, all information is delivered to the examinee in written form. Therefore, the most relevant cognitive functions to the USMLE are reading comprehension, reading fluency, and processing speed, and Mr. Jayatilaka performed in the average range on all neuropsychological tests in those areas, as stated in the Evaluation: Letter-Word Identification was at the 52nd percentile; Reading Fluency was at the 78th percentile; and Reading Comprehension was at the 42nd percentile. These scores show average academic functioning and no functional impairment as compared to the average person in the general population.

15. **Scores Relied Upon By Mr. Jayatilaka's Experts.** In forming his opinions about Mr. Jayatilaka's alleged impairments, Dr. Dushenko appears to rely upon Mr. Jayatilaka's performance on the Boston Naming Test (BNT), the Wisconsin Cord Sorting Test ("WCST"), and the Letter Subtest of the Delis-Kaplan Executive Functioning Battery ("DKEFS"). It is my opinion that Mr. Jayatilaka's performance on these tests does not reflect a cognitive impairment.

(a) **DKEFS and BNT.** It is true that Mr. Jayatilaka's test scores on the BNT and the Letter Subtest of the DKEFS were low. Mr. Jayatilaka was at the 2nd percentile on one administration of the DKEFS Letter Subtest and the 18th percentile on the BNT. However, improvement to the 16th percentile was noted on the second administration of the DKEFS Letter Subtest. Furthermore, Mr. Jayatilaka's high scores on other subtests of the DKEFS – namely, 75th percentile on the Categories Subtest and 91st percentile on the Switching Subtest – are inconsistent with a functional impairment. It is highly unlikely that the type of brain injury Mr. Jayatilaka purportedly suffered would have caused an isolated

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

839074 v2/HN

7.

DECLARATION OF NANCY NUSSBAUM
CV 09-02932 PA (CWx)

deficit in word retrieval. This type of deficit would be more apparent with a focal injury substantiated by brain imaging, such as findings from a CT scan or MRI. Accordingly, I do not believe that the low test scores on the BNT and DKEFS Letter Subtest are related to his 1995 assault.

  (b)  **WCST.** I also do not believe that Dr. Jayatilaka's score on the WCST reflects a functional impairment. The score is low, however, to the extent it reflects limited mental flexibility, that limitation is not affecting his performance on tests of reading and language, as reflected by his average Achievement Tests scores set forth above in Section 14. Additionally, according to Drs. Levine and Dushenko, once Mr. Jayatilaka "figure[d] out the purpose of the test," he "quickly developed a successful strategy." (Evaluation at p. 8)

  16.  **Symptom Validity & Effort.** There are indications in the Evaluation by Drs. Dushenko and Levine that motivation could have been a factor in Mr. Jayatilaka's performance on the neuropsychological examinations. The report notes, for example, that on certain tests, Mr. Jayatilaka may have put forth varying degrees of effort (Evaluation at page 7). This is consistent with his test scores, which show that he performed better on more difficult tests. For example, on the DKEFS tests of Verbal Fluency, he scored in the 2nd percentile on the Letters Subtest, the easiest test; in the 50th percentile on the Categories Subtest, a more difficult subtest; and in the 91st percentile on the Switching Subtest, which is the subtest that most examinees find the most difficult. These scores are consistent with someone who is exerting more effort on hard tests, and reduced effort on easier tests, and are also inconsistent with a functional impairment. It is common with this type of evaluation for tests of effort and symptom validity (such as the word memory test or test of memory and malingering) to be given, yet the evaluation performed by Drs. Dushenko and Levine did not include such testing, a surprising omission given that they note potential issues with effort. Without such

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

839074 v2/HN

8.

DECLARATION OF NANCY NUSSBAUM
CV 09-02932 PA (CWx)

test results, it is difficult to assess whether some of the test results could or should have shown Mr. Jayatilaka to have better cognitive functioning.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 22nd day of March, 2010.

*Nancy Nussbaum*
Nancy Nussbaum, Ph.D.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

839074 v2/HN

9.

DECLARATION OF NANCY NUSSBAUM
CV 09-02932 PA (CWX)