Vincent E. Nowak, Texas State Bar No. 15121550
MULLIN HOARD & BROWN, LLP
P.O. Box 31656
Amarillo, TX   79120-1656
Telephone: (806) 372-5050
Facsimile: (806) 372-5086

Alisa M. Morgenthaler, State Bar No. 146940
GLASER, WEIL, FINK, JACOBS
  HOWARD & SHAPIRO, LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone:  (310) 282-6287
Facsimile:  (310) 556-2920

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT

WESTERN DIVISION

| | |
|---|---|
| DRUVI JAYATILAKA,<br><br>                    Plaintiff,<br><br>         v.<br><br>NATIONAL BOARD OF MEDICAL EXAMINERS,<br><br>                    Defendant. | Case No.  CV 09-02932 PA (CWx)<br><br>**DECLARATION OF TERRANCE DUSHENKO**<br><br>Trial Date:    April 6, 2010<br>Judge:   Hon. Percy Anderson |

## DIRECT TESTIMONY OF DR. TERRANCE DUSHENKO

## BY DECLARATION

I, Terrance Dushenko, declare as follows:

1.      I am over the age of twenty-one, of sound mind, and capable of making this declaration.  I have been retained by Druvi Jayatilaka ("Plaintiff" or "Jayatilaka") as an expert to testify on his behalf with respect to my diagnosis of his disability and reasonable accommodations for that disability.  I understand that the Court requires direct testimony of witnesses such as myself to be presented in writing.  I have worked with Jayatilaka's counsel to prepare my direct testimony in written form, and this declaration is the result of our efforts.  We have gathered together and attached the exhibits that I refer to in this declaration.  They are organized by Trial Exhibit number, although I may refer to them in a different order.

2.      Any factual statement contained in this declaration is based upon my personal knowledge or upon the materials I reviewed as the basis for my opinions. Likewise, the opinions I express are my own and are based upon my training, experience and my review of various documents, testimony and evaluation of Jayatilaka.  At trial I will be prepared to testify further to the facts and opinions set forth in this declaration and to respond to questions regarding the bases for my opinions.

3.      It is my understanding that the parties dispute whether Plaintiff has a disability as defined under the Americans with Disabilities Act and what reasonable accommodations would be in light of any disability.

4.      For the reasons set forth below, it is my opinion, based upon my research, experience, and personal knowledge of Plaintiff that he has a disability which is classified by the DSM-IV on Axis I of 294.9: Cognitive Disorder NOS.  It is also my opinion, based upon my experience and research, that twice or double the standard time is a reasonable accommodation on an examination to grant an individual with such a disability.

2.

1
      **BACKGROUND, EXPERIENCE AND EDUCATION**

2
      5.     Before describing in detail the basis for my opinions, I will first describe my

3
background and qualifications.

4
      6.     I am the president and CEO of Health Psychology Associates in Long

5
Beach, California.  I am a member of the American Psychological Association, as well as

6
other societies and foundations for psychology.  I have attached my Curriculum Vitae to

7
this declaration.  (Trial Exhibit # 26).  I am affiliated with three separate hospital systems

8
in the Long Beach area.  My current practice consists of neuropsychology and

9
psychological evaluations, post trauma stress treatment, adult psychotherapy,

10
geropsychology, and integrative medicine.

11
      7.     I received my Ph.D. in 1983 from the University of Manitoba, in Winnipeg,

12
Canada.  Following my Ph.D. degree, I received post-doctoral training at the Rosenberg-

13
Rand Institute from January 1986 through June 1988.  I am also officially licensed in

14
Psychology by the state of California as of January 1984.

15
      8.     As of 2004, I have a Level 3 certification in Intuition in Psychotherapy

16
(NICABM).  For a more detailed review of my certifications, experience, and publications

17
please refer to my Curriculum Vitae, which I have attached here to and hereby incorporate

18
as if set out fully herein.

