# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

- - -

DRUVI JAYATILAKA,          :    CIVIL ACTION
                           :
         Plaintiff,        :
                           :
                           :
     VS.                   :
                           :    ORIGINAL
                           :
NATIONAL BOARD OF          :
MEDICAL EXAMINERS,         :
                           :
         Defendant.        :    NO. CV09-2032-PA

- - -

Oral deposition of GEORGE LITCHFORD, JR., Ph.D., taken at The Rittenhouse, 210 West Rittenhouse Square, Philadelphia, Pennsylvania, on Friday, December 18, 2009, beginning at approximately 10:15 a.m., before Robin Frattali, Registered Professional Reporter and Notary Public in and of the Commonwealth of Pennsylvania.

- - -

SUMMIT COURT REPORTING, INC.
Certified Court Reporters and Videographers
1500 Walnut Street, Suite 1610
Philadelphia, Pennsylvania  19102
424 Fleming Pike, Hammonton, New Jersey  08037
(215) 985-2400 * (800) 447-8648 * (609) 567-3315
www.summitreporting.com

**GEORGE LITCHFORD, JR., PH.D.**

1                     - - -

2                       GEORGE LITCHFORD, JR., Ph.D.,

3      having been first duly sworn to tell the

4      truth, was examined and testified as

5      follows:

6                     - - -

7      BY MR. NOWAK:

8          Q.   Would you state your name, please.

9          A.   George Litchford.

10         Q.   Is it Dr. Litchford?

11         A.   Dr. Litchford.

12         Q.   And what is your degree in?  What is

13     your doctorate in?

14         A.   It's in clinical psychology, a Ph.D.

15         Q.   And I'm guessing that that's what you

16     do for a living?

17         A.   Yes.

18         Q.   Do you have a practice?

19         A.   Yes.

20         Q.   Tell me about that a little bit.

21         A.   It's a relatively small practice:

22     testing, psychotherapy, consultation.

23         Q.   And what is your involvement with the

24     case that brings us here today?

1  A. I consult with the National Medical
2  Board and they sent me this particular case to
3  review.
4  Q. How long have you consulted with the
5  National Board?
6  A. I think since about 1995, '96.
7  Q. How many cases have you reviewed on
8  their behalf, ballpark?
9  A. I'd probably say between 200, 225.
10 Q. And I'm really not testing your memory,
11 but can you give me a percentage of those 225
12 cases where you have recommended an accommodation?
13 A. I'd say probably about five percent.
14 Q. Where you've recommended?
15 A. Yeah.
16 Q. What is your understanding of
17 disability as it relates to the Americans with
18 Disabilities Act?
19 A. If you have a disability under the
20 Americans with Disabilities Act, you would be
21 granted rights to accommodations in various
22 situations.
23 Q. And what is a disability under the ADA?
24    MR. TENHOFF: Objection to the

BY MR. NOWAK:

Q. Yes, sir.

A. Yes, on a few cases.

Q. And correct me if I'm wrong, but it's my understanding that -- and I get this from Dr. Nussbaum, it's my understanding that there are several steps that you take or that a psychologist takes to diagnose a disability, and the first one is you meet with the person and you take a history.

A. Uh-huh.

Q. Is that correct?

A. Yeah.

Q. And then depending on the situation, you will administer various tests; is that correct?

A. Yeah.

Q. And what I was told by Dr. Nussbaum is a big part or a part of diagnosing a disability is clinical observation.

A. That's true.

Q. And she actually threw a fourth one at me that I hadn't heard before, but the fourth one is review documents.

GEORGE LITCHFORD, JR., PH.D.

1    A.   Yeah.
2    Q.   Okay.  Would those be the four pillars,
3  the history, the testing, the clinical
4  observations and the review of documents that are
5  necessary to diagnosing a disability?
6    A.   I would also add rule out other
7  conditions that may mimic or simulate the same
8  condition.
9    Q.   Five pillars.
10   A.   What?
11   Q.   Five pillars.
12   A.   Yeah.  Sometimes that falls under
13  testing, but...
14   Q.   I got you.
15        Would you undertake to make a
16  diagnosis of an ADA disability without having met
17  the patient?
18   A.   Would I make the diagnosis without
19  having met the patient?
20   Q.   Yes, sir.
21   A.   No, I wouldn't.
22   Q.   Is it possible to make a diagnosis
23  without having met the patient?
24   A.   I don't believe so.

GEORGE LITCHFORD, JR., PH.D.

