1  COOLEY GODWARD KRONISH LLP
   GREGORY C. TENHOFF (154553)
2  (tenhoffgc@cooley.com)
   WENDY J. BRENNER (198608)
3  (brennerwj@cooley.com)
   Five Palo Alto Square
4  3000 El Camino Real
   Palo Alto, CA  94306-2155
5  Telephone:   (650) 843-5000
   Facsimile:    (650) 857-0663
6
   Attorneys for Defendant
7  NATIONAL BOARD OF MEDICAL EXAMINERS

8                    UNITED STATES DISTRICT COURT

9                        CENTRAL DISTRICT

10                       WESTERN DIVISION

11

12
   DRUVI JAYATILAKA,                    Case No.  CV 09-02932 PA (CWx)
13
              Plaintiff,                **TRIAL BRIEF OF DEFENDANT
14                                       NATIONAL BOARD OF MEDICAL
         v.                              EXAMINERS**
15
   NATIONAL BOARD OF MEDICAL
16 EXAMINERS,

17            Defendant.

18

19

20

21

22

23

24

25

26

27

28

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

841899 v6/HN

NBME'S TRIAL BRIEF
CV 09-02932 PA (CWx)

TABLE OF CONTENTS

PAGE

I.    INTRODUCTION ................................................................................... 1

II.   STATEMENT OF FACTS ...................................................................... 2

A.    Jayatilaka's Cognitive Abilities Have Always Been In The Average Range ................................................................................. 2

B.    Jayatilaka's 1995 Skull Fracture ............................................... 3

C.    Jayatilaka Took And Passed the USMLE Step 1 After The 1995 Incident Without Accommodation ....................................... 4

D.    Jayatilaka Underwent Extensive Neuropsychological Testing Which Demonstrated Average Cognitive Functioning ........................ 5

E.    Notwithstanding The Lack Of A Disability Diagnosis, Jayatilaka Applied For An Accommodation On the USMLE Step 2 CK Examination ..................................................................... 7

F.    Jayatilaka Applied A Second Time For An Accommodation, This Time Claiming Cognitive Dysfunction Not Otherwise Specified .................................................................................... 7

G.    The NBME Experts Confirm That Jayatilaka Is Not Impaired When Compared To The Average Person in the Population ............... 9

III.  JAYATILAKA HAS NOT ESTABLISHED A VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (THE "ADA) ........................ 12

A.    Jayatilaka Is Not Disabled As Defined By The ADA ........................ 12

1.    Jayatilaka Does Not Suffer From Any Mental Impairment ..... 13

2.    Jayatilaka Is Not Substantially Limited In Any Major Life Activity ............................................................................. 15

B.    There Is No Evidence That Jayatilaka's Requested Accommodation Is Necessary For Him To Access The Exam .......... 16

IV.   CONCLUSION ...................................................................................... 17

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

841899 v6/HN                                        i.                          NBME'S TRIAL BRIEF
                                                                               CV 09-02932 PA (CWx)

1

**TABLE OF AUTHORITIES**

2

**PAGE**

3

4

**CASES**

5

*Bercovitch v. Baldwin School, Inc.*,
   133 F.3d 141 (1st Cir. 1998) ................................................................. 12

6

7

*Brock v. United Grinding Tech., Inc.*,
   257 F. Supp. 2d 1089 (S.D. Ohio 2003) ............................................... 12

8

*Doe v. Nat'l Bd. of Med. Exam'rs*,
   199 F.3d 146 (3d Cir. 1999) ................................................................. 17

9

10

*Gonzales v. Nat'l Bd. of Med. Exam'rs*,
   225 F.3d 620 (6th Cir. 2000) ........................................................... 12, 13

11

12

*Jenkins v. NBME*,
   2009 WL 331638, No. 08-5371 (6th Cir. Feb. 11, 2009) ...................... 13

13

14

*Kannankeril v. Terminix Int'l, Inc.*,
   128 F.3d 802 (3rd Cir. 1997) .................................................................. 9

15

16

*Love v. Law School Admission Council, Inc.*,
   513 F. Supp. 2d 206 (E.D. Penn. 2007) ................................................ 12

17

18

*Memmer v. Marin County Courts*,
   169 F.3d 630 (9th Cir. 1999) ................................................................ 17

19

20

*Paoli RR. Yard PCB Litig., In Re*
   35 F.3d 717 (3rd Cir. 1994) .................................................................... 9

21

22

*Pazery v. New York State Bd. of Law Exam'rs*,
   849 F. Supp. 284 (S.D.N.Y. 1994) ....................................................... 12

23

24

*Price v. Nat'l Bd. of Med. Exam'rs*,
   499 F. Supp. 419 (S.D.W. Va. 1997) .................................................... 12

25

26

*Sutton v. United Air Lines, Inc.*,
   527 U.S. 471 (1999) .............................................................................. 13

27

28

*Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*,
   534 U.S. 184 (2002) .............................................................................. 13

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

841899 v6/HN

ii.