19
      **OPINIONS**

20
**A.    BACKGROUND ON EXPERIENCE WITH PLAINTIFF.**

21
      9.     Before discussing the bases for my opinions that Plaintiff is disabled under

22
the Americans with Disabilities and that double the standard time would be a reasonable

23
accommodation, I believe it would be helpful to place the issues in context with a brief

24
summary of how I came to be acquainted with Plaintiff and his situation.

25
      10.    Plaintiff was referred to my office for a neuropsychological evaluation from

26
his neurologist Dr. William Hornstein.  Dr. Hornstein is a friend and colleague of mine at

27
St. Mary's Medical Center.  He was unable to determine if Jayatilaka's difficulties were

28
predominantly emotional, cognitive, or a combination of the two.  I also spoke personally

1    with Plaintiff's father before meeting the Plaintiff.

2        11.    Plaintiff presented himself for the evaluation on several dates throughout

3    April and May 2008. I performed the clinical interview of Jayatilaka. Plaintiff was

4    attacked in 1995 while in Guadalajara, Mexico and suffered a depressed skull fracture.

5    Since the incident, he was has post-traumatic migraines. He was prescribed Topamax,

6    which was not effective towards the migraines, but may have caused significant short-

7    term memory impairment.

8        12.    On April 2, 2008, after my clinical interview, the following procedures were

9    administered by my colleague Dr. Andrew Levine: Beck Depression Inventory, Second

10   Edition; Boston Naming Test; Delis-Kaplan Executive Functioning System (including

11   Trail Making Test, Verbal Fluency Test, and Color Word Interference Test); Finger

12   Tapping Test; Grooved Pegboard; Hooper Visual Organization Test; Millon Clinical

13   Multiaxial Inventory – III; Wechsler Adult Intelligence Scales – Third Edition; Wechsler

14   Memory Scale – Third Edition; Wechsler Test of Adult Reading; and Wisconsin Card

15   Sorthing Test – 64.

16       13.    Plaintiff returned for the following procedures on May 8, 2008: Delis-

17   Kaplan Executive Function System – Verbal Fluency (Alternative Form) and Conners'

18   Continuous Performance Test, Second Edition.

19       14.    Finally, Jayatilaka took the Woodcock Johnson Psychoeducational Battery –

20   Third Edition on May 15, 2008.

21       15.    My opinions of Jayatilaka are based on my training, experience, personal

22   contact with plaintiff, and a detailed review of his medical records and the results of the

23   above procedures.

24   **B.    RESULTS OF TESTING**

25       16.    While Jayatilaka did score in the average range on several tests, the

26   significant factor is the discrepancy in the testing scores between portions. While he does

27   not show a reading or developmental learning disorder, he did show below average

28

4.

1   functioning in both expressive and receptive language.  This would be consistent with an

2   acquired cognitive disorder.

3        17.    His scores in these areas show more than just a "weakness" in relation to the

4   population overall, or most people.  His cognitive disorder is significant enough to be

5   classified a deficit or impairment, when compared to most people.

6        18.    Jayatilaka's disability does not directly affect his reading ability.  It affects

7   his ability to make sense of what he has read and the ability to use it in a functional way.

8   The disability manifests itself in certain aspects of verbal processing, difficulty in speed-

9   of-information processing, and extended mental tracking and control.

10       19.    It was my opinion at the time, and still is today, that his cognitive disability

11  would be directly reflected in test performance, if provisions such as extra time, were not

12  made.

13       20.    I have attached the Neuropsychological Evaluation Report (Trial Exhibit #

14  23) to this declaration.

15  **C.    DIAGNOSIS**

16       21.    While the original evaluation did not contain an official DSM-IV diagnosis,

17  that does not indicate the lack of a disability.  In follow up letters and affidavits to

18  Defendant, we have specifically given Jayatilaka the DSM-IV classification of 294.9:

19  Cognitive Disorder NOS (Cognitive Disorder: Not Otherwise Specified).

20       22.    The DSM-IV is a diagnostic manual put together by the American

21  Psychiatric & Psychological Association to provide presumed diagnostic categorization of

22  most known emotional disorders.