1  Q. So I guess what I'm hearing is that the
2  standard is meet the patient, take the history,
3  administer the testing, make clinical
4  observations, review the documents and as part of
5  the testing, rule out other conditions.
6  A. Yeah, that would be a general standard.
7  Q. Well, that's pretty much the gold
8  standard, right?
9  A. Yeah, that would be good.
10 Q. Okay. Have you ever met Druvi
11 Jayatilaka?
12 A. No, I have never met him.
13 Q. What have you done -- first of all, let
14 me ask you this: Who contacted you from the
15 National Board to seek your involvement in this
16 case?
17 A. I was contacted by the secretary, who
18 sent me an e-mail notifying me that she was
19 sending me a file to review.
20 Q. Do you remember her name?
21 A. She changed, and I don't remember
22 exactly who it was, but it was just the office
23 secretary at that time.
24 Q. I got you.

GEORGE LITCHFORD, JR., PH.D.

```
 1              MR. NOWAK:  What are we up to?
 2              MR. TENHOFF:  I don't remember.
 3              MR. NOWAK:  Let's call it
 4   Litchford-1.
 5                   - - -
 6              (Documents reviewed by Dr.
 7   Litchford marked Plaintiff's Exhibit
 8   Litchford-1 for identification purposes.)
 9                   - - -
10              (Whereupon, a discussion was
11   held off the record.)
12                   - - -
13   BY MR. NOWAK:
14       Q.   Sir, on top of what we've marked as
15   Litchford there are some dates, what appear to be
16   dates, and numbers in red ink.
17              What do those reflect?
18       A.   Oh, yeah.  These are just my record of
19   the amount of time I spent reviewing the file on
20   those particular dates.
21       Q.   And your recommendation to the Board
22   was do not give Dr. Jayatilaka extra time,
23   correct?
24       A.   That's true.
```

1  Q. How much time did you spend reviewing
2  the information before you made that
3  recommendation?
4  A. On the original file?
5  Q. Yes, sir.
6  A. It would have been -- I can just add it
7  up for you here. It would have been, it looks
8  like, an hour and a half, hour and 45 minutes.
9  Q. And if I understood your testimony
10 earlier, in order to say yes, someone has a
11 disability, or no, someone does not have a
12 disability, it's important to personally take the
13 history, administer testing, make clinical
14 observations, review documents and rule out other
15 conditions, correct?
16           MR. TENHOFF: Objection.
17 Misstates his testimony. That's not what he
18 said.
19           THE WITNESS: Could you restate
20 the question?
21                - - -
22 BY MR. NOWAK:
23 Q. Yes, sir.
24           If I understand your testimony

GEORGE LITCHFORD, JR., PH.D.

1  correctly, what you said earlier was that in order
2  to say yes or no to someone having a disability is
3  you need to personally take the history,
4  administer testing, make clinical observations,
5  review documents and rule out other conditions,
6  correct?
7              MR. TENHOFF: Same objections.
8              THE WITNESS: Yeah, I -- that's
9  what I would do. Yeah.
10             MR. NOWAK: Okay. Pass the
11 witness.
12             MR. TENHOFF: You have no
13 further questions?
14             MR. NOWAK: No.
15             MR. TENHOFF: I have no
16 questions for the witness.
17
18                        - - -
19
20             (Whereupon, at 10:28 a.m., the
21 witness was excused and the deposition was
22 concluded.)
23
24                        - - -

GEORGE LITCHFORD, JR., PH.D.

C E R T I F I C A T E

COMMONWEALTH OF PENNSYLVANIA   :
                               :   SS
COUNTY OF PHILADELPHIA         :

        I, ROBIN FRATTALI, Registered Professional Reporter - Notary Public, within and for the Commonwealth of Pennsylvania, do hereby certify that the proceedings, evidence, and objections noted are contained fully and accurately in the notes taken by me of the preceding deposition, and that this copy is a correct transcript of the same.

*Robin Frattali*

———————————————

ROBIN FRATTALI

Registered Professional

Reporter - Notary Public

**GEORGE LITCHFORD, JR., PH.D.**

```
 1                    ERRATA SHEET

 2    Attach to Deposition of:
      George Litchford, Jr., Ph.D.
 3    Taken on:  December 18, 2009
      In the matter of:  Jayatilaka vs. National Board
 4    PAGE          LINE NO.        CHANGE           REASON

 5    _____

 6    _____

 7    _____

 8    _____

 9    _____

10    _____

11    _____

12    _____

13    _____

14    _____

15    _____

16    _____

17    _____

18    _____

19    _____

20    _____

21    _____

22    _____

23    _____

24    _____
```

**GEORGE LITCHFORD, JR., PH.D.**

SIGNATURE PAGE

- - -

I hereby acknowledge that I have read the aforegoing transcript, dated December 18, 2009, and the same is a true and correct transcription of the answers given by me to the questions propounded, except for the changes, if any, noted on the Errata Sheet.

- - -

SIGNATURE: _____

George Litchford, Jr., Ph.D.

WITNESSED BY: _____