**NBME'S TRIAL BRIEF**
**CV 09-02932 PA (CWx)**

TABLE OF AUTHORITIES
(CONTINUED)

PAGE

*Wong v. Regents of the Univ. of Cal.*,
   410 F.3d 1052 (9th Cir. 2005) ............................................................... 12

STATUTES

122 Stat. 3553 (2009) ............................................................... 13

42 U.S.C.
   § 12101 ............................................................... 12
   § 12102(a)(3)(E)(i) (2009) ............................................................... 13
   § 12189 ............................................................... 12, 16

OTHER AUTHORITIES

28 C.F.R. 36.309(b)(i) ............................................................... 17

28 CFR pt. 36 (1996) ............................................................... 12

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

841899 v6/HN

iii.

[TITLE]
CV 09-02932 PA (CWx)

## I.   INTRODUCTION.

Plaintiff Druvi Jayatilaka is a medical school graduate seeking to become a licensed doctor.  That process requires (among other things) successful passage of the USMLE, a three part (or three "step") examination.  After years of average academic performance and testing results, and graduation from a Spanish language medical school in Guadalajara, Mexico (despite the fact he doesn't speak or read Spanish), Jayatilaka passed Step 1 of the USMLE.  However, after many attempts, Jayatilaka has not been able to pass the Step 2 Clinical Knowledge ("CK") portion of the examination.

Jayatilaka, frustrated with his inability to pass this exam, sought assistance from mental health professionals.  One of these professionals, Dr. Terrance Dushenko, diagnosed the 41-year old Jayatilaka *for the first time* in 2008 with "Cognitive Disorder Not Otherwise Specified," a diagnosis characterized by Jayatilaka's other treating psychologist as a "wastebasket" diagnostic term.  Dr. Dushenko made his diagnosis after Jayatilaka's first request for accommodation on the USMLE was denied, belatedly assigning this diagnosis to Jayatilaka despite the fact that the neuropsychological testing administered by Dr. Dushenko's own colleague revealed that, like his academic performance, Jayatilaka's cognitive functioning was solidly, if not exclusively, in the average range.

On the basis of Dr. Dushenko's belated diagnosis, Jayatilaka applied for the accommodation of double the standard testing time on the USMLE.  This is the first time in his life that Jayatilaka has sought accommodation in any academic, professional, or testing setting for any alleged disability.

Defendant National Board of Medical Examiners (the "NBME"), the independent, not-for-profit organization that develops the USMLE, engaged two independent experts to review Jayatilaka's accommodation request.  These experts reviewed the results of the extensive neuropsychological testing performed on Jayatilaka, and recommended denying the requested accommodation.  Both experts

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

841899 v6/HN                                    1.                          NBME'S TRIAL BRIEF
                                                                           CV 09-02932 PA (CWx)

agreed that the neuropsychological test results did not support a finding of a cognitive impairment; both agreed that the test scores show that Jayatilaka's cognitive functioning is consistent with his IQ and not limited when compared to the average person in the general population.  The NBME subsequently denied Jayatilaka's requested accommodation and this litigation followed.

As set forth in detail below, Jayatilaka is not entitled to accommodations under the ADA.  Jayatilaka is not considered disabled under the ADA unless he can prove both that he has a mental impairment and that his impairment substantially limits him in a major life activity as compared to the average person in the general population.  His neuropsychological test data, and the other uncontradicted evidence in this case, confirm that he cannot meet that standard – Jayatilaka does not have a mental impairment and he is functioning at least as well as the average person in the general population on all measures of cognitive functioning relevant to the USMLE.

Jayatilaka's claims are without merit, and judgment should be entered in favor of the NBME.

## II.    STATEMENT OF FACTS.

### A.    Jayatilaka's Cognitive Abilities Have Always Been In The Average Range.

Jayatilaka was born in Sri Lanka.  (SF 1.)  He moved to the United States as a child, and began speaking English at age four or five.  (SF 3.)  He attended Chadwick High School between 1983 and 1986, graduating with a 3.13 GPA and class rank of 33 out of 60.  (SFs 4-6.)  Jayatilaka did not request or receive any accommodations throughout high school.  (SF 7.)  Jayatilaka then attended Franklin and Marshall College between 1987 and 1991, graduating with a 2.69 GPA and class rank of 318 out of 431.  (SF 8-10.)  Jayatilaka also did not request or receive any accommodations throughout his undergraduate education.  (SF 12.)

Jayatilaka took the Medical College Admissions Test on four occasions

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

841899 v6/HN                                          2.                              NBME'S TRIAL BRIEF
CV 09-02932 PA (CWx)

without accommodation, and received scores ranging from the $45^{th} - 77^{th}$ percentile. (Jayatilaka Deposition at 10:14-16; SFs 21-23.)   With these scores, in 1991, Jayatilaka applied to more than ten medical schools but he was not accepted into any one of them.  (SF 24.)  After taking a year off, he applied to medical school at Universidad Autonoma de Guadalajara ("UAG") in Guadalajara, Mexico, where he was subsequently accepted.  (SF 26.)  Despite the fact that all of Jayatilaka's classes at UAG were conducted in Spanish, a language that Jayatilaka does not speak or write (SF 27-28), Jayatilaka managed to graduate from medical school in June 1997.   (SF 31.)   Jayatilaka did not request or receive any accommodations throughout medical school on the basis of an alleged disability.  (SF 29.)   His medical school records reveal average or below average performance both before and after 1995.  (SF 30; Joint Exhibit ("JE") 11.)