23       23.    Currently, Jayatilaka does not meet the diagnostic criteria of any other

24  diagnosis under the DSM-IV, however he clearly shows a cognitive disability which

25  effects his processing speed of verbal and written information.  294.9: Cognitive Disorder

26  NOS is a category for disorders that are characterized by cognitive dysfunction presumed

27  to be due to the direct physiological effect of a general medical condition but do not meet

28  criteria for any of the specific deliriums, dementias or amnestic disorders listed in this

5.

1    section and that are not better classified, essentially, elsewhere. It is my opinion that right
2    now there is not a better classification for his dysfunction, though there may be in the
3    future. I have attached my affidavit outlining this diagnosis to this declaration. (Trial
4    Exhibit # 22).

5        24.    Regarding the general medical condition mentioned in the diagnosis criteria,
6    this is consistent with Jayatilaka's history of concussions leading up to the skull fracture
7    he received in Mexico. The effects of these incidents tend to be cumulative and have
8    resulted in the current disability exhibited by Jayatilaka.

9        25.    Using the definition of the Americans with Disabilities Act that one has a
10   disability if he has a mental impairment that substantially limits one or more of his major
11   life functions, it is my opinion that Jayatilaka's cognitive disorder is a disability.

12   **D.    EFFECT OF DISABILITY**

13       26.    Jayatilaka's disability substantially limits his ability to process verbal and
14   written information, as compared to most people. Because of his reduced ability and
15   reduced speed in understanding what he has read, he is not functioning at a level that is
16   consistent with either his premorbid functioning or with functioning that is sufficient for
17   him to complete the Step II examination without accommodation. Specifically, this
18   inability to process information efficiently results in significantly reduced test scores on
19   timed exams because he is not able to complete the examination. In general, Jayatilaka
20   does poorly on timed tasks because of is slow performance and processing speed. This
21   can be seen in his difficulty with tasks such as confrontation naming and phonemic
22   fluency. The test results demonstrate that Jayatilaka's low reading efficiency is caused by
23   a very low reading processing and decision speed. Processing speed is the ability to
24   perform automatic cognitive tasks, particularly when measured under time pressure to
25   maintain focused attention. Decision speed is an aspect of cognitive efficiency and
26   provides an index of a person's ability to make correct conceptual decisions quickly.

27

28

27.    While Jayatilaka has been able to use relatively practiced organizational skills to compensate for some of his cognitive challenges, the USMLE Step II examination with normal time limits, would not give him the opportunity to use his compensation methods.  Effectively, as it stands, the Step II examination is testing Jayatilaka on his disability.  His testing scores are near passing without him finishing the exam.  It has the effect of increasing the difficulty of the test to Plaintiff, as compared to most people.

28.    Allowing Jayatilaka twice or double the standard time on the examination is a reasonable accommodation.  It would equalize the test demands and ensure that he has a fair chance to display his mastery, or lack thereof, of the tested material.  The cognitive disorder, while effecting Jayatilaka's processing speed, does not affect his knowledge of the medical material that may or may not be tested on the examination.  The reasonable accommodation of double time would allow him the needed time to comprehend and process what the questions are asking.  During the extra time, Jayatilaka will either show his mastery of the subject matter, or his lack of knowledge.  Thus allowing him to be tested on the material at issue and not his cognitive disability.

E.    **CONCLUSION**

29.    For all the reasons set forth above, it is my strongly held opinion that Jayatilaka does suffer from a cognitive disability as diagnosed of DSM-IV 294.9: Cognitive Disorder NOS, which does fit the definition of disability as defined under the Americans with Disabilities Act.  Because of this disability, I am further of the opinion that granting Jayatilaka twice or double the standard time of the Step II examination would be a reasonable accommodation, allowing Jayatilaka extra time to accommodate his slow processing speed but still ensuring whether he knows or does not know the information tested.

1    I declare under penalty of perjury under the laws of the United States of America

2    that the foregoing is true and correct.

3    Executed this *18* day of March, 2010, in *Long Beach,* California.

4

5    By: _____

6    Terrance Dushenko, Ph.D.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8.