## B.    Jayatilaka's 1995 Skull Fracture.

In December 1995, Jayatilaka claims that he was jumped from behind without warning or provocation and was assaulted outside a bar in Guadalajara.  He informed doctors at the time that he was "struck on the head with a gun" and "run over by a motor vehicle."  (SF 36.)   Following the assault, he had surgery for a depressed skull fracture.  (SF 34.)   The fracture was located in the right parietal region of the skull.  (SF 35.)  Following this surgery, Jayatilaka had multiple MRIs of his brain in 1996, 1997, 2003 and 2006.   All of these MRIs were consistent in that they showed no abnormality.   (SF 37-43.)   Indeed, no MRI scan taken of Jayatilaka's brain has ever revealed any brain injury from the 1995 incident or any other source.  (SF 43.)

According to Jayatilaka, "the most noticeable" difference he has experienced since the 1995 incident are migraine headaches.  (Jayatilaka Declaration at ¶ 13.) Jayatilaka also testified, however, that he has not suffered a migraine nor taken medication for migraines for some  time.  (Jayatilaka Deposition at 166:15-167:4.) Jayatilaka further testified that he has not requested an accommodation based on

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

841899 v6/HN                                   3.                          NBME'S TRIAL BRIEF
CV 09-02932 PA (CWx)

migraines. (*Id.*)   Moreover, while Dr. Dushenko's Declaration mentions "short-term memory impairment" from Topamax (a medication taken by Jayatilaka for migraine headaches), Jayatilaka testified that he only took a therapeutic dose of Topamax for his migraines around August/September 2006.   Jayatilaka testified that because he was experiencing short-term memory loss as a side effect of the medication, he switched within 2-3 months to another medication which did not give him the same short-term memory loss. (Jayatilaka Deposition at 54:3-56:22.) There is no evidence that Jayatilaka sustained any permanent damage to his memory functions due to his brief use of Topamax and, in fact, his neuropsychological test scores show no limitations in his working memory (even according to his own psychologists). (SF 107; JE 1 at 7: "In sum, Dr. Jayatilaka does not demonstrate deficits in attention or working memory.")

### C.   Jayatilaka Took And Passed the USMLE Step 1 After The 1995 Incident Without Accommodation.

Jayatilaka first took Step 1 of the USMLE on October 1996, ***after*** the 1995 incident.   Jayatilaka passed Step 1 of the USMLE on his fifth attempt.   (SF 45.) Jayatilaka did not request or receive any accommodations from the NBME during any administration of Step 1 of the USMLE.   (SF 46.)

Jayatilaka has attempted to pass the USMLE Step 2 CK on six occasions between 1998 and 2007.   (SF 49.)   Between October 28, 2004, and August 31, 2007, Jayatilaka was scheduled to take the Step 2 CK on three occasions but he did not show up for the exam on any of them.   (SF 60.)   On his most recent attempt on August 31, 2007, Jayatilaka nearly passed the examination – he received a three digit score of 177 (at least 185 was required to pass) and a two digit score of 72 (75 was passing).   (Jayatilaka Deposition at 36:3-19; SF 64.)   Jayatilaka did not request or receive any accommodations from the NBME during any of these previous administrations of the Step 2 CK.   (Complaint, ¶ 10.)

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

841899 v6/HN                4.                NBME'S TRIAL BRIEF
CV 09-02932 PA (CWx)

**D.    Jayatilaka Underwent Extensive Neuropsychological Testing Which Demonstrated Average Cognitive Functioning.**

After trying to pass the Step 2 CK examination from 1998 until 2007, in April and May 2008, Jayatilaka underwent a neuropsychological evaluation by psychologists Terrance Dushenko and Andrew Levine.   The purpose of the examination was to help Jayatilaka get over the USMLE hurdle that had been plaguing him.[1]

The evaluation included approximately 71 neuropsychological tests to determine if Jayatilaka had any cognitive impairments.  (SF 94.)  As a part of their neuropsychological assessment, Drs. Dushenko and Levine interviewed Jayatilaka.  (SF 96.)   During that interview, Jayatilaka reported that he did "not feel he currently has significant cognitive problems that interfere with his day-to-day functioning."   (SF 97.)

Jayatilaka's self-report of his cognitive functioning was confirmed by the test results.  Of the approximately 71 neuropsychological tests administered, ***Jayatilaka scored in the average range on all but four tests***.[2]  (SF 103-104.)[3]  The Evaluation

---

[1]  In addition to Drs. Dushenko and Levine, Jayatilaka consulted with other psychologists and psychiatrists regarding his inability to pass the USMLE.  (SF 159.)  One of these doctors noted that Jayatilaka is conflicted about becoming a doctor; "sabotages" his success; and does not possess the "driven mentality" necessary to become a doctor.  (SF 161-162.)  Another doctor's report stated that Jayatilaka's profile is consistent with "Self-Defeating Personality Features" and "Generalized Anxiety Disorder" (JE 18 at p.2), and that he may exhibit a "tendency to undermine constructive opportunities."  (*Id*. at p.6.)  And a third doctor's notes reflect that Jayatilaka was receiving treatment for an "[a]nxiety reaction" to the USMLE, and that the psychotherapy was focused on anxiety management techniques. (JE 39 at p.1.)

[2]  Exhibit A to Dr. Litchford's Declaration is a graphical depiction of the scores reflected in the Evaluation (JE 1) at pages 14-16.  This chart shows seven scores in the Below Average category, however, those scores correlate to Jayatilaka's performance on only four neuropsychological tests.  (SF 104.)  The discrepancy results from the fact that some tests have various sub-parts, and thus one test may generate multiple scores.  In this case, the Wisconsin Card Sorting Test generated

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

841899 v6/HN                                    5.                        **NBME'S TRIAL BRIEF**
**CV 09-02932 PA (CWx)**

specifically reported that Jayatilaka received "very high scores on measures of reading, arithmetic, and mathematical reasoning" and scores that were "within expectation" on speeded measures of reading, calculation, and writing.   The Evaluation also noted that Jayatilaka had **no deficits** in attention or working memory (SF 107);  **average auditory and reading comprehension** (SF 108); intact visuospatial functioning (SF 109); average executive functioning (SF 111); and average motor and psychomotor functioning.  (SF 112.)  The Evaluation also noted that the test scores suggested that "Dr. Jayatilaka has **likely been functioning within the Average range of intellectual ability** for some time."  (SF 105.)

As a result of their evaluation (including their neuropsychological testing), Drs. Dushenko and Levine did not diagnose Jayatilaka with any cognitive disorder under the standards set forth in the Diagnostic and Statistical Manual, Fourth Edition ("DSM-IV"[4].)  (SF 114.)  Nevertheless, surprisingly, despite Jayatilaka's average or above-average functioning, the Evaluation included the following recommendation: "It is recommended that Dr. Jayatilaka be given provision, under the Americans with Disabilities Act, for extended time for completion of current and future written medical examinations."  (SF 117.)  When Dr. Dushenko made this recommendation, he was not even aware of the format of the USMLE Step 2 CK examination.  (SF 157.)

---

three separate scores under the Executive Functioning heading although it is actually just one test.

[3]   Of these four tests, Jayatilaka scored in the average range on one of them when he was retested (the DKEFS Verbal Fluency test for "Letters")(SF 145); Jayatilaka was given an abbreviated version of the Wisconsin Card Sorting Test which likely affected his scored (SF 151-153); and the final two tests are measures of psychomotor functioning (which is not an issue here)(JE 1 at 10).

[4]   The DSM-IV is used by physicians, psychiatrists and psychologists for the diagnosis of psychiatric disorders or mental disorders.  (SF 119.)

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

841899 v6/HN                                             6.                          NBME's TRIAL BRIEF
                                                                              CV 09-02932 PA (CWx)

**E.    Notwithstanding The Lack Of A Disability Diagnosis, Jayatilaka Applied For An Accommodation On the USMLE Step 2 CK Examination.**

Following receipt of this report, on July 14, 2008, Jayatilaka requested an accommodation from the NBME on the USMLE.  (SF 66.)  Jayatilaka's requested accommodation was double the standard amount of testing time.  (SF 68.)  As the basis for his request, Jayatilaka stated that he had a "Reading Disability" and "Language Impairment" in the form of "Mixed Receptive/Expressive Language Disorder," which he also indicated was a "speed of processing" issue.  (SFs 67, 121.)  Importantly, Drs. Dushenko and Levine ***did not*** diagnose Jayatilaka with a Reading Disorder in the Evaluation (SF 126), nor did they diagnose Jayatilaka with a Mixed Receptive/Expressive Language Disorder. (SF 67.)

Upon reviewing Jayatilaka's accommodation request, the NBME provided Jayatilaka's file to an expert in the field of learning disabilities, Dr. George Litchford.  (SFs 77-78.)  Dr. Litchford subsequently provided the NBME with a report dated August 26, 2008 recommending denial of the requested accommodation.  (SF 79.)  Dr. Litchford's report stated that Jayatilaka's "test battery suggests average cognitive functioning" and that any difficulties with language and/or executive functioning were not significantly impacting his achievement functioning.  (SF 80.)  The NBME subsequently denied Jayatilaka's request for accommodations for the USMLE Step 2 CK on September 16, 2008 on the grounds that the documentation he submitted did not support the existence of an impairment justifying an accommodation.  (SFs 82-83.)

**F.    Jayatilaka Applied A Second Time For An Accommodation, This Time Claiming Cognitive Dysfunction Not Otherwise Specified.**

On or about December 23, 2008, Jayatilaka submitted a request for reconsideration of the NBME's decision denying his accommodation request.  (SF 84.)  In support of this request, Jayatilaka submitted an affidavit from Dr. Dushenko diagnosing Jayatilaka ***for the first time*** with Cognitive Disorder Not Otherwise

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

841899 v6/HN                                   7.                          NBME'S TRIAL BRIEF
                                                                         CV 09-02932 PA (CWx)

1  Specified ("CDNOS").   (SF 85, 122.)  The DSM-IV defines CDNOS as follows:
2  "This category is for disorders that are characterized by cognitive dysfunction
3  presumed to be due to the direct physiological effect of a general medical condition
4  that do not meet criteria for any of the specific deliriums, dementias, or amnestic
5  disorders listed in this section . . . ."  (SF 136.)    Dr. Dushenko's affidavit stated
6  that the CDNOS diagnosis was a "direct consequence" of a "traumatic head injury"
7  that Jayatilaka received in a 1995 assault.  (SF 137.)

8       Tellingly, this  CDNOS diagnosis is not shared by Dr. Levine, Jayatilaka's
9  second treating psychologist (and the one who actually administered the
10  neuropsychological tests to Jayatilaka).  (SF 141.)  Dr. Levine does not believe
11  Jayatilaka falls **into any category** described in the DSM-IV (SF 146), and does not
12  believe that Jayatilaka's performance on the neuropsychological testing reflects a
13  "traumatic head injury."  (SF 142.)   Dr. Levine also referred to CDNOS as a
14  "wastebasket term" assigned to an individual who doesn't meet the diagnostic
15  criteria for any other disorder.  (SF 141.)  Indeed, Dr. Levine has not submitted a
16  declaration in support of Jayatilaka's request for accommodation in this case and
17  his deposition testimony only has been offered by the NBME, not by Jayatilaka.

18      In response to Jayatilaka's December 23, 2008 request for reconsideration,
19  the NBME provided Jayatilaka's file to neuropsychologist Dr. Nancy Nussbaum, an
20  expert in the area of brain injuries.  (SF 87.)  Dr. Nussbaum reviewed all the
21  materials submitted by Jayatilaka to the NBME since July 14, 2008 and concluded,
22  in a January 22, 2009 report, that Jayatilaka had failed to establish an impairment
23  that would justify an accommodation under the ADA.  (SF 88.)  Dr. Nussbaum's
24  report further stated that Jayatilaka's performance on the neuropsychological tests
25  set forth in the Evaluation were **not consistent** with a traumatic brain injury.  (SF
26  89.)  The NBME denied Jayatilaka's request for reconsideration on February 12,
27  2009.  (SF 90.)

28

### G.   The NBME Experts Confirm That Jayatilaka Is Not Impaired When Compared To The Average Person in the Population.

Both Drs. Litchford and Nussbaum have submitted their opinions in this matter by declarations under oath, and both agree that Jayatilaka does not have a mental impairment that substantially limits his cognitive functioning.[5] (Litchford Declaration at ¶ 9; Nussbaum Declaration at ¶ 9.)

As Dr. Litchford explains, the analysis of whether an individual has a cognitive impairment requires an assessment of the individual's performance as compared with the average person in the general population. (Litchford Declaration at ¶ 7.) For purposes of neuropsychological tests, the term "Average" is defined as a score that falls within one standard deviation of the mean. (*Id.*) Most neuropsychological tests have a mean of 100, and a standard deviation of 15. (*Id.*) Therefore, a score is within the average range if it falls between 85 and 115. (*Id.*) This translates into a percentile range of 16 to 84, meaning that any score between the 16th and 84th percentiles, inclusive, is within the average range. (*Id.*)[6]

---

[5] Jayatilaka argues that the opinions of Dr. Litchford and Dr. Nussbaum should be disregarded since they did not personally meet Jayatilaka or personally administer the neuropsychological tests to him, and such personal contact is necessary for a clinical diagnosis. (Plaintiff's Trial Brief at 10.)   But Dr. Litchford and Dr. Nussbaum do not purport to clinically diagnose Jayatilaka.  Rather, they reviewed all of the evidence in this case (including Jayatilaka's medical records, educational and testing records, the written evaluation and testimony of Drs. Dushenko and Levine, and the results of the neuropsychological tests administered by Dr. Levine) and have opined as to whether all of this evidence shows a mental impairment that substantially limits Jayatilaka's cognitive functioning.  Moreover, even if they had purported to clinically diagnose Jayatilaka, it is well-settled that physicians and experts can rely upon such information to form opinions and even reach a diagnosis.   *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 807 (3rd Cir. 1997)(admitting expert testimony when expert relied upon subject's medical history and the report of a neuropsychologist who tested the subject); *In Re Paoli RR. Yard PCB Litig.*, 35 F.3d 717, 762 (3rd Cir. 1994)(accord).

[6] This is the same standard applied by Dr. Nancy Nussbaum, the NBME's expert in neuropsychology and traumatic brain injuries.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

841899 v6/HN                                    9.                          NBME'S TRIAL BRIEF
                                                                        CV 09-02932 PA (CWx)

Applying this standard, it is clear that Jayatilaka is not cognitively impaired. Jayatilaka's cognitive abilities, as measured by the Weschler Adult Intelligence Scale ("WAIS-III") tests, are in the average range with a full scale IQ of 103, a verbal IQ of 100, and a performance IQ of 107.  (*Id*. at ¶ 11.)  His performance on the Woodcock Johnson ("WJ-III") Achievement Tests is consistent with these IQ scores – his broad reading ability was an average range standard score of 101 to 106; his broad math score was in the average to high average range with a score between 109 and 114; his academic fluency was in the high average to superior range with a score of 116 to 120.  (*Id*.)  His subtests scores relating to language fluency and processing were also within the high average range – his Reading Fluency was 110 to 114 and his Writing Fluency was 117 to 129.  These scores demonstrate that Jayatilaka's reading, writing and mathematic abilities are unimpaired and all in the average to high average range depending upon the specific measure given.

Dr. Nussbaum agrees.  According to Dr. Nussbaum, on various measures of cognitive functioning, Jayatilaka scored in the average range:

- WAIS-III Working Memory Index was at the 81st percentile.
- WMS-III Working Memory Index was at the 70th percentile.
- WAIS-III Digit Symbol Performance was at the 50th percentile
- CPT-II Hit RT Standard Error was at the 87th percentile.
- CPT-II Variability was at the 65th percentile.

(Nussbaum Declaration at ¶ 13.)  Dr. Nussbaum further points out that Jayatilaka scored in the 52nd percentile on the WJ-III Letter-Word Identification (Reading) Test.  (*Id*.)  This is a very stable measure of reading ability, meaning that it reflects reading abilities prior to the 1995 incident.  (*Id*.)  This score suggests that Jayatilaka has always read in the average range.  (*Id*.)  It is also consistent with his Reading Comprehension score (42nd percentile), which suggests that his current reading

1  abilities are consistent with his pre-incident reading abilities, thus refuting any

2  notion that his reading performance was affected by the 1995 incident. (*Id.*)

3      Dr. Nussbaum further observes that Jayatilaka's test scores are not consistent

4  with the traumatic brain injury ("TBI") claimed by Dr. Dushenko.  (*Id.* at ¶ 12.)

5  For examples, Jayatilaka performed well on the WAIS-III Working Memory Index

6  (70th percentile) and Processing Speed Index (58th percentile), two scores where a

7  TBI would typically result in low scores.  (*Id.*)  Jayatilaka also performed well on

8  the WAIS-III Digit Symbol Coding test (50th percentile), which is typically found

9  to be sensitive to organic brain dysfunction, especially TBI.  (*Id.*)

10      And, finally, as noted by Dr. Nussbaum, there is no evidence that Jayatilaka's

11  alleged impairment is translating into any functional limitation.  (*Id.* at ¶ 14.)  The

12  USMLE Step 2 CK is a written examination.   Therefore, the most relevant

13  cognitive functions to the USMLE are reading comprehension, reading fluency, and

14  processing speed.    Jayatilaka performed in the average range on all

15  neuropsychological tests in those areas:  Letter-Word Identification was at the 52nd

16  percentile;  Reading  Fluency  was  at  the  78th  percentile;  and  Reading

17  Comprehension was at the 42nd percentile.  (*Id.*)  These scores show average

18  academic functioning and no functional impairment as compared to the average

19  person in the general population.  (*Id.*)

20      Both Drs. Litchford and Nussbaum further noted problems with the testing

21  administered by Dr. Levine.  Both noted that Dr. Levine did not include tests of

22  malingering, motivation and effort.   (Litchford Declaration at ¶ 14; Nussbaum

23  Declaration at ¶ 16.)  Such tests are standard, and without them, it is difficult to

24  assess whether some of the tests could or should have shown better cognitive

25  functioning.  (Nussbaum Declaration at ¶ 16.)  Dr. Litchford also noted that some

26  of the test results could have been affected by the fact that English is not Mr.

27  Jayatilaka's first language, and that Dr. Levine did not always follow administration

28  protocols for certain neuropsychological tests. (Litchford Declaration at ¶ 13(a)(ii),

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

841899 v6/HN                                11.                        NBME'S TRIAL BRIEF
CV 09-02932 PA (CWx)

1  (iii) and 13(b)(ii).)

2  **III.  JAYATILAKA HAS NOT ESTABLISHED A VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (THE "ADA).**

3

4  **A.  Jayatilaka Is Not Disabled As Defined By The ADA.**

5  The NBME has a legal duty to provide access to the USMLE to examinees

6  with documented disabilities pursuant to Title III of the ADA.  42 U.S.C. § 12189.

7  It is Jayatilaka's burden to prove that he is disabled as defined under the ADA.

8  *Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1063 (9th Cir. 2005).

9  To prove he has a disability within the meaning of the ADA, Jayatilaka must

10  prove that he has a physical or mental impairment.  42 U.S.C. § 12101; 28 CFR pt.

11  36 (1996); *see also Love v. Law School Admission Council, Inc.*, 513 F. Supp. 2d

12  206, 223  (E.D. Penn. 2007); *Pazery v. New York State Bd. of Law Exam'rs*, 849 F.

13  Supp. 284 (S.D.N.Y. 1994).  Additionally, he must show that the mental or physical

14  impairment substantially limits him in a major life activity as compared to most

15  people in the general population.  42 U.S.C. § 12101; 28 CFR pt. 36 (1996);

16  *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 627 (6th Cir. 2000).   A

17  clinical diagnosis, by itself, is not sufficient to establish a disability under the ADA

18  without proof that the plaintiff also is substantially limited in a major life activity.

19  *See Bercovitch v. Baldwin School, Inc.*, 133 F.3d 141, 155 (1st Cir. 1998)

20  (diagnosis by expert does not automatically mean individual is disabled within

21  ADA); *Brock v. United Grinding Tech., Inc.*, 257 F. Supp. 2d 1089, 1094-95 (S.D.

22  Ohio 2003) ("it is insufficient for individuals attempting to prove disability status

23  merely to submit evidence of a medical diagnosis"); *Price v. Nat'l Bd. of Med.

24  Exam'rs*, 499 F. Supp. 419, 426 (S.D.W. Va. 1997) ("a 'learning disability' does

25  not always qualify as a disability under the ADA.") (citations omitted).

26  Jayatilaka's Trial Brief devotes significant attention to the recent ADA

27  amendments.  However, those Amendments signaled two changes in the ADA,

28  neither of which are at issue in this case.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

841899 v6/HN                                    12.                          NBME'S TRIAL BRIEF
                                                                             CV 09-02932 PA (CWx)

First, Congress rejected the notion that in order for an impairment to substantially limit a major life activity under the ADA, the individual had to be restricted from doing an activity that is of "central importance to most people's daily lives." *Jenkins v. NBME*, 2009 WL 331638, No. 08-5371 (6th Cir. Feb. 11, 2009) (*citing Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002)). In this case, the NBME does not contest that reading is a major life activity. *See Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 626 (6th Cir. 2000). As Jayatilaka readily admits in his brief, he still has the burden to prove, however, that his alleged impairment substantially limits him in the major life activity of reading as compared to average person in the general population. (Plaintiff's Trial Brief at 3-4.)

Second, the Amendments superseded the holding of *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999) to the extent *Sutton* held that the mitigating measures should be taken into account when determining whether a person is disabled under the ADA. *See* 122 Stat. 3553 (2009); 42 U.S.C. § 12102(a)(3)(E)(i) (2009) ("determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures . . . ."). In this case, mitigating measures are not at issue.

### 1. Jayatilaka Does Not Suffer From Any Mental Impairment.

Jayatilaka does not suffer from any physical or mental impairment. Jayatilaka's treating psychologists did ***not*** diagnose any mental impairment in their Evaluation. Although Jayatilaka initially represented to the NBME that he had a "Reading Disability" and a "Mixed Receptive/Expressive Language Disorder," he has never been diagnosed with those conditions, and both of his treating psychologists agree that he does not meet the diagnostic criteria set forth in the DSM-IV for either condition.

The record also does not support a finding of CDNOS, the diagnosis belatedly offered by Dr. Dushenko. This diagnosis requires cognitive dysfunction,

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

841899 v6/HN

13.

NBME'S TRIAL BRIEF
CV 09-02932 PA (CWx)

and yet Jayatilaka scored in the average or above-average range on measures of cognitive functioning.  (*See* Section II.G. above.)  Moreover, CDNOS requires that a general medical condition cause the cognitive dysfunction and there is no evidence that the 1995 incident caused any cognitive deficits.  As set forth above, Jayatilaka's neuropsychological test scores do not support or suggest traumatic brain injury.  To the contrary, the scores show that his reading performance was **unaffected** by the 1995 incident.  Jayatilaka's educational history confirms that he performed in the average range academically both before and after this incident, and Jayatilaka's medical records, including MRI scans, do not indicate that Jayatilaka suffered any brain injury.

Dr. Dushenko argues that although Jayatilaka scored in the average range on "several tests," he nevertheless demonstrated a cognitive impairment based upon "below average functioning in both expressive and receptive language." (Dushenko Declaration at ¶ 16.)  Dr. Dushenko, however, fails to point to a single test score in support of this conclusory statement.  (*Id.*)  In fact, Jayatilaka's test scores on measures of expressive and receptive language were in the average range. According to Dr. Litchford, the best measure of expressive/receptive language ability is the WAIS Verbal Comprehension Index, on which Jayatilaka scored 100 (50th percentile, average range).  (Litchford Declaration at ¶ 10(c)(ii).)  Dr. Litchford further notes that Jayatilaka scored in the 49th percentile on the WJ-III Test of Understanding Directions, a score that is not consistent with impaired Receptive/Expressive Language functioning.  (*Id.* at ¶ 10(c)(iv).)

Dr. Dushenko further argues that Jayatilaka's alleged deficit in expressive and receptive language results in slow processing speed.  (Dushenko Declaration at ¶ 18, 26.)  Again, however, Dr. Dushenko fails to point to a single test score in support of Jayatilaka's claimed slow processing, and in fact the test scores measuring processing speed all show average performance.  According to Dr. Litchford, on the three tests that measure processing speed relevant to academic

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

841899 v6/HN                                            14.                    NBME'S TRIAL BRIEF
                                                                              CV 09-02932 PA (CWx)

applications (reading and writing), Jayatilaka's scores reflect average performance: his WAIS Processing Speed Index score was 58th percentile; his WJR-III Reading Fluency was the 78th percentile; and his WJR-III Writing Fluency score was 94th percentile.  (Litchford Declaration at ¶ 10(c)(iii).)

### 2. Jayatilaka Is Not Substantially Limited In Any Major Life Activity.

Jayatilaka also has not met his burden of showing that his alleged impairment substantially limits one or more major life activities.  Jayatilaka told his treating psychologists before any neuropsychological testing that he "does not feel he currently has significant cognitive problems that interfere with his day-to-day functioning," and Drs. Dushenko and Levine characterized Jayatilaka as a "highly functioning" individual in their Evaluation.  (SFs 97-98.)

Moreover, as set forth above, the testing data shows that Jayatilaka's academic functioning is not affected by any alleged impairment.  Jayatilaka was administered the WJ-III battery of achievement tests and his performance in *all areas of academic performance were within the average to superior range*, including measures of reading, mathematics and writing ability (including tests of reading fluency and writing fluency).  More specifically, on measures of reading comprehension, reading fluency and processing speed, Jayatilaka received average scores:  Letter-Word Identification was at the 52nd percentile; Reading Fluency was at the 78th percentile; and Reading Comprehension was at the 42nd percentile.  (Nussbaum Declaration at ¶ 14.)  These scores demonstrate that any alleged processing speed limitation is not affecting Jayatilaka's ability to perform the academic functions relevant to the USMLE (namely, reading and answering questions under timed conditions).

It is also worth noting that Jayatilaka was able to successfully graduate from medical school and pass the USMLE Step 1 examination after the 1995 incident without seeking or obtaining any accommodations.  In addition, he came close to

Cooley Godward
Kronish LLP
Attorneys At Law
Palo Alto

841899 v6/HN

15.

NBME's Trial Brief
CV 09-02932 PA (CWx)

1   passing the USMLE Step 2 CK in August 2007 without seeking or obtaining

2   accommodations.   Again, this demonstrates that Jayatilaka's functional abilities

3   related to academic performance are not limited (let alone substantially limited) by

4   any alleged impairment.

5        Dr. Dushenko argues that Jayatilaka's alleged slow processing speed is

6   affecting his testing performance, stating that his "low reading processing and

7   decision speed" is resulting in "low reading efficiency."  (Dushenko Declaration at

8   ¶ 26.)   Dr. Dushenko does not reference any neuropsychological test scores in

9   support of that statement and, in fact, he cannot because the test scores are wholly

10  at odds with that conclusion.   As set forth above, the test scores show that

11  Jayatilaka is reading well within the average range.   On measures of reading

12  comprehension, reading fluency and processing speed, Jayatilaka received average

13  scores:  Letter-Word Identification was at the 52nd percentile; Reading Fluency

14  was at the 78th percentile; and Reading Comprehension was at the 42nd percentile.

15  (Nussbaum Declaration at ¶ 14.)   These scores refute Dr. Dushenko's claim that

16  Jayatilaka's slow processing speed is affecting his reading abilities and ability to

17  perform on the USMLE.

18        There is evidence suggesting that factors unrelated to an alleged disability

19  could be affecting Jayatilaka's ability to pass the Step 2 CK.   Jayatilaka, for

20  example, went to medical school in Mexico, where his medical school classes were

21  taught in Spanish, a language Jayatilaka does not speak, read or understand.  (SF

22  27-28.)   Additionally, there is evidence that stress, lack of focus, motivation, and

23  parental pressure could be affecting his test performance.  (SFs 159-168.)

24   **B.    There Is No Evidence That Jayatilaka's Requested**
        **Accommodation Is Necessary For Him To Access The Exam.**
25

26        Jayatilaka also must establish that the NBME failed to offer the USMLE "in

27  a place and manner accessible to persons with disabilities or offer alternative

28  accessible arrangements for such individuals."   42 U.S.C. § 12189; *see also*

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

841899 v6/HN                    16.                    NBME'S TRIAL BRIEF
                                                       CV 09-02932 PA (CWx)

*Memmer v. Marin County Courts*, 169 F.3d 630, 634 (9th Cir. 1999) (requiring "accommodations be provided only 'when the modifications are necessary to avoid discrimination on the basis of disability'"); *Doe v. Nat'l Bd. of Med. Exam'rs*, 199 F.3d 146 (3d Cir. 1999); 28 C.F.R. 36.309(b)(i)

Even assuming *arguendo* that Jayatilaka could establish the existence of a covered disability, he also has not established that the requested accommodation is necessary for him to access the USMLE.  Dr. Dushenko's recommendation for extended time is based on an alleged speed of processing deficit related to ***auditory processing***.  (SF 158.)  However, the USMLE Step 2 CK is administered solely in ***writing*** and the Evaluation (and all of the other evidence) show that Jayatilaka's ability to process information presented to him visually is in the average range. Thus, Jayatilaka does not need double the standard testing time to access this written examination.

## IV.  CONCLUSION.

For all the aforementioned reasons, the NBME respectfully requests that judgment be entered in its favor.

Dated:  March 30, 2010                      COOLEY GODWARD KRONISH LLP
                                            GREGORY C. TENHOFF (154553)
                                            WENDY J. BRENNER (198608)


                                            _____/S/_____
                                            Gregory C. Tenhoff (154553)
                                            Attorneys for Defendant
                                            NATIONAL BOARD OF MEDICAL
                                            EXAMINERS

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
PALO ALTO

841899 v6/HN                      17.                      **NBME'S TRIAL BRIEF**
                                                           **CV 09-02932 PA (CWx